**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Brian & Connie Geary** | : | **Case No.:  14-00522** |
| **2511 Acorn Ct.** | : | |
| **Lancaster, OH  43130** | : | **Judge:** |
| | : | |
| **On Behalf Of Themselves And Others** | : | **Magistrate:** |
| **Similarly Situated** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **Green Tree Servicing LLC** | : | |
| **c/o CT Corporation System** | : | |
| **1300 East 9th Street** | : | |
| **Cleveland, OH  44114** | : | |
| | : | |
| **Defendant.** | : | |

**COMPLAINT**

Now come Plaintiffs Brian T. Geary and Connie M. Geary, by and through counsel, individually and on behalf of all others similarly situated, and based on their own knowledge, information, and belief, formed after inquiry reasonable under the circumstances, state:

**JURISDICTION AND VENUE**

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the federal laws of the United States.

2. Venue is appropriate under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to Plaintiffs' claim(s) occurred in this judicial district.

**NAMED PARTIES**

3. Plaintiffs Brian & Connie Geary ("Gearys") currently reside in Lancaster, Ohio.

4. The Gearys are each a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

1

5.  Defendant Green Tree Servicing LLC ("Green Tree") is a limited liability company registered as active with the Ohio Secretary of State.

6.  Green Tree regularly collects or attempts to collect debts owed or due, or asserted to be owed or due, on consumer loans acquired by Green Tree when in default and/or transferred to Green Tree for servicing when in default.

7.  For the purposes of this action, Green Tree is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

**NAMED PLAINTIFFS' FACTUAL ALLEGATIONS**

8.  This action alleges that Green Tree has violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*.

9.  On August 18, 2011, the Gearys jointly filed a voluntary petition for Chapter 7 bankruptcy in the U.S. Bankruptcy Court, Southern District of Ohio, Eastern Division.

10. The Gearys' bankruptcy case was delineated *In re Brian T Geary and Connie M Geary*, 2:11-bk-58574, and was assigned to Judge Hoffman.

11. The Gearys each received a Chapter 7 discharge on December 6, 2011, and their bankruptcy case was closed on December 22, 2011.

12. At the time the Gearys filed their Chapter 7 bankruptcy petition, The Gearys had an automobile loan ("Loan") that was serviced by CitiFinancial, Inc through CitiFinancial Servicing LLC (collectively, "CitiFinancial").

13. At the time the Gearys filed their Chapter 7 bankruptcy petition, the Gearys were behind on their Loan payments.

14. CitiFinancial was duly scheduled as a secured creditor, and received proper notice of the Gearys' bankruptcy case.

2

15. The Gearys subsequently entered into a Reaffirmation Agreement with CitiFinancial, which was filed in Gearys' bankruptcy case on December 2, 2011 ("Reaffirmation Agreement").

16. The Reaffirmation Agreement reaffirmed the Loan debt in the amount of $2,350.00, with an annual percentage rate of 6.00%.

17. The Reaffirmation Agreement established a Repayment Schedule of twenty-four (24) monthly payments in the amount of $140.15 each, beginning December 1, 2011, for a total payment amount of $3,363.60.[1]

18. The Gearys desired to pay off the Loan in twenty (20) months instead of twenty-four (24), and therefore timely made twenty (20) monthly payments to CitiFinancial, from December 2011 through July 2013, each in the amount of $174.00, for a total payment of $3,480.00.

19. The Gearys' total payments on the Loan were sufficient to fully pay the reaffirmed debt.

20. Although the reaffirmed Loan debt had been fully paid by the Gearys, CitiFinancial continued sending statements to the Gearys, and placing phone calls to Gearys, attempting to collect additional amounts.

21. The Gearys made several attempts to resolve the matter with CitiFinancial, but CitiFinancial refused to properly adjust the account and continued its collection efforts.

22. CitiFinancial also refused multiple requests from the  Gearys' to deliver title to the subject automobile.

23. In or around October 2013, CitiFinancial sold and/or assigned servicing of the Loan to Green Tree Servicing LLC ("Green Tree").

---

[1] Though inconsequential to this case, Plaintiffs note that the Repayment Schedule contained in the Reaffirmation Agreement prepared by CitiFinancial was errant.  Based on the reaffirmed debt in the amount of $2,350.00 at 6.00%, the Repayment Schedule should have indicated a requirement of twenty-four (24) monthly payments in the approximate amount of $103.64, for a total payment amount of approximately $2,487.36 instead of twenty-four (24) monthly payments in the amount of $140.15, for a total payment amount of $3,363.60.

24. Effective November 1, 2013, the servicing of the Gearys' Loan account was transferred from CitiFinancial to Green Tree.

25. Green Tree sent the Gearys an initial form collection letter dated October 16, 2013 ("Initial Communication") that included the following notable characteristics:

    a) Letterhead prominently displayed at the top, containing both the name "Green Tree" and the name "CitiFinancial";

    b) Information regarding the subject debt and Green Tree;

    c) Robo-signature of both Green Tree and CitiFinancial;

    d) Attached payment coupon with instruction to make payment to Green Tree;

    e) Absence of the 30-day Debt Validation language specified in 15 U.S.C. §1692g(a)(3)-(5).[2]

26. A true and accurate copy of the abovementioned "Initial Communication" is attached hereto as "Exhibit A".

27. Thereafter, Green Tree continued sending the Gearys "Monthly Billing Statements" and other written correspondence attempting to collect additional amounts on the Loan.

28. Green Tree also began placing regular collection calls to the Geary's attempting to collect additional amounts on the Loan.

29. The Gearys received a letter from Green Tree dated November 14, 2013 indicating that $1,101.60 was owed on the Loan, and containing the 30-day Debt Validation language required under 15 U.S.C. §1692g ("30-day Letter").

30. A true and accurate copy of the abovementioned 30-day Letter is attached hereto as "Exhibit B".

---

[2] Plaintiffs are not implying that the 30-day Debt Validation language was required in the Initial Communication, but rather that, factually, such language was not included in the Initial Communication.

31. In response to the 30-day Letter, the Gearys sent a letter via certified mail to Green Tree, dated November 21, 2013, disputing the debt and informing Green Tree that the amount in question had been discharged pursuant to the Gearys' bankruptcy and the Reaffirmation Agreement ("Dispute Letter").

32. Green Tree received and signed for the Dispute Letter on December 4, 2013.

33. A true and accurate copy of the abovementioned Dispute Letter and associated Certified Mail Domestic Return Receipt signed by a Green Tree representative is attached hereto as "Exhibit C".

34. The Gearys also followed up with Green Tree by phone in both December 2013 and January 2014 in order to further dispute the debt and determine status.

35. Despite the Gearys' Dispute Letter and multiple requests to resolve the debt as fully paid, Green Tree failed to timely adjust and close the Loan account, continued sending written correspondence attempting to collect on the Loan, and continued placing collection calls demanding payment.

36. A true and accurate copy of a portion of the abovementioned written correspondence is attached hereto as "Exhibit D".

37. On December 2, 2013, Mr. Geary spoke by phone with a Green Tree representative named Ceva.

38. During the abovementioned phone call, Ceva indicated she would place a note on the Loan account that the Gearys were disputing the debt and that the Gearys had sent a letter disputing the debt.

39. On December 30, 2013, Mr. Geary spoke by phone with a Green Tree representative named Nicole.

40. During the abovementioned phone call, Nicole indicated she would place another note on the Loan account and forward to her manager.

41. On January 24, 2014, Mr. Geary spoke by phone with a Green Tree representative named Denver.

42. During the abovementioned phone call, Mr. Geary explained that the Loan debt had been reaffirmed pursuant to a Reaffirmation Agreement with CitiFinancial, that the reaffirmed debt had been fully paid, and that any further amounts on the Loan had been discharged pursuant to the Geary's Chapter 7 bankruptcy.

43. Denver indicated that he and his supervisor had reviewed the documentation submitted by the Gearys and agreed that the Loan had been paid in full.

44. Denver further indicated that he would forward the Gearys' Loan account file to Green Tree's bankruptcy department for review and resolution.

45. On February 10, 2014, Mr. Geary received a collection call by phone from a Green Tree representative named Justin who demanded payment on the Loan.

46. During the abovementioned call, Mr. Geary explained that the Loan debt had been reaffirmed pursuant to a Reaffirmation Agreement with CitiFinancial, that the reaffirmed debt had been fully paid, that any further amounts on the Loan had been discharged pursuant to the Geary's Chapter 7 bankruptcy, that a letter had been sent to Green Tree disputing the debt, and that another representative from Green Tree (Denver) had indicated by phone that the Loan account would be reviewed and resolved by Green Tree's bankruptcy department.

47. During the abovementioned call, Mr. Geary further indicated that he was still awaiting a substantive response from Green Tree to his Dispute Letter.

48. Justin responded that the debt was valid.

49. Justin further responded that any contract(s) with CitiFinancial, including the Reaffirmation Agreement, did not apply to Green Tree.

50. Justin further responded that the billing statements being sent by Green Tree to the Gearys were Green Tree's response to the Gearys' Dispute Letter, that the Loan balance was owed, and that the Gearys needed to make an immediate payment.

51. Mr. Geary then indicated to Justin that Gearys were going to retain an attorney in the matter.

52. Justin responded that the Gearys should go ahead and hire an attorney, that the Gearys should forward the attorney's information to Green Tree so that Green Tree can forward its Loan documentation, and that he (Justin) would "set the attorneys straight."

53. The Gearys then retained the undersigned counsel to assist them in the matter.

54. On March 11, 2014, Counsel for the Gearys sent a demand letter to Green Tree seeking to resolve the matter short of litigation.

55. Counsel for the Gearys never received a response from Green Tree.

56. The Gearys made multiple requests to Green Tree to deliver proper title to the automobile that secured the Loan.

57. Green Tree refused to timely deliver title to the subject automobile, and as of the date of this filing, has still not delivered title to the Gearys.

58. Green Tree provided negative reporting to the Credit Bureau(s) indicating that the Gearys where behind on their Loan payments.

59. Green Tree's negative credit reporting resulted in the Gearys being denied credit.

## NAMED PLAINTIFFS' CLAIMS FOR RELIEF

## Count One: Violation of the FDCPA - 15 U.S.C. §1692e Generally and By Way of 15 U.S.C. § 1692e(2)(A)

60. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

61. The Gearys were each a "consumer" as that term is defined by 15 U.S.C. §1692a(3) since they were natural persons allegedly obligated to pay a debt.

62. Green Tree was a "debt collector" as that term is defined by 15 U.S.C. §1692a(6) since the Loan was being treated as in default at the time Green Tree began servicing it.

63. The numerous "Monthly Billing Statements," Loan account correspondences, and collection calls from Green Tree to the Gearys, including but not limited to those attached as Exhibits A & B, were each a "communication" as that term is defined by 15 U.S.C. §1692a(2), since they were mediums used to directly convey information on a debt.

64. The Loan was a "debt" as defined by 15 U.S.C. §1692a(5) since it was an alleged obligation of consumers to pay money arising out of a transaction in which the money and property which were the subject of the transaction were primarily for personal, family, or household purposes.

65. At the time Green Tree sent billing statements and other Loan account correspondence, and placed the collection calls to the Gearys, the monetary amounts sought to be collected from the Gearys had been discharged pursuant to 11 U.S.C. §727(a), and were not owed.

66. Green Tree's "Billing Statements," collection calls, and/or other Loan account correspondence(s) comprised the use of a false, deceptive, or misleading representation in connection with the collection of a debt, to wit, that Green Tree had a legal right to collect upon discharged monetary amounts, in violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692e.

67. Green Tree's "Billing Statements," collection calls, and/or other Loan account correspondence(s) falsely represented the character, amount, or legal status of the Loan debt, to wit, that Green Tree had a legal right to collect upon discharged monetary amounts, in violation of 15 U.S.C. § 1692e by way of 15 U.S.C. §1692e(2)(A).

68. Green Tree ignored multiple written and verbal requests from the Gearys to resolve the account and cease collection activities on the discharged debt.

69. Green Tree ignored and continues to ignore multiple requests from the Gearys to deliver rightful title to the automobile that secured the Loan.

70. Green Tree's actions/omissions have caused the Gearys undue stress, aggravation, lost time, costs, attorneys fees, and inconvenience.

71. Green Tree's actions/omissions have prevented the Gearys from freely marketing and selling the subject automobile.

72. Green Tree's actions/omissions have caused damage to the Gearys credit and caused the Gearys to be denied credit.

73. Accordingly, pursuant to 15 U.S.C. §1692k, the Gearys are entitled to an award of actual damages, such additional damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorneys fees.

## Count Two:  Violation of the FDCPA - 15 U.S.C. §1692g(a)

74. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

75. The Gearys received the Initial Communication from Green Tree dated October 16, 2013 (see attached, "Exhibit A").

76. The Initial Communication did not contain the 30-day Debt Validation language specified under 15 U.S.C. §1692g(a)(3)-(5).

77. Pursuant to 15 U.S.C. §1692g(a), Green Tree was required to send a follow-up written notice containing the 30-day Debt Validation language within five days of sending the Initial Communication.

78. Green Tree did not send any written notice to the Gearys containing the required 30-day Debt Validation language until November 14, 2013, twenty-nine (29) days after sending the Initial Communication (see attached, "Exhibit B").

79. By failing to send a written notice containing the required 30-day Debt Validation language within five (5) days after Green Tree sent the Initial Communication, Green Tree violated 15 U.S.C. §1692g(a).

80. Accordingly, pursuant to 15 U.S.C. § 1692k, the Gearys are entitled to an award of actual damages, such additional damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorneys fees.

### Count Three: Violation of the FDCPA - 15 U.S.C. §1692g(b)

81. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

82. The Gearys received a letter from Green Tree dated November 14, 2013 indicating that $1,101.60 was owed on the Loan, and containing the 30-day Debt Validation specified in 15 U.S.C. §1692g (see attached, "Exhibit B").

83. In response to the abovementioned 30-day Letter, the Gearys sent the Dispute Letter dated November 21, 2013 (see attached, "Exhibit C").

84. Green Tree received and signed for the Gearys' Dispute Letter on December 4, 2013.

85. The Dispute Letter was sent by the Gearys within the thirty-day period proscribed in 15 U.S.C. §1692g(a).

86. The Gearys also followed up with Green Tree by phone in both December 2013 and January 2014 in order to further dispute the debt and determine status.

87. Green Tree failed to respond to the Gearys Dispute Letter with any written documentation providing verification of the debt.

88. Green Tree continued to send written collection correspondence and place collection calls to the Gearys after receiving the Gearys' Dispute Letter, and without sending any written documentation providing verification of the debt.

89. Green Tree's continued collection efforts after receiving the Gearys' Dispute Letter was a violation of 15 U.S.C. §1692g(b), which required that Green Tree cease collection of the debt until Green Tree mailed written verification of the debt.

90. Accordingly, pursuant to 15 U.S.C. § 1692k, the Gearys are entitled to an award of actual damages, such additional damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorneys fees.

### Count Four: Violation of the FDCPA - 15 U.S.C. §1692e(14)

91. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

92. The Gearys received the Initial Communication from Green Tree dated October 16, 2013 attempting to collect on the Loan (see attached, "Exhibit A").

93. The Initial Communication contained, in large and prominent letterhead form, the separate and distinct names of both "CitiFinancial" and "Green Tree".

94. The Initial Communication was robo-signed by both CitiFinancial and Green Tree.

95. The Initial Communication contained an "Initial Payment Coupon" seeking payment to Green Tree.

96. The Initial Communication further contained other information seeking payment to Green Tree.

97. The Gearys were confused as to who was the source of the Initial Communication, CitiFinancial or Green Tree.

98. Upon information and belief, Green Tree compiled and sent the Initial Communication, and was therefore the source of the Initial Communication.

99. At a minimum, Green Tree represented it was a co-author of the Initial Communication.

100. Green Tree's use, in the Initial Communication, of letterhead containing the name "CitiFinancial" was the use of a business, company, or organization name other than the true name of Green Tree's business, company, or organization, in violation of 15 U.S.C. §1692e by way of 15 U.S.C. §1692e(14).

101. Accordingly, pursuant to 15 U.S.C. §1692k, the Gearys are entitled to an award of actual damages, such additional damages as the Court may allow not exceeding $1,000, and the costs of this action, together with reasonable attorneys fees.

## CLASS ACTION ALLEGATIONS AND CLAIMS FOR RELIEF

### Class Count One:  Violation of the FDCPA - 15 U.S.C. §1692g(a)

102. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

103. This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

104. Upon information and belief, Green Tree regularly purchases and/or is assigned servicing rights on consumer debts nationwide which are in default or being treated as in default at the time they are purchased by and/or assigned to Green Tree.

105. Upon information and belief, Green Tree has developed and employs a nationwide business model and computer-software platform whereby Green Tree systematically seeks monetary recovery from borrowers on the abovementioned consumer debts.

106. Upon information and belief, Green Tree intentionally and systematically sends such borrowers an initial letter of the same form and nature as the "Initial Communication" sent to the Gearys (attached as "Exhibit A"), with the following notable characteristics:

    a) Letterhead containing both the name "Green Tree" and the name of the financial institution that sold and/or assigned the consumer debt to Green Tree;

    b) Information regarding the subject debt and Green Tree;

    c) Robo-signature of both Green Tree and the financial institution that sold and/or assigned the debt to Green Tree;

    d) Attached payment coupon with instruction to make payment to Green Tree;

    e) Absence of the 30-day language specified in 15 U.S.C. §1692g(a)(3)-(5).

107. Upon information and belief, Green Tree systemically fails to send such borrowers written notice containing the required 30-day Debt Validation language, within five (5) days of sending the initial form letter described in ¶106,

108. By failing to send a written notice containing the required 30-day Debt Validation language within five (5) days after sending the initial form letter described in ¶106, Green Tree violates 15 U.S.C. §1692g(a).

109.    For the purposes of this Class Count One claim, the Putative Plaintiff Class ("Count One Class") consists of the following persons: Every consumer who was sent, from June 3, 2013 to present, an initial communication from Green Tree as more particularly described in ¶106 conveying information about a consumer debt sold and/or transferred to Green Tree when in default or being treated as in default.

110.    The Count One Class members are each a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) since they are a natural person allegedly obligated to pay a debt.

111.    Green Tree is a "debt collector", as that term is defined by 15 U.S.C. § 1692a(6), when it attempts to collect amounts on consumer debts Green Tree acquired and/or began servicing at a time when said debts were in default or being treated as in default.

112.    The form letters as described in ¶106 sent to the Class members are each a "communication" as that term is defined by 15 U.S.C. § 1692a(2) since they are mediums used to directly convey information regarding a debt.

113.    The monetary amounts sought to be collected by Green Tree pursuant to the form letters described in ¶106 are "debts" as defined by 15 U.S.C. 1692a(5) since they are alleged obligations of consumers to pay money arising out of transactions in which the money and property which were the subject of the transactions were primarily for personal, family, or household purposes..

114.    Upon information and belief, members of the Count One Class are so numerous that joinder is impractical.

115.    The Gearys will assure the adequate representation of all members of the Count One Class and have no conflict with Count One Class members in the maintenance of this action.

116. The Gearys' interests in this action are typical of the Count One Class, and the collection practices utilized by Green Tree against the Gearys do not differ in any significant way from the systemic collection practices utilized by Green Tree against other Count One Class members.

117. The Gearys' interests in this action are antagonistic to the interests of Green Tree.

118. The Gearys have no interest in, or relationship with Green Tree that would prevent the Gearys from litigating this matter fully and on behalf of the Count One Class.

119. The Gearys are aware that settlement of a class action is subject to court approval.

120. The Gearys will vigorously pursue the Count One Class claims throughout the course of this action.

121. A class action will provide a fair and efficient means to adjudicate this controversy since the claims of the Count One Class members are virtually identical, raising the same questions of law and involving substantially the same methods of collection utilized by Green Tree.

122. Most if not all facts needed to determine damages are obtainable from the records of Green Tree.

123. The purposes of the FDCPA will be best effectuated by a class action.

124. A class action is superior to other methods for the fair and efficient adjudication of this controversy.

125. Because the damages suffered by most if not all members of the Count One Class are relatively small in relation to the costs, expense, and burden of this litigation, it would be difficult and judicially inefficient for members of the Count One Class to individually redress the wrongs done to them.

126.    Many if not all of the Count One Class members are unaware that claims exist against Green Tree.

127.    Because many if not all Count One Class members are unaware of their claims and because their claims are small in relation to the cost of an individual suit, a class action is the only proceeding in which class members can, as a practical matter, recover.

128.    There will be no unusual difficulty in the management of this action as a class action.

129.    Common questions of law predominate over all matters in this action.

130.    Among the questions of law common to the Gearys and the Count One Class are:  (1) whether the Gearys and the Count One Class members are each a "consumer" as that term is defined by 15 U.S.C. § 1692a(3);  (2) whether the Gearys and the Count One Class members' debts are "debts" as defined by 15 U.S.C. 1692a(5);  (3) whether Green Tree is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6); (4) whether Green Tree's form letters as described in ¶¶s 25 and 106 are each a "communication" as that term is defined by 15 U.S.C. § 1692a(2);  and (5) whether Green Tree's collection practices against the Gearys and the Count One Class Members violate 15 U.S.C. §1692g(a).

131.    Upon information and belief, Green Tree's actions have caused and continue to cause the Count One Class undue stress, aggravation, lost time, costs, and inconvenience.

132.    Upon information and belief, pursuant to 15 U.S.C. §1692k, the Count One Class is accordingly entitled to such amount as the Court may allow, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Green Tree, and the costs of this action, together with reasonable attorneys fees.

## Class Count Two: Violation of the FDCPA - 15 U.S.C. §1692e(14)

133. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

134. This action is properly maintainable as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

135. Upon information and belief, Green Tree regularly purchases and/or is assigned servicing rights on consumer debts nationwide which are in default or being treated as in default at the time they are purchased by and/or assigned to Green Tree.

136. Upon information and belief, Green Tree has developed and employs a nationwide business model and computer-software platform whereby Green Tree systematically seeks monetary recovery from borrowers on the abovementioned consumer debts.

137. Upon information and belief, Green Tree intentionally and systematically sends such borrowers a letter of the same form and nature as the "Initial Communication" sent to the Gearys (see attached, "Exhibit A"), with the following notable characteristics:

   a) Letterhead containing both the name "Green Tree" and the name of the financial institution that sold and/or assigned the consumer debt to Green Tree;

   b) Information regarding the subject debt and Green Tree;

   c) Robo-signature of both Green Tree and the financial institution that sold and/or assigned the debt to Green Tree;

   d) Attached payment coupon with instruction to make payment to Green Tree;

138. Upon information and belief, borrowers who receive letters as described in ¶137 become confused as to who is the source, Green Tree, or the financial institution that sold and/or assigned the consumer debt to Green Tree.

139.    Green Tree's use, in the letters described in ¶137 above, of letterhead containing the name of a different financial institution is the use of a business, company, or organization name other than the true name of Green Tree's business, company, or organization, in violation of 15 U.S.C. §1692e by way of 15 U.S.C. §1692e(14).

140.    For the purposes of this Class Count Two claim, the Putative Plaintiff Class ("Count Two Class") consists of the following persons:  Every consumer who was sent, from June 3, 2013 to present, a communication from Green Tree as more particularly described in ¶137 above, conveying information about a consumer debt sold and/or transferred to Green Tree when in default or being treated as in default.

141.    The Count Two Class members are each a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) since they are a natural person allegedly obligated to pay a debt.

142.    Green Tree is a "debt collector", as that term is defined by 15 U.S.C. § 1692a(6), when it attempts to collect amounts on consumer debts Green Tree acquired and/or began servicing at a time when said debts were in default or being treated as in default.

143.    The form letters described in ¶137 sent to the Count Two Class members are each a "communication" as that term is defined by 15 U.S.C. § 1692a(2) since they are mediums used to directly convey information regarding a debt.

144.    The monetary amounts sought to be collected by Green Tree pursuant to the form letters described in ¶137 are "debts" as defined by 15 U.S.C. 1692a(5) since they are alleged obligations of consumers to pay money arising out of transactions in which the money and property which were the subject of the transactions were primarily for personal, family, or household purposes..

145.    Upon information and belief, members of the Count Two Class are so numerous that joinder is impractical.

146.    The Gearys will assure the adequate representation of all members of the Count Two Class and have no conflict with Count Two Class members in the maintenance of this action.

147.    The Gearys' interests in this action are typical of the Count Two Class, and the collection practices utilized by Green Tree against the Gearys do not differ in any significant way from the collection practices utilized by Green Tree against other Count Two Class members.

148.    The Gearys' interests in this action are antagonistic to the interests of Green Tree.

149.    The Gearys have no interest in, or relationship with Green Tree that would prevent the Gearys from litigating this matter fully and on behalf of the Count Two Class.

150.    The Gearys are aware that settlement of a class action is subject to court approval.

151.    The Gearys will vigorously pursue the Count Two Class claims throughout the course of this action.

152.    A class action will provide a fair and efficient means to adjudicate this controversy since the claims of the Count Two Class members are virtually identical, raising the same questions of law and involving substantially the same methods of collection utilized by Green Tree.

153.    Most if not all facts needed to determine damages are obtainable from the records of Green Tree.

154.    The purposes of the FDCPA will be best effectuated by a class action.

155.    A class action is superior to other methods for the fair and efficient adjudication of this controversy.

156. Because the damages suffered by most if not all members of the Count Two Class are relatively small in relation to the costs, expense, and burden of this litigation, it would be difficult and judicially inefficient for members of the Count Two Class to individually redress the wrongs done to them.

157. Many if not all of the Count Two Class members are unaware that claims exist against Green Tree.

158. Because many if not all Count Two Class members are unaware of their claims and because their claims are small in relation to the cost of an individual suit, a class action is the only proceeding in which class members can, as a practical matter, recover.

159. There will be no unusual difficulty in the management of this action as a class action.

160. Common questions of law predominate over all matters in this action.

161. Among the questions of law common to the Gearys and the Count Two Class are: (1) whether the Gearys and the Count Two Class members are each a "consumer" as that term is defined by 15 U.S.C. § 1692a(3); (2) whether the Gearys' and the Count Two Class members' debts are "debts" as defined by 15 U.S.C. 1692a(5); (3) whether Green Tree is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6); (4) whether Green Tree's letters as described in ¶¶s 25 and 137 are each a "communication" as that term is defined by 15 U.S.C. §1692a(2); and (5) whether Green Tree's collection practices against the Gearys and the Count Two Class members violate 15 U.S.C. §1692e(14).

162. Upon information and belief, Green Tree's actions have caused and continue to cause the Count Two Class undue stress, aggravation, lost time, costs, and inconvenience.

163. Upon information and belief, pursuant to 15 U.S.C. §1692k, the Count Two Class is accordingly entitled to such amount as the court may allow, without regard to a minimum

individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of Green Tree, and the costs of this action, together with reasonable attorneys fees.

### Class Count Three: Declaratory Relief – Count One Class

164. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

165. Based upon the allegations contained in this Complaint, a corresponding declaration that Green Tree's conduct in engaging the Count One Class members by using the types of communications described herein, including but not limited to the letters more particularly describe in ¶106 of this Complaint, violates the FDCPA in the various manners herein described such that the Court may award any further relief that it may deem equitable and just under the circumstances.

### Class Count Four: Declaratory Relief – Count Two Class

166. The Gearys restate all of the foregoing allegations in this Complaint as if fully restated herein.

167. Based upon the allegations contained in this Complaint, a corresponding declaration that Green Tree's conduct in engaging the Count Two Class members by using the types of communications described herein, including but not limited to the letters more particularly describe in ¶137 of this Complaint, violates the FDCPA in the various manners herein described such that the Court may award any further relief that it may deem equitable and just under the circumstances.

**WHEREFORE**, the Gearys pray for the following relief:

A.  Certification of the Count One Class and the Count Two Class under Rule 23 of the Federal Rules of Civil Procedure, with the Gearys as class representatives;

B.  A Declaratory Judgment finding that Green Tree's actions as herein described violate the FDCPA as to all Count One Class members;

C.  A Declaratory Judgment finding that Green Tree's actions as herein described violate the FDCPA as to all Count Two Class members;

D.  A Judgment entitling the Gearys, all Count One Class members, and all Count Two class Members, upon the claims for relief mentioned in this Complaint, an award in excess of $25,000 pursuant to the remedies set forth in 15 U.S.C. § 1692(k);

E.  An Award to the Gearys, all Count One Class members, and all Count Two class Members, of all other remedies that equitably and reasonably flow from Green Tree's breach(es) of federal and/or state law and the obligations that arise therefrom;

F.  An Award to the Gearys, all Count One Class members, and all Count Two class Members, their reasonable attorneys fees, costs, disbursements, and pre-judgment interest; and

G.  An Award of such other and further relief that the Court deems just, equitable, and proper.

## <u>JURY DEMAND</u>

The Gearys hereby demand a jury for all issues triable.
Dated this 3rd day of June, 2014.

Respectfully submitted,

 /s/  Michael B. Zieg
Michael B. Zieg (0066386)
Eric E. Willison (0066795)
James E. Nobile (0059705)
**Nobile & Thompson Co., LPA**
4876 Cemetery Road
Hilliard, Ohio 43026
Phone:  614.529.8600
Fax:  614.529.8656
mzieg@ntlegal.com
eewillision@earthlink.net
jenobile@ntlegal.com
*Attorneys for Plaintiffs*