**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN GEARY**, *et al.*, | : | |
| | : | **Case No. 2:14-cv-00522** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | |
| **GREEN TREE SERVICING, LLC,** | : | **Magistrate Judge Deavers** |
| | : | |
| **Defendant.** | : | |

<u>OPINION & ORDER</u>

## I.    INTRODUCTION

This matter is before the Court on Defendant Green Tree Servicing LLC's Motion to Dismiss Complaint, or in the Alternative, to Strike Class Allegations With Request for Oral Argument ("Motion to Dismiss").  (Doc. 3).  For the reasons set forth herein, Defendant Green Tree Servicing LLC's Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**.

## II.    BACKGROUND

Plaintiffs Brian and Connie Geary ("Plaintiffs") bring this action against Defendant Green Tree Servicing LLC ("Green Tree" or "Defendant") for alleged violations of the Fair Debt Collection Practices Act ("FDCPA" or "the Act").  On August 18, 2011, Plaintiffs, residents of Lancaster, Ohio, jointly filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Ohio.  (*Compl*., Doc. 1, ¶ 9).  Plaintiffs each received a Chapter 7 discharge on December 6, 2011.  (*Id*., ¶ 11).  On December 22, 2011, their bankruptcy case was closed.  (*Id*.).

At the time Plaintiffs filed their Chapter 7 bankruptcy petition, they were "behind" on payments for an automobile loan (the "Loan") serviced by CitiFinancial through CitiFinancial

1

Servicing LLC (collectively, "CitiFinancial").  (*Id*., ¶ 12-13).  CitiFinancial was a secured

creditor and received notice of Plaintiffs'' bankruptcy case.

Plaintiffs entered into a Reaffirmation Agreement with CitiFinancial (the "Reaffirmation

Agreement"), which was filed in Plaintiffs' bankruptcy action on December 2, 2011.  (*Id*., ¶ 14-

15).  The Reaffirmation Agreement reaffirmed the Loan debt in the amount of $2,350.00 with a

6.00% annual interest rate.  It also included a repayment schedule, which established that,

beginning December 1, 2011, Plaintiffs would make 24 monthly payments of $140.15 each for a

total payment of $3,363.00.  (*Id*., ¶ 16-17).  Desiring to pay the Loan off in 20 months instead of

24, Plaintiffs timely made 20 monthly payments to CitiFinancial (from December 2011 through

July 2013), each for $174.00, for a total payment of $3,480.00.  (*Id*., ¶ 18).

Plaintiffs allege that, although "[t]he Gearys total payments on the Loan were sufficient

to fully pay the reaffirmed debt…CitiFinancial continued sending statements to the Gearys, and

placing phone calls to Gearys, attempting to collect additional amounts."  (*Id*., 19-20).  Plaintiffs

claim that they "made several attempts" to resolve the matter with CitiFinancial, "but

CitiFinancial refused to properly adjust the account," "continued its collection efforts," and

"refused multiple requests from the Gearys' to deliver title to the subject automobile."  (*Id*., ¶ 20-

22).

Plaintiffs aver that "[i]n or around October 2013, CitiFinancial sold and/or assigned

servicing of the Loan to Green Tree Servicing LLC."  (*Id*., ¶ 23).  The servicing transfer of

Plaintiffs' Loan was effective on November 1, 2013.  (*Id*., ¶ 24).

Plaintiffs allege that on October 16, 2013, Green Tree sent Plaintiffs a letter ("Initial

Communication").  (*Pl. Exh. A*, Doc. 1-2).  The letterhead on which the Initial Communication

was typed displayed the logos of both CitiFinancial and Green Tree.  (*Id*.).  The Initial

Communication welcomed Plaintiffs to Green Tree and informed them that, effective November 1, 2013, "the servicing of your loan – that is, the right to collect loan payments from you – is being transferred from CitiFinancial to Green Tree." (*Id*.).  The letter also notified Plaintiffs that Green Tree would begin posting payments to Plaintiffs' account "on or about November 11, 2013," and that Plaintiffs "should be receiving [their] first statement…the week of November 18, 2013."  Further, the Initial Communication included information about a variety of methods Plaintiffs could contact or get more information about Green Tree, including Green Tree's website, phone number, and mailing address.  In addition, the letter noted that Plaintiffs' "monthly payment amount" was $140.32, listed a "payment due" date of "11/15/2013," and stated a "principal balance" or $904.13.

The Initial Communication also included a detachable "Initial Payment Coupon."  The Initial Payment Coupon included Plaintiffs' names, address, and account number.  It stated the "Total Due" as $140.32.  The Initial Communication also contained information about auto-pay options and bill payment services.  Plaintiffs' Complaint avers that the Initial Communication did not include "the 30-day Debt Validation language specified in 15 U.S.C. §1692g(a)(3)-(5)." (Doc. 1, ¶ 25(e)).

Plaintiffs allege that after the Initial Communication was sent, "Green Tree continued sending the Gearys 'Monthly Billing Statements' and other written correspondence attempting to collect" on the Loan.  (*Id*., ¶ 28).  On November 14, 2013, Plaintiffs assert that they received a letter from Green Tree informing them that $1,101.60 was owed.  This letter contained "the 30-day Debt Validation language" required by the FDCPA in §1692g.  (Pl. Exh. B, Doc. 1-2).

In response to the November 14, 2013 letter, Plaintiffs claim they sent Green Tree a letter via certified mail (the "Dispute Letter"), dated November 21, 2013, "disputing the debt and

informing Green Tree that the amount in question had been discharged pursuant to the Gearys'
bankruptcy and the Reaffirmation Agreement." (Doc. 1, ¶ 31). Plaintiffs allege that Green Tree
received and signed for the Dispute Letter on December 4, 2013. (*Id*., ¶ 32). Plaintiffs assert
that they had several conversations with Green Tree representatives from December 2013
through March 2014, during which Plaintiffs explained that the Loan had been reaffirmed, the
reaffirmed debt had been paid in full, and any further amounts owed were discharged pursuant to
bankruptcy. (*Id*., ¶¶ 37-54). Nevertheless, Plaintiffs allege that Green Tree continued to attempt
to collect on the Loan through written correspondence and collection calls demanding payment.
(*Id*., ¶ 35).

Plaintiffs also claim that, despite multiple requests, Green Tree has refused to deliver the
automobile's title to Plaintiffs, and that Green Tree provided negative reporting to various credit
bureaus which has resulted in Plaintiffs being denied credit. (*Id*., ¶¶ 56-59). On March 11, 2014,
Plaintiffs' counsel sent a "demand letter" to Defendant "seeking to resolve the matter." Plaintiffs
allege that their counsel never received a response from Defendants. (*Id*., ¶¶ 54-55).

On June 3, 2014, Plaintiffs filed their Complaint against Defendant, alleging violations of
the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"). Specifically, Plaintiffs'
Complaint asserts that Defendant committed four distinct FDCPA violations: (i) violation of 15
U.S.C. §1692e(2)(A) (Count One), for the use of a false, deceptive, or misleading representations
in connection with the collection of a debt and for falsely representing the character, amount, or
legal status of the Loan debt, in billing statements, collection calls, and/or other Loan account
correspondence; (ii) violation of 15 U.S.C. §1692g(a) (Count Two), for failing to send a follow-
up written notice containing the 30-day Debt Validation language within five days of sending the
Initial Communication; (iii) violation of 15 U.S.C. §1692g(b) (Count Three), for Defendant's

failure to send written documentation providing verification of the debt it sought to collect; and (iv) violation of 15 U.S.C. §1692e(14) (Count Four), for use, in the Initial Communication, of letterhead containing the name "CitiFinancial," a business, company, or organization name other than the true name of Green Tree's business, company, or organization.

In addition, Plaintiffs bring two separate class action claims. First, in Class Count One, Plaintiffs allege systemic violations of 15 U.S.C. §1692g(a) for Defendant's failure to send borrowers written notice containing the required 30-day Debt Validation language within five days of sending the initial form letter described (the same conduct alleged in individual Count Two). In Class Count Two, Plaintiffs allege systemic violations of 15 U.S.C. 1692e(14) for the use of letterhead containing the name of a financial institution other than the true name of Green Tree's business, company, or organization (the same conduct alleged in individual Count Four). In Class Counts Three and Four, Plaintiffs request declaratory relief for the alleged violations described in Class Count One and Class Count Two.

In response to Plaintiffs' Complaint, Defendant filed its Motion to Dismiss, asking this Court to dismiss Counts II, III, and IV of Plaintiffs' Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P 12(b)(6). In the alternative, Defendants ask this Court to strike Plaintiffs' class allegations in Class Counts I and II, pursuant Rule 23(c)(1)(A). This matter has been fully briefed and is ripe for review.

## III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) allows for a case to be dismissed for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). Thus, the Court must construe the

complaint in the light most favorable to the non-moving party.  *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008).  The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions.  *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted).

Further, a complaint need not set down in detail all the particularities of a plaintiff's claim against a defendant. *See United States v. School Dist. of Ferndale,* 577 F.2d 1339, 1345 (6th Cir. 1978); *Westlake v. Lucas,* 537 F.2d at 858; *Dunn v. Tennessee,* 697 F.2d 121, 125 (6th Cir. 1983).  The complaint simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The function of the complaint is to "'give the defendant fair notice of what the claim is, and the grounds upon which it rests.'"  *Nader v. Blackwell*, 545 F.3d 459, 470 (6th Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  In short, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  It must contain "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

When determining the sufficiency of a complaint in the face of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also McClain v. Real Estate Bd. of New Orleans, Inc.,* 444 U.S. 232, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Windsor v. The Tennessean,* 719 F.2d 155, 158 (6th Cir.1983);

6

*Neil v. Bergland,* 646 F.2d 1178, 1184 (6th Cir.1981); *Parker v. Turner,* 626 F.2d 1, 7 (6th Cir.1980).

The court will grant a defendant's motion for dismissal under Fed.R.Civ.P. 12(b)(6) if the complaint is without any merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. *See generally Rauch v. Day & Night Mfg. Corp.,* 576 F.2d 697 (6th Cir. 1978); *Ott v. Midland–Ross Corp.,* 523 F.2d 1367; *Brennan v. Rhodes,* 423 F.2d 706 (6th Cir. 1970).

The Court generally may only consider evidence contained within the pleadings without converting the motion into one for summary judgment. Fed.R.Civ.P. 12(d). Exhibits to the pleadings are "part of the pleadings for all purposes." Fed.R.Civ.P. 10(c). Documents not attached to a plaintiff's complaint but introduced by the defendant on a motion to dismiss will be considered as part of the pleadings if "'they are referred to in the plaintiff's complaint and are central to [his] claim.'" *Weiner v. Klais & Co.,* 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. v. Zenith Data Sys.,* 987 F.2d 429, 431 (7th Cir. 1993)); *see also City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 659 (6th Cir. 2005) (relying on *Weiner* ). The Court may also consider "materials that are public records or otherwise appropriate for taking judicial notice without converting a Rule 12(b)(6) motion to a Rule 56 motion." *Whittiker v. Deutsche Bank Nat'l Trust Co.,* 605 F.Supp.2d 914, 925 (N.D. Ohio 2009) (citing *New England Health Care Employees Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir. 2003)).

## IV.    ANALYSIS

The FDCPA is designed "to eliminate the abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).

The Sixth Circuit has determined that, "[t]he Fair Debt Collection Practices Act is an extraordinarily broad statute. Congress addressed itself to what it considered to be a widespread problem, and to remedy that problem it crafted a broad statute."  *Frey v. Gangwish,* 970 F.2d 1516, 1521 (6th Cir. 1992).  Because the Court's "actions are guided by the hand of Congress," the Sixth Circuit, as well as other Circuits, have noted that the FDCPA should be applied broadly according to its terms.  *See, e.g.*, *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012); *Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C.,* 111 F.3d 1322, 1325 (7th Cir. 1997) (noting that "the plain language of the Act defines 'debt' quite broadly").

Because liability under the FDCPA attaches only to a "debt collector," as defined by the Act, *see Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436 (6th Cir. 2008), and Plaintiffs allege that Defendant violated various provisions of the Act, this Court must first address whether Defendant is a "debt collector" under the FDCPA.

### A.  Whether Defendant is a "Debt Collector" Under the FDCPA

The FDCPA defines a "debt collector" as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another….[T]he term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692a(6). The Act includes a number of exceptions to this definition, one of which is relevant here: under the FDCPA, a debt collector "does not include ... any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii); *Bridge*, 681 F.3d at 364 ("For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired."); *McKay v. JPMorgan Chase Bank, N.A.*, No. 2:14-CV-00512, 2014 WL 5529672, at *6 (S.D. Ohio Nov. 3, 2014) ("Creditors and mortgage servicers are excluded from the definition of "debt collector" if the creditor or servicer did not acquire the debt when it was in default or treat the debt as if it were in default at the time of acquisition.").

The Sixth Circuit has clarified, however, that, in light of the breadth of the FDCPA, "the definition of debt collector pursuant to §1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default *or has treated the debt as if it were in default* at the time of acquisition. It matters not whether such treatment was due to a clerical mistake, other error, or intention." *Bridge*, 681 F.3d at 364 (emphasis added); *see also In re Rostorfer*, 497 B.R. 873, 874-76 (Bankr. S.D. Ohio 2013) ("An entity acting in its capacity a loan servicer is not a debt collector for purposes of the FDCPA unless the debt was in default or treated as though it were in default when the entity obtained the loan for servicing.").

Defendant argues that the § 1692a(6)(F)(iii) exception excludes it from being considered a "debt collector" under the FDCPA because, as Plaintiffs' assert, the Loan was not in default at the time Defendant acquired the Loan – indeed, the Loan had already been paid-in-full according to the Reaffirmation Agreement. Further, Defendant insists, Plaintiffs only make an "entirely

conclusory" allegation that Defendant treated the Loan as if it was in default without identifying any written or verbal communications from the time of the transfer supporting their allegation.

Plaintiffs counter that they have made sufficient allegations in their complaint that the Loan was being treated as in default at the time Green Tree began servicing it.  (Doc. 6 at 6, *citing* Doc. 1, ¶¶ 15-29, 62).  Specifically, Plaintiffs maintain that the fact that Defendant identified itself as a "debt collector" and employed the FDCPA's debt verification process indicates Defendant was treating Plaintiffs' Loan as in default.  Further, Plaintiffs insist that they have "clearly alleged" that Defendant attempted to collect a debt which they had already paid, which Plaintiffs argue is grounds for being considered a debt collector under Sixth Circuit precedent.  (Doc. 6 at 5-6).  Therefore, Plaintiffs argue, Defendant qualifies as a debt collector under the FDCPA.  This Court finds that Defendant is in fact a debt collector under the FDCPA.

### 1. Legislative History and Purpose of the FDCPA

The Sixth Circuit has clarified that the purpose of the FDCPA is, at least in part, to regulate the collection of already-paid debts:

> The legislative history of the FDCPA indicates that Congress intended to address the very situation the Bridges allege. A Senate Report states that the purpose of the Act's debt verification is to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' S. Rpt. 95–382 at 4, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699. A House Report noted congressional intent to regulate collection activities based on either 'mistaken identity or mistaken facts.' H.R.Rep. No. 131, at 8. Congress recognized that computer errors are a related problem, and that '[c]onsumers who are victims of computer error find it extremely difficult to obtain correction of records. This may lead to collection agency harassment.' *Id.; see also Barany–Snyder v. Weiner,* 539 F.3d 327, 333 (6th Cir. 2008) ('[T]he FDCPA is extraordinarily broad, crafted in response to what Congress perceived to be a widespread problem.') (citations omitted).
>
> …
>
> Throughout the FDCPA coverage is based upon actual or merely alleged debt. Thus, a debt holder or servicer is a debt collector when it engages in collection

activities on a debt that is not, as it turns out, actually owed. This stands to reason since the pursuit of collection activities presupposes that the collector alleges or asserts that the subject of those activities is obligated.

*Bridge*, 681 F.3d at 361-362.

Further, the Sixth Circuit previously has rejected the argument that a party cannot be considered a debt collector under the FDCPA when a plaintiff's own allegations claimed that the account was not in default at the time of acquisition. In *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 362 (6th Cir. 2012), the plaintiffs twice attempted to make their April mortgage payment to defendant Aimes Capital Corporation, and plaintiffs' bank erroneously dishonored the payments. *Bridge*, 681 F.3d at 357. In the meantime, Aimes assigned the mortgage to defendant Ocwen. Plaintiffs' two payments ultimately were honored, and so the plaintiff did not submit a payment for May. Ocwen then began "dunning" plaintiffs for the May payment. The Sixth Circuit rejected the defendant's argument that it was not a debt collector because the plaintiffs own allegations claimed that the account was not in default at the time:

Further, we find disingenuous Ocwen Bank's argument that 'Ocwen also is not a debt collector because servicing transferred to Ocwen on May 1, 2002, and Plaintiffs themselves allege that the account was not in default at that time.' (R. 98 at 7). We note this argument is exemplary of an unsettling trend in FDCPA claims. Defendants seek to have it both ways: after having engaged in years of collection activity *claiming a mortgage is in default,* Defendants now seek to defeat the protections of the FDCPA by relying on Plaintiffs' position throughout those years that the *mortgage is not in default.* As noted in the analysis of the Third Circuit, FDCPA coverage is not defeated by clever arguments for technical loopholes that seek to devour the protections Congress intended.

*Bridge*, 681 F.3d at 361 (emphasis in original).

Similarly here, Defendant seeks to "have it both ways" by arguing that it cannot be considered a debt collector, after engaging in what appears to be extensive debt collection activity, because Plaintiff maintains that they are not, and indeed were not, in default when

11

Defendant acquired the Loan.  Defendant's argument undermines the purpose of the FDCPA and is contrary to Sixth Circuit precedent; therefore, it is unavailing.

### 2.  *Default or Treated as in Default*

The FDCPA does not define "default."  *See Alibrandi v. Fin. Outsourcing Servs., Inc.*, 333 F.3d 82, 86 (2d Cir.2003); *Justice v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-00165, 2014 WL 526143, at *5 (S.D. Ohio Feb. 7, 2014); *Martin v. Select Portfolio Serving Holding Corp.*, No. l:05–CV–273, 2008 WL 618788, at *5 (S.D.Ohio March 3, 2008) ("The FDCPA does not define default nor establish the time period after which a default occurs.  Rather it is generally left to the parties, i.e., the creditor and the debtor, to define their own period of default.") (internal citations omitted).  In addition, the Sixth Circuit has not directly spoken to the matter.

As this Court has previously held, "[e]ven if a debt was not actually in default when the servicing company acquired it, if the servicing company acquired it as a debt in default, and based its collection activities on that understanding, the servicer will be subject to the Act as a 'debt collector.'"  *Martin v. Select Portfolio Serving Holding Corp.*, No. 1:05-CV-273, 2008 WL 618788, at *4 (S.D. Ohio Mar. 3, 2008) (citing *Schlosser,* 323 F.3d at 539); *see also Bauman v. Bank of Am., N.A.*, No. 2:12-CV-00933, 2014 WL 1884266, at *5-6 (S.D. Ohio May 9, 2014); *Shugart v. Ocwen Loan Servicing, LLC*, 747 F. Supp. 2d 938, 942-43 (S.D. Ohio 2010); *Martin v. Select Portfolio Servicing Holding Corp.,* Case No. 1:05–cv–273, 2008 WL 618788, at *4 (S.D.Ohio Mar. 3, 2008).  In other words, "even if the servicing company was mistaken as to whether the loan was (or was not) actually in default, if it treated the account as if it were in default, the § 1692a(6)(F)(iii) exclusion does not apply."  *Id.*; *see also Bridge,* 681 F.3d at 362 (emphasis added) (finding that the FDCPA applies to "any non-originating debt holder that either

acquired a debt in default," or to any non-originating debt holder that "*treated the debt as if it were in default* at the time of acquisition.") (emphasis added).

As another factor, some courts have advocated that the issue of default should be left up to the contractual agreement of the parties. *See Alibrandi,* 333 F.3d at 87 n. 5. Here, however, Defendants do not identify any company policy, *see Martin,* 2008 WL 618788, at *5 ("SPS considers a loan in default when a payment is 45 days overdue."), or any agreement between the parties that defines "default." Thus, the Court would be left to let Defendants define default according to Defendant's terms. As this Court has previously held, "allowing parties potentially qualifying as debt collectors to unilaterally define 'default' as used in the FDCPA would frustrate the intent of the statute." *Justice v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-00165, 2014 WL 526143, at *5 (S.D. Ohio Feb. 7, 2014).

In this case, the Complaint alleges that, although Green Tree began servicing Plaintiffs' loan after it had been reaffirmed and indeed paid in full, Plaintiffs were sent an Initial Communication that included a payment coupon, informed Plaintiffs' of the amount due, gave a due date for their payment, as well as other information on how to make payments to Green Tree. Additionally, Plaintiffs allege that following the Initial Communication, they were sent additional communications via mail, including at least one that informed them that their account was delinquent; they received collection calls from Green Tree attempting to collect payment on the Loan; and Defendant gave negative reports to credit reporting agencies regarding Plaintiffs' Loan. Viewing the pleadings in a light most favorable to Plaintiffs, they have stated at least a facially plausible claim that Defendants were treating the Loans as if they were in default at the time of acquisition.

Therefore, taking all factual allegations in the Complaint as true, Plaintiff's claim does not fail pursuant to the 15 U.S.C. § 1692a(6)(F)(iii) exception. Plaintiffs have alleged sufficient facts to support a plausible inference that Green Tree treated its Loan as if it was in default and, therefore, is a debt collector. Accordingly, Defendant's Motion to Dismiss is **DENIED** on this ground.

### B. Whether the Initial Communication Constitutes a "Debt Collection Communication" Under the FDCPA

Defendant next argues that the Initial Communication is not a "connection with the collection of any debt" (i.e. a debt collection communication) under the FDCPA. To be liable under the FDCPA's substantive provisions, a debt collector's conduct must have been taken "in connection with the collection of any debt," *e.g.,* 15 U.S.C. §§ 1692c(a)-(b), 1692d, 1692e, 1692g, or in order "to collect any debt," *id.* § 1692f; see also *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 459-60 (6th Cir. 2013). Otherwise stated, to state a claim under the Act, "a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in a debt collection activity." *Clark v. Lender Processing Services*, 2014 WL 1408891, at *5 (6th Cir. 2014).

Defendant argues that, for Plaintiffs to prevail on Counts II-IV, Plaintiffs must first show that the Initial Communication was a debt collection communication under the FDCPA.[1] Defendant maintains that the Initial Communication was not a debt collection communication; instead, it merely informed Plaintiffs that the servicing of the Loan was transferred to Green Tree and summarized the Loan's current status. (Doc. 3 at 10). Plaintiffs, on the other hand, argue

---

[1] Specifically, Defendant insists that, if the Initial Communication is not a debt collection communication, Count III fails because Defendant would not have been required to provide the 30-day debt validation language within five days of sending the communication, as required under 1692g(a). Similarly, Defendant maintains that Count II fails if the Initial Communication is not a debt collection communication because the second letter would not be implicated by 1692g unless the Initial Communication was not a debt collection communication. Finally, Defendant argues that Count IV can only state a claim if the Initial Communication was a debt collection communication because it alleges that the Initial Communication violated 1692e(14) on its face.

that the Initial Communication "was intended not only to provide information that the debt had been transferred, but also to induce Plaintiffs to make a payment to Defendant." (Doc. 6 at 11). As such, Plaintiffs aver, the Initial Communication should be considered a communication in connection with the collection of a debt under the FDCPA.

Although an important concept in the Act, it does not define debt collection. *Glazer*, 704 F.3d at 460. The Sixth Circuit, however, has described a debt collection communication under the FDCPA as follows:

> The text of § 1692e makes clear that, to be actionable, a communication need not itself be a collection attempt; it need only be "connect[ed]" with one. Thus, we agree with the Seventh Circuit that an "explicit demand for payment" is not always necessary for the statute to apply. But it is just as clear that the statute does not apply to *every* communication between a debt collector and a debtor. So the question is where to draw the line. We draw it at the same place the Seventh Circuit did in *Gburek*: for a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor. *See id.* at 385 ("a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections" of the Act). Obviously, communications that expressly demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment. *See, e.g., id.* at 386 (third-party letter directing debtor to contact creditor was sent in connection with collection of a debt). Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection.

*Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) (internal citations and quotations omitted) (holding that balance statements were "merely a ministerial response to a debtor inquiry, rather than part of a strategy to make payment more likely," thus a reasonable jury could not find that an animating purpose of the statements was to induce payment; the "decisive point" was that defendant made the balance statements only after plaintiff called and asked for them).

This Circuit has also stated that, while "debt collection" is not defined, the statute includes certain "guideposts" that illuminate the proper interpretation of the term:

> the Act's substantive provisions indicate that debt collection is performed through either "communication," id. § 1692c, "conduct," *id*. § 1692d, or "means," *id*. §§ 1692e, 1692f. **These broad words suggest a broad view of what the Act considers collection.** Nothing in these provisions cabins their applicability to collection efforts not legal in nature. *Cf. Heintz v. Jenkins*, 514 U.S. 291, 292, 115 S.Ct. 1489, 131 L.Ed.2d 395 (1995) (holding that "a lawyer who 'regularly,' through litigation, tries to collect consumer debts" is a "debt collector" under the Act).

*Glazer*, 704 F.3d at 461 (emphasis added).  Indeed, the FDCP defines "communication" broadly as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 USC § 1692a(2).  Therefore, "if a purpose of an activity taken in relation to a debt is to 'obtain payment' of the debt, the activity is properly considered debt collection."  *Id*.

Because the Sixth Circuit has not given more explicit guidance on this issue, Defendant insists that this Court should follow the reasoning of *Thompson v. BAC Home Loans Servicein*g, L.P., No. 2:09-CV-311-TS, 2010 WL 1286747, at \*4 (N.D. Ind. Mar. 26, 2010).  In *Thompson*, the debtor alleged that a loan servicer violated the FDCPA by failing to send the statutorily-required notice, known as the Validation Notice, within five days of sending a notice of transfer of servicing rights.  The loan servicer claimed that the notice of transfer was not a communication in connection with debt collection under the FDCPA.  *Id*. at \*1.  The court agreed.  In finding that the notice of transfer was not a debt collection communication, the Court noted that:

> The Notice does not address the status of the Plaintiff's home mortgage loan, declare that it is in default, or demand any payment pursuant to such default….[t]here is no indication that the Defendants are undertaking collection efforts for missing or late payments. Rather, they are providing information about the new servicer, including its payment remittance address, so that the consumer can avoid missing payments or making late payments which might necessitate the sending of a real dun.

…

> Although ensuring payment of the debt cannot be denied as the Defendant's ultimate goal, the Notice itself did not provide terms of payment or deadlines, threaten further collection proceedings, or demand payment in any form.

*Id*. at *4-5.

*Thompson*, however, is readily distinguishable from the present case. In *Thompson*, the notice at issue was six pages long, and included a variety of documents, including a statement of rights granted to consumers under the Real Estate Settlement Procedures Act, Bank of America's privacy policy, a "Federally Required Affiliate Marketing Notice," and a statement directed to borrowers who were in bankruptcy proceedings. The Court determined that the combination of materials was such that it did not necessarily indicate defendants were trying to collect a debt. In the case *sub judice*, on the other hand, Plaintiffs received a two page document focused exclusively on their debt – the servicing transfer, the current balance owed, and a due date for the next payment – and information related to payment of that debt.

Additionally, a key factor in the *Thompson* Court's analysis was that the final page of the notice explicitly advised the plaintiff that the document was intended for informational purposes only:

> [The Notice] also states that the purpose of the Notice is to advise of the transfer of the servicing of the mortgage, that if the borrower is currently in a bankruptcy proceeding that the notice is for informational purposes only, that the "notice and courtesy payment coupon attached are not intended as an action to recover or enforce a claim," and that if he is a Chapter 13 debtor he should continue to make payments in accordance with his plan and ignore the courtesy payment coupon. The notice concludes by stating that it is an "informational statement only."(DE 1, Ex. A (emphasis in original).)

*Thompson*, 2010 WL 1286747, at *5. The *Thompson* Court found that, in part because of this clear disclaimer, an objective recipient would have understood that the defendant was taking no

position on the status of the debt at issue. The Initial Communication at issue here, on the other hand, contained no such explicit advisement.

Finally, the *Thompson* Court's interpretation construes a remedial statute in a narrow fashion, flouting the traditional canon of statutory interpretation that "remedial statutes should be liberally construed." *Peyton v. Rowe*, 391 U.S. 54, 65, 88 S. Ct. 1549, 1555, 20 L. Ed. 2d 426 (1968). For example, although the *Thompson* Court determined that "ensuring payment of the debt cannot be denied as the Defendant's ultimate goal," it then strictly construed the phrase "in connection with the collection of any debt" to require a communication to mention default or delinquency, threaten further collection proceedings, or explicitly demand payment. *Thompson*, 2010 WL 1286747, at *4-5. Such a narrow reading of the FDCPA also contravenes the explicit direction of the Sixth Circuit in cases interpreting the FDCPA, to construe the Act with the understanding that it is "extraordinarily broad." *Frey*, 970 F.2d at 1521. *See also Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008) ("[T]he FDCPA is extraordinarily broad, crafted in response to what Congress perceived to be a widespread problem."); *Glazer*, 704 F.3d at 461 (stating that the "broad words" used in the FDCPA's substantive provisions "suggest a broad view of what the Act considers [debt] collection."); *Grden*, 643 F.3d at 173 (finding that, to be actionable, "a communication need not itself be a collection attempt; it need only be 'connect[ed]' with one."). For these reasons, the Court declines to follow *Thompson*'s reasoning in the present case.

Plaintiffs, on the other hand, argue that this Court should adopt the reasoning of *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240 (3d Cir. 2014) cert. denied, 135 S. Ct. 487, 190 L. Ed. 2d 360 (2014). In *McLaughlin*, the plaintiff's mortgage company put him into default in error and referred the matter to a law firm ("PHS"). *Id*. at 243-244. PHS then

sent plaintiff a letter stating the amount of the debt, that PHS was a "debt collector attempting to collect a debt," and told plaintiff how to obtain current payoff quotes. *Id*. at 246. PHS argued that the letter was not a "debt collection activity" subject to the FDCPA because it did not make a demand for payment, suggest that plaintiff settle the underlying debt, or propose that plaintiff enter into a payment plan. *Id*. at 245. Even though the letter did not contain a demand for payment, the Third Circuit Court of Appeals rejected PHS' argument, finding:

> The FDCPA 'regulates debt collection' but does not define the term. *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 265 (3d Cir.2013). The statute's substantive provisions, however, make clear that it covers conduct 'taken in connection with the collection of any debt.' *Id*. (internal quotation marks and citations omitted). Put differently, activity undertaken for the general purpose of inducing payment constitutes debt collection activity. *Id*.; *see also Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir.2010) (describing "the commonsense inquiry of whether a communication from a debt collector is made in connection with the collection of any debt"). Thus, a communication need not contain an explicit demand for payment to constitute debt collection activity. *Simon*, 732 F.3d at 266.
>
> It is reasonable to infer that an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt. Thus, the Letter constitutes debt collection activity under the FDCPA and misrepresentations contained therein may provide a basis for relief.

*McLaughlin*, 756 F.3d at 245. The Court noted that communications discussing details and information about the debt at issue – such as the status ofr payment and requests for financial information – are reasonably considered "part of a dialogue to facilitate satisfaction of the debt and hence can constitute debt collection activity." *See id*. at 246.

In light of Sixth Circuit precedent determining that the FDCPA is an "extraordinarily broad statute," *Frey*, 970 F.2d at 1516, and in light of the *Grden* Court's finding that an explicit demand for payment is not always required for a document to be considered a debt collection communication, this Court adopts the reasoning of *McLaughlin*. *See Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) ("Obviously, communications that expressly

demand payment will almost certainly have this purpose. But so too might a communication that merely refers the debtor to some other communication that itself demands payment…Thus, to use the language of § 1692e, a letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection.").

 In this case, the Initial Communication does not include a title, heading, or statement of purpose indicating it is a merely a notice of transfer.  Neither does it contain language specifically indicating it was sent merely for informational purposes, unlike the communication sent in *Thompson*.  In addition, it included a 'total amount due' and, again, unlike in *Thompson*, a due date.  Further, the Initial Communication included a self-addressed payment coupon indicating an amount due, with Plaintiffs' account number and address, and instructions as to whom Plaintiffs' should make their check payable.

Moreover, the letter also included language required by the FDCPA for any initial communication with a consumer – "this communication is this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose."  Although this language *alone* may not be enough to transform a document into a debt collection communication, *see, e.g.*, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399 (6th Cir. 1998), in combination with the other information included in the Initial Communication and, importantly, the information omitted therefrom, it is reasonable for a party to infer that the Initial Communication is a communication related to collection of a debt.  *See McLaughlin*, 756 F.3d at 246 (holding that it was "reasonable to infer that an entity that identifies itself as a debt collector, lays out the amount of the debt, and explains how to obtain current payoff quotes has engaged in a communication related to collecting a debt" under the FDCPA).

Thus, the Court finds that it is a communication in connection with the collection of a debt under the FDCPA.  As in *Grden* and *McLaughlin*, the Initial Communication, while informative, also is viewed reasonably as part of a dialogue to facilitate the satisfaction of a debt and aiming to make a collection attempt more likely to succeed; thus, it has the requisite connection to debt collection under the FDCPA.  For these reasons, Defendant's Motion to Dismiss on this basis is **DENIED**.

### C.  Whether Count Four of Plaintiffs' Complaint, Alleging Violations Under FDCPA §1692e(14) fails as a matter of law

In Count Four of their Complaint, Plaintiffs allege that Defendant's violated §1692e(14) by using the logos of both CitiFinancial and Green Tree at the top of the letterhead on which it sent the Initial Communication, and because the letter was "robo-signed" by both CitiFinancial and Green Tree.  Plaintiffs aver that Green Tree's use of letterhead containing the name "CitiFinancial" was the "use of a business, company, or organization name other than the true name of Green Tree's business, company, or organization" in violation of § 1692e(14).  Moreover, Plaintiffs claim that they "were confused as to who was the source" of the Initial Communication.

Defendant argues, in the alternative to its previous arguments for dismissal, that Count Four fails to state a claim because Plaintiffs fail to plead that they was confused as to which entity was collecting the debt based on the use of both CitiFinancial's and Green Tree's logos at the top of the Initial Communication; instead, Defendant maintains, Plaintiffs merely pled that they were confused as to the *source* of the letter.  Further, Defendants aver that Plaintiff does not allege that, at any time, Green Tree used the name of another entity to collect on the Loan.  Thus, Defendants insist, Count Four fails to state a claim.

Plaintiffs respond first that their subjective confusion is not a determining factor to plead sufficiently a violation of § 1692e(14); instead, Plaintiff insists that when a debt collector uses any name other than its own in a communication it is a *per se* violation of § 1692e(14).  (Doc. 6 at 16 *citing Boyko v. American Intern. Group, Inc.*, 2012 WL 1495372 (Dist. Ct. D. N.J. April 26, 2012)).  Plaintiffs also counter that, to the extent their confusion is a factor in alleging a violation of § 1692e(14), their Complaint adequately alleges that they were confused about the source of the Initial Communication.  (Doc. 6 *citing Compl*,, Doc. 1 at 97-99).

### 1.  The "Least Sophisticated Consumer" Standard

Among other things, the FDCPA prohibits a debt collector from making "[a]ny false, deceptive, or misleading misrepresentation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.  Section 1692e(14) specifically disallows "[t]he use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization."  15 U.S.C. § 1692e(14).  In determining whether a debt collection practice is deceptive or misleading, that practice "must be viewed objectively from the standpoint of the 'least sophisticated consumer.' "  *Foster v. D.B.S. Collection Agency*, 463 F. Supp. 2d 783, 800-01 (S.D. Ohio 2006); *Gionis v. Javitch, Block & Rathbone*, 405 F.Supp.2d 856, 864 (S.D. Ohio 2005) (Holschuh, J.) (*quoting Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir.1997)); *see also Edwards*, 136 F.Supp.2d at 798 (*citing Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1028 (6th Cir. 1992)).  Against this backdrop, to withstand a motion to dismiss, Plaintiffs must plead facts supporting their § 1692e(14) claim sufficient to show  that the least sophisticated consumer would be misled by the practice at issue.

The least sophisticated consumer standard "recognizes that the FDCPA protects the gullible and the shrewd alike, while simultaneously presuming a basic level of reasonableness

and understanding on the part of the debtor, thus preventing liability for bizarre or idiosyncratic interpretations of debt collection notices." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 533 (6th Cir. 2014) (*citing Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)). Moreover, "[E]ven the 'least sophisticated consumer' can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Powell v. Computer Credit, Inc.*, 975 F. Supp. 1034, 1039 (S.D. Ohio 1997) *aff'd*, No. 97-3979, 1998 WL 773989 (6th Cir. Oct. 15, 1998) (*citing Clomon v. Jackson*, 988 F.2d 1314, 1319 (2d Cir.1993)).

The Sixth Circuit has held that "a collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 512 (6th Cir. 2007) (quoting *Russell v. Equifax A.R.S.,* 74 F.3d 30, 35 (2d Cir. 1996)). Courts have also found that the focus of the FDCPA and §1692e(14) is see "not on whether the name used by the creditor is permitted by law, but on whether the name used results in the debtor's deception in terms of what entity is trying to collect his debt." *Gutierrez v. AT & T Broadband, LLC*, 382 F.3d 725, 740 (7th Cir.2004); *see also Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 CIV. 5868 PKC, 2011 WL 4344044, at *5 (S.D.N.Y. Sept. 8, 2011).

In this case, even when construing the Plaintiffs' allegations as true, Plaintiffs have not stated a claim for violation of §1692e(14). The Initial Communication clearly identifies both CitiFinancial and Green Tree, and their relationship to each other: the letter states that it is from both CitiFinancial, as the "Present Servicer" and Green Tree, as the "New Servicer," and informs Plaintiffs that "the right to collect loan payments…is being transferred from CitiFinancial to Green Tree." In addition, the Initial Payment Coupon attached to the letter indicates that checks

for payment of the account should be made payable to Green Tree. Moreover, Plaintiffs' Complaint fails to allege that Green Tree is misidentified or unidentified in the Initial Communication or at any time in communications made to collect on the Loan. Indeed, despite the fact that Plaintiffs were "confused as to who was the source of the Initial Communication," Plaintiffs apparently understood that Green Tree was the party attempting to collect on the Loan because they only allege that they sent a notice disputing the debt collection to, and conducted subsequent communications with, Green Tree. (Doc. 1, ¶¶ 35-37).

Thus, the Court finds that Plaintiffs have not stated a plausible claim that the least sophisticated consumer would not have understood that Green Tree was attempting to collect on the debt. Although Plaintiff points to one case from the District Court of New Jersey that held debt collectors strictly liable under § 1692e(14), *see Boyko*, 2012 WL 1495372, the case is not binding authority on this Court, and this Court is unable to find any authority from the Sixth Circuit creating such a *per se* rule. For these reasons, Count Four is **DISMISSED** for failure to state a claim.

### D. Plaintiffs' Class Allegations in Class Count Two

Plaintiff also seeks to bring a putative class claim for systemic violations of 15 U.S.C. 1692e(14) for Defendant's alleged use of letterhead containing the use of a name of a different financial institution other than the true name of Green Tree's business, company, or organization, the same conduct Plaintiff alleges in individual Count Four. "When a plaintiff does not have an individual claim," however, as the Court has found here, "he cannot serve as a class representative." *See, e.g., Moore v. First Advantage Enter. Screening Corp.*, No. 4:12 CV00792, 2013 WL 1662959, at *8 (N.D. Ohio Apr. 17, 2013) (*citing Chambers v. American Trans Air, Inc.,* 17 F.3d 998, 1006 (7th Cir.1994)).

24

Thus, because the Court dismisses Plaintiffs' individual claims under Count Four, and because Plaintiff's Complaint does not identify any additional putative class representatives, the putative class claim contained in Class Count Two must be dismissed.  For these reasons, Class Count Two is **DISMISSED**.

### E.  Whether Plaintiffs' Class Allegations in Class Count One Should be Stricken as a Matter of Law

In the alternative to dismissal, Defendant moves to strike the class action claims asserted in Class Count One of Plaintiffs' Complaint.  The Court denies Defendant's request.

In Class Count One, Plaintiffs seek to represent a putative plaintiff class that consists of "[e]very consumer who was sent, from June 3, 2013 to present, an initial communication from Green Tree as more particularly described in ¶106 conveying information about a consumer debt sold and/or transferred to Green Tree when in default or being treated as in default."  (Doc. 1, ¶ 109).[2]

Rule 23 of the Federal Rules of Civil Procedure governs class actions brought in federal court.  In general, district courts have broad discretion to decide whether to certify a class.  *See In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir. 1996).  To obtain class certification, Plaintiffs must establish the following prerequisites set out in Rule 23(a):  (1) the class is so

---

[2] Paragraph 106 of Plaintiffs' Complaint, referenced in ¶ 109, states:

> 106. Upon information and belief, Green Tree intentionally and systematically sends such borrowers an initial letter of the same form and nature as the "Initial Communication" sent to the Gearys (attached as "Exhibit A"), with the following notable characteristics:
> a) Letterhead containing both the name "Green Tree" and the name of the financial institution that sold and/or assigned the consumer debt to Green Tree;
> b) Information regarding the subject debt and Green Tree;
> c) Robo-signature of both Green Tree and the financial institution that sold and/or assigned the debt to Green Tree;
> d) Attached payment coupon with instruction to make payment to Green Tree;
> e) Absence of the 30-day language specified in 15 U.S.C. §1692g(a)(3)-(5).

(Doc. 1, ¶ 106).

numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a); *see also Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011). In addition to meeting the prerequisites of Rule 23(a), a party seeking class certification also must show that the class action is maintainable under one of the three provisions of Rule 23(b). *Pilgrim*, 660 F.3d at 945.

Rule 23 is more than "a mere pleading standard"; a party seeking class certification must demonstrate sufficient facts to meet its requirements. *Wal–Mart Stores, Inc. v. Dukes*, –U.S. –, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 (2011)). Indeed, certification of a class is only appropriate if, after conducting a "rigorous analysis," the trial court determines that the prerequisites of Rule 23 have been met. *Id.*; Fed.R.Civ.P. 23(c)(1)(A).

Either party may move for resolution of the class-certification question at any stage of the proceedings, and the class action allegations may be stricken prior to a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim,* 660 F.3d at 949; *see also, e.g.*, *Vinole v. Countrywide Home Loans, Inc.,* 571 F.3d 935, 941–44 (9th Cir. 2009). Plaintiff bears the burden of proving that the class certification elements are satisfied. *In re Am. Med. Sys., Inc., supra,* 75 F.3d at 1079.

Defendant moves to strike Plaintiffs' class allegations made in Class Count One, arguing that the Plaintiffs' proposed class is an impermissible "fail safe" class.[3] According to the

---

[3] The Sixth Circuit defines a 'fail-safe' class as one that cannot be defined until the case is resolved on its merits. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 539 (6th Cir. 2011). A fail-safe class "includes only those who are entitled to relief." *Young,* 693 F.3d at 538. "Such a class is prohibited because it would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those 'class members win or, by virtue of losing, they are not in the class' and are not bound." *Id.* (internal quotations omitted); *see also Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *4 (S.D. Ohio May 7, 2014).

Defendant, for the Court to ascertain who is in the putative class based on the characteristics Plaintiffs put forth, the Court would be not only deciding that a class exists, but also would be deciding the merits of the claim.

Plaintiffs respond that, in light of the requirement that courts make certification determinations only after a "rigorous analysis," Defendant's motion to strike class allegations is premature and disfavored under the law.  (Doc. 6 at 20-21).  Further, Plaintiffs argue that Defendant improperly reads legal conclusions into the class definition contained in Class Count One.  (*Id*. at 20).  Plaintiffs insist that the Court need not make any determination on the merits of the case before class members can be identified.  (*Id*. at 20-21).

Defendant relies on authority standing for the proposition that a court *may* strike class action allegations before a motion for class certification where the complaint demonstrates that the requirements for maintaining a class action cannot be met.  *See Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011) (affirming the district court's judgment striking class allegations and dismissing an action prior to discovery where the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering").

This Court has also noted, however, that "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action."  *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-CV-846, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014) (ultimately finding plaintiff improperly pled a fail-safe class, but granting plaintiff leave to amend its pleadings) (internal quotations and citations omitted).  *See also Mazzola v. Roomster Corp.,* 849 F.Supp.2d 395, 410 (S.D.N.Y. 2012) ("[A]

27

motion to strike class actions ... is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of ... litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification").

While the Court *may* strike class allegations prior to a motion to certify, the Court declines to do so at this early stage. The Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage. The docket reflects that discovery has been stayed until the court rules on the present motion. (*See* Doc. 13). Without further insight into the facts, the Court lacks the foundation to conduct the "rigorous analysis" required by Rule 23 and determine the appropriateness of class certification. *See, e.g., Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 516 (S.D. Ohio 2012) (declining to strike class allegations at the pleading stage, deeming it prudent to evaluate plaintiff's putative class after class certification briefing); *Eliason v. Gentek Building Prods., Inc.*, No. 1:10–cv–2093, 2011 WL 3704823 at *2–3, 2011 U.S. Dist. LEXIS 94032, at *7–8 (N.D.Ohio Aug. 23, 2011) (noting that a motion to strike class allegations is not a substitute for class determination); *Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 1565954, at *2 (N.D. Ohio June 3, 2009) (finding that defendant's arguments about class certification premature where they were made prior to the parties' first case management conference in part because courts must have time to conduct a rigorous analysis before ruling on class certification).

For these reasons, Defendant's Motion to Strike Class Count One is **DENIED**.

## V.      CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss (Doc. 3) is **GRANTED IN PART** and **DENIED IN PART**.   Defendant's Motion to Dismiss is denied as to Counts Two and Three, and as to Class Count One.  Defendant's Motion to Dismiss is granted as to Count Four and Class Count Two.

**IT IS SO ORDERED.**

       **s/Algenon L. Marbley**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: March 20, 2015**