**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN & CONNIE GEARY on behalf of themselves and all others similarly situated, | ) ) ) | CASE NO. 14-00522-ALM/EPD |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge: Marbley |
| GREEN TREE SERVICING, LLC, | ) ) ) | Magistrate Judge: Deavers |
| Defendant. | ) ) | |
| _____ | ) | |

**OPPOSITION OF DEFENDANT GREEN TREE SERVICING LLC TO PLAINTIFFS'
MOTION TO CERTIFY CLASS WITH REQUEST FOR ORAL ARGUMENT**

Defendant Green Tree Servicing LLC n/k/a Ditech Financial LLC ("Green Tree"), by its

undersigned counsel, hereby submits its Opposition to Plaintiffs Brian and Connie Geary's

("Plaintiffs") Motion to Certify Class (the "Motion"), and in support thereof, states the

following.

**I.    INTRODUCTION**

In the Motion, Plaintiffs seek the certification of a nationwide class of approximately

17,000 members that allegedly suffered actual damages, including but not limited to, for sums

paid to Green Tree and emotional distress, arising out of Green Tree's alleged failure to provide,

within five days of the initial loan servicing transfer notice, the information required by Section

1692g(a)(3)-(5) of the Fair Debt Collection Practices Act ("FDCPA").  The Court should deny

the Motion for the following reasons.

First, Plaintiffs lack standing under Article III to prosecute their remaining class claim

under Section 1692g of the FDCPA given that they suffered no concrete or particularized injury

as the result of the alleged delay by Green Tree in providing the disclosures required by Section

1692g(a)(3)-(5) of the FDCPA.  Plaintiffs concede they never paid anything to Green Tree and, consequently, do not seek to recoup such damages and have not demonstrated they suffered any emotional distress as a result of the alleged delay.

Second, Plaintiffs cannot satisfy the elements of Rule 23 as, among other things, they neither establish that their claims are typical of the putative class nor that the class suffered common actual damages.  Plaintiffs seek to recover actual damages for damage to their credit, while they do not seek such damages on behalf of the putative class.  Moreover, Plaintiffs concede that the nature of actual damages vary among putative class members as some members may assert emotional distress claims while others may seek return of any payments made prior to receipt of the Section 1692g validation notice.  Further, the existence and nature of emotional distress is unique as to each class member and weighs against a finding of commonality. Specifically, the Court would have to first determine whether each class member suffered emotional distress as a result of a delay in service of the Section 1692g validation notice, and then inquire as to the damages necessary to compensate for the specific emotional distress incurred by each class member.

Furthermore, Plaintiffs' claims are not typical of the putative class as they bring two additional claims under Section 1692e(2)(a) and Section 1692g of the FDCPA that are not class claims and seek different categories of actual damages (damage to credit) than the putative class.

Third, Plaintiffs are not adequate class representatives because of their unique circumstances and because they purport to represent a class that seeks the return of payments made to Green Tree prior to receipt of the Section 1692g validation notice when they made no payments to Green Tree whatsoever.

DMEAST #27248032 v3

Fourth, individualized issues clearly predominate over the singular issue of whether the class members timely received the Section 1692g notice given that the Court would have to conduct factually intensive mini-trials with respect to each class member to determine whether: (1) the FDCPA applied to his or her loan as investment, commercial and other business loans would be exempt; (2) Green Tree sent the servicing transfer notice prior to the effective date of the servicing transfer; (3) the servicing transfer notice was the initial debt collection communication under the FDCPA; (4) Green Tree committed a bona fide error under Section 1692k(c) of the FDCPA by sending the servicing transfer notice; (5) the class member could establish detrimental reliance on the alleged delay in the Section 1692g notice as a prerequisite to the recovery of actual damages; and (6) the existence and nature of emotional distress as to each class member.  Specifically, with respect to the latter points, each class member would have to establish that the delay in service of the Section 1692g notice caused them to make a payment that otherwise would not have been made and/or it caused them to suffer emotional distress. This would entail not only taking the testimony of each class member but also subpoenaing medical professionals and other third party witnesses from around the country to ensure that the emotional distress existed and did not precede the service of the Section 1692g notice or did not result from other factors.

Fifth, Plaintiffs cannot establish that a nationwide class action is a superior method of adjudication.  Specifically, class members would recover far less in this action, as statutory damages are capped at $500,000, given that the FDCPA enables a plaintiff to recover, in an individual lawsuit, statutory damages of $1,000, uncapped actual damages and recovery of reasonable attorney's fees and costs.

Sixth, the putative class is an impermissible fail-safe class as class membership is predicated on each member first establishing a violation under Section 1692g of the FDCPA. This Court and the Sixth Circuit have repeatedly held such classes are improper.

Finally, the proposed class is unascertainable as Plaintiffs define the class in a manner that would require the Court to undertake a manual, file-by-file review of thousands of loan files and then subjectively determine whether the class member's loan is subject to the FDCPA, whether he or she received a servicing transfer notice that obligated Green Tree to serve the disclosures required by Sections 1692g(a)(3)-(a)(5) of the FDCPA and whether he or she suffered any actual damages as the result of the alleged violation.

Hence, the Court should deny the Motion.

## II.     FACTUAL BACKGROUND

### A.     Relevant Facts and Allegations

Plaintiffs are Ohio residents that seek to represent a nationwide class.  [Complaint, ECF No. 1 at ¶¶3, 109].  On March 18, 2008, Plaintiffs obtained a loan from CitiFinancial, Inc. ("CitiFinancial") in the principal amount of $13,504.84 (the "Loan") to finance the purchase of an automobile.  Declaration of Stewart Derrick ("Derrick Declaration"), Ex. A hereto, at ¶5.

On August 18, 2011, Plaintiffs filed for Chapter 7 bankruptcy in the matter styled *In re Brian T. Geary and Connie M. Geary*, Case No.: 2:11-bk-58574 in the Bankruptcy Division of the United States District Court, Southern District of Ohio (the "Bankruptcy Action").  On December 2, 2011, Plaintiffs entered into a Reaffirmation Agreement (the "Agreement") which reaffirmed the Loan and established a new repayment schedule.  [ECF No. 1 at ¶¶14-15]. Plaintiffs allege that they fully paid the Loan under the terms of the Reaffirmation Agreement while CitiFinancial still serviced the Loan.  [Id. at ¶¶19-20].

4

Among other things, Green Tree is in the business of servicing personal, automobile and mortgage loans including loans originated by other entities and initially serviced by other servicers as was Plaintiffs' Loan.  See Derrick Declaration, Ex. A at ¶¶4, 5.  Green Tree also services loans intended for a business or commercial purpose.  See id.at ¶4.  Green Tree collects principal, interest and where applicable escrow payments from the borrower and remits payments to the proper parties.  See id.

Effective November 1, 2013, CitiFinancial transferred servicing of the Loan to Green Tree.  See id. at ¶¶5,6 & Exhibit 1 thereto.  By letter dated October 16, 2013, and before the effective date of the transfer of servicing rights to Green Tree, Green Tree, together with CitiFinancial, first apprised Plaintiffs of the impending servicing transfer (the "Transfer Notice").  See id.  A true and correct copy of the Transfer Notice is attached to the Derrick Declaration as Exhibit "1".  Green Tree cannot collect payments on a loan until the servicing rights have been transferred.  Id. at ¶6.  Thus, the Transfer Notice was not intended to encourage Plaintiffs to make a payment to Green Tree and was not intended to be a debt collection communication.  Id. at ¶¶6, 12.  Green Tree did not send Plaintiffs any other correspondence and did not contact Plaintiffs by phone until November 14, 2013, after the effective date of the servicing transfer.  Id. at ¶6.

By letter dated November 14, 2013, Green Tree again notified Plaintiffs of the servicing transfer (the "Validation Notice").  Id. at ¶7.  A true and correct copy of the Validation Notice is attached to the Derrick Declaration as Exhibit "2".

By letter dated November 21, 2013, Plaintiffs notified Green Tree that they had reaffirmed the Loan pursuant to the Agreement and fully repaid the Loan under its terms to

CitiFinancial. [ECF No. 42 at Ex. C]. Plaintiffs allege that Green Tree failed to timely close their account or deliver clear title to the automobile. [ECF No. 42 at ¶¶55-57].

It is the explicit policy of Green Tree to not acquire loans that were fully satisfied as Green Tree cannot and does not service such loans. Derrick Declaration, Ex. A at ¶9. Green Tree also has written policies and procedures in place to ensure compliance with the FDCPA and to ensure, among other things, that it does not solicit payments on paid off loans. Id. at ¶10. Green Tree trains its employees with respect to these policies and procedures and mandates compliance therewith. Id. Pursuant to the aforementioned policies and procedures, the servicing rights with respect to Plaintiffs' Loan should not have been transferred to Green Tree and Plaintiffs should not have been sent any communications, including the Transfer Notice. Id.

## B. Procedural History

On June 3, 2014, Plaintiffs filed this putative class action seeking to recover actual and statutory damages for Green Tree's alleged violations of Sections 1692e and 1692g of the FDCPA. [ECF No. 1]. While the Complaint pled four causes of action, Plaintiffs only sought to certify classes with respect to Counts II (Class Counts I and III) and IV (Class Counts II and IV).[1] [ECF No. 1 at pp. 12-22].

In Count II, Plaintiffs claim that Green Tree violated 15 U.S.C. § 1692g(a) of the FDCPA by failing "to send a written notice containing the 30-day Debt Validation language within five days" after sending the Transfer Notice. [ECF No. 1 at ¶79]. Plaintiffs allege that Green Tree

---

[1] With respect to the two non-class claims, in Count I, Plaintiffs allege that Green Tree violated 15 U.S.C. § 1692e(2)(A) of the FDCPA by sending billing statements, loan account correspondence, and placing collection calls while knowing that the Loan had been paid in full prior to the servicing transfer. [ECF No. 1 at ¶¶65-66]. In Count III, Plaintiffs allege that Green Tree violated 15 U.S.C. § 1692g(b) of the FDCPA by allegedly failing to provide "any written documentation providing verification of the debt" in response to their letter dated November 21, 2013, which disputed the amount due under the Loan after receiving the Validation Notice. [ECF No. 1 at ¶87].

"intentionally and systematically sends borrowers an initial letter of the same form and nature [of the Transfer Notice]" which omits "the 30 day language specified in 15 U.S.C. § 1692g(a)(3)-(5)." [ECF No. 1 at ¶¶ 106, 109]. Plaintiffs claim that Green Tree "fails to send borrowers written notice containing the required 30 day debt validation language within five days of sending [the Transfer Notice]." [ECF No. 1 at ¶107]. Plaintiffs seek to certify the following nationwide class:

> Every consumer who was sent from June 3, 2013 to present, an initial communication from Green Tree [in the same form and nature as the Transfer Notice] conveying information about a consumer debt sold and/or transferred to Green Tree when in default and/or treated in default.

[ECF No. 1 at ¶109].

Plaintiffs allege that the putative class members have each suffered "undue stress, aggravation, lost time, cost" and seek to recover actual damages "to such amount as the Court may allow" together with the maximum statutory damages, and reasonable attorney's fees. [ECF No. 1 at ¶¶ 109 & 165].

In Count IV, Plaintiffs allege that the Transfer Notice violated 15 U.S.C. § 1692e(14) of the FDCPA because the letterhead "contained….the separate and distinct names of both CitiFinancial and Green Tree" and "was robo-signed by both CitiFinancial and Green Tree." [ECF No. 1 at ¶¶ 93-94].

On March 20, 2015, the Court entered its Opinion and Order (the "Order") on Green Tree's Motion to Dismiss the Complaint, or in the Alternative, to Strike Class Allegations (the "Motion to Dismiss"). [ECF No. 14]. In the Motion, Green Tree had argued, *inter alia,* that the Transfer Notice was not a debt collection communication, and, thus, Section 1692g of the

FDCPA did not apply since its disclosures are only triggered by the service of the initial communication in connection with the collection of a debt.  [ECF No. 3 at pp. 7-10].

The Order denied the Motion with respect to Count II, but granted it with respect to Count IV.  [ECF No. 14].  In holding that Plaintiffs adequately pled that the Transfer Notice constituted a debt collection communication under the FDCPA, the Court noted that:

> the Initial Communication does not include a title, heading, or statement of purpose indicating it is a merely a notice of transfer. Neither does it contain language specifically indicating it was sent merely for informational purposes, unlike the communication sent in *Thompson*.  In addition, it included a 'total amount due' and, again, unlike in *Thompson*, a due date.  Further, the Initial Communication included a self-addressed payment coupon indicating an amount due, with Plaintiffs' account number and address, and instructions as to whom Plaintiffs' should make their check payable.

[ECF No. 14 at p. 20].  Finally, the Court dismissed Class Counts II and IV, which had attempted to state a claim that the Transfer Notice violated 15 U.S.C. § 1692e(14) of the FDCPA.  [ECF No. 14 at p. 25].

In Plaintiffs' Responses to Defendant Green Tree's First Set of Interrogatories (the "Responses"), Plaintiffs distinguished the actual damages they sought to recover personally from the actual damages they sought to recover on behalf of the class.  <u>See</u> Responses, Ex. B hereto. Plaintiffs claim actual damages for themselves arising out of "stress and aggravation, lost time, damage to credit, costs and attorney's fees."  <u>See</u> Ex. B at p. 5.  As an example of credit damage, Plaintiffs assert that they applied for credit from Web Bank "for computer equipment purchase and was denied."  <u>Id</u>.

On behalf of the class, Plaintiffs seek recovery of "amounts collected prior to the 30 day debt validation language being sent by Green Tree to class debtors", even though Plaintiffs do not claim they made any payments to Green Tree prior to receipt of the Validation Notice.  <u>Id</u>.

Plaintiffs also seek to recover actual damages for emotional distress suffered by the putative

class members.  [ECF No. 14 at p. 42].  Plaintiffs also seek recovery of "statutory damages

capped at $500,000 plus reasonable attorney's fees."  Id.

### C.  Green Tree's Servicing Transfer Notices

During discovery, Green Tree determined that there were approximately 31,000

borrowers in default at the time of the servicing transfer to Green Tree who received a servicing

transfer notice, but not a separate notice five days thereafter containing the validation disclosures

set forth in Section 1692g(a) of the FDCPA.  Green Tree also determined that it could not

determine the number of borrowers that received each of eleven different servicing transfer

notices unless it conducted a manual, file-by-file review of all 31,000 loans.  [ECF No. 42-1].

The purpose of notices such as the Transfer Notice is to inform Plaintiffs of the servicing

transfer to Green Tree.  See Derrick Declaration, Ex. A at ¶12 & Ex. 1 thereto.  It does so by

providing certain details about the Loan, including, the monthly payment information and the

current loan balance so that Plaintiffs know which loan is the subject of the servicing transfer.

Id.  The Transfer Notice was not intended to be a debt collection communication.  Id.  Pursuant

to the aforementioned policies and procedures, Green Tree makes any communication which

may constitute a debt collection communication in strict compliance with the FDCPA including

its debt validation requirements.  Id.

In contrast to the Transfer Notice, the Validation Notice operates to apprise Plaintiffs of

certain rights they have under the FDCPA.  See Derrick Declaration, Ex. A at ¶13 & Ex. 2

thereto.

The Transfer Notices, including those produced in discovery in this case, are not identical

in form or substance.  See Derrick Declaration, Ex. A at ¶¶14-15.  For example, certain notices

explicitly state if the borrower is in bankruptcy that "this notice is informational" [ECF 42-1, pp. 15, 25], while other notices expressly provide that "it is an attempt to collect a debt."[2] [ECF 42-1, pp. 18, 22].  Certain servicing transfer notices include payment coupons [ECF 42-1, pp. 5, 18], while others do not.  [ECF 42-1, pp. 8, 14].  Some servicing transfer notices disclose monthly payment and current loan information [ECF 42-1, pp. 5, 18, 22] while other notices provide no loan or payment detail whatsoever.  [ECF 42-1, pp. 8, 13].

Other notices include Real Estate Settlement Procedures Act ("RESPA") disclosures about servicing transfers [ECF No. 42-1, pp. 27, 35], while others do not.  [ECF 42-1, p. 22].  Specifically, those notices that contain the RESPA disclosure state in part that:

> "NOTICE ABOUT YOUR RIGHTS
>
> You should be aware of the following information which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act ("RESPA")…"

[ECF No. 42-1 at pp. 19, 28].

The selection of which servicing transfer notice to use depends on multiple factors, including, but not limited to, the owner of the loan, the type of loan, the status of the loan and whether the borrower has declared bankruptcy.  Derrick Declaration, Ex. A at ¶15.

---

[2] It is well-settled that a disclaimer stating that correspondence is an attempt to collect a debt does not automatically render it a debt collection communication under the FDCPA.  See, e.g., Lewis v. ACB Bus. Servs., Inc., 135 F. 3d 389, 399 (6th Cir.1998) (holding that "the mere fact that the letter states at the bottom that it is an attempt to collect a debt does not transform the letter into an unlawful demand for payment."); Boosahda v. Providence Dane LLC, 462 Fed. Appx. 331, 334 (4th Cir. 2012) ("Put simply, a debt collector should not be penalized for taking the precaution of including the disclaimer within its initial written communication to the debtor, in the event the debt is subject to the FDCPA."); Gburek v. Litton Loan Servicing, LP, 614 F. 3d 380, 386 (7th Cir. 2010) (emphasizing that FDCPA disclaimer "does not automatically trigger the protections of the FDCPA, just as the absence of such language does not have dispositive significance.").

Plaintiffs acknowledge that only six of the eleven servicing transfer notices are "problematic and worthy of class treatment."  [ECF No. 42 at p. 8].  Plaintiffs then speculate—without any support—that the eleven servicing transfer notices "were divided equally" among the 31,000 borrowers, and, thus, "at least 2,818 of each letter was sent, meaning approximately 17,000 persons more than likely received one of the six [servicing transfer notices]."  [Id.].  However, nowhere do Plaintiffs identify the six servicing transfer notices that allegedly are subject to the FDCPA or explain why those notices are subject to the FDCPA.  [ECF No. 42].

Green Tree cannot learn everything about a particular loan from its electronic servicing platform.  Derrick Declaration, Ex. A at ¶16.  For example, while Green Tree can confirm electronically if a loan was in default at the time that it acquired the servicing rights, it cannot verify electronically whether Green Tree was the first transferee servicer after origination, or if the loan was in default at the time that any prior servicer acquired the servicing rights.  Id.  To obtain that information, Green Tree would have to manually review the entire payment history for the loan.  Id.  Similarly, Green Tree has no way of determining from its loan records whether the borrower used the loan proceeds for commercial or business purposes.  Id. at ¶4.  To do so, Green Tree would have to review the origination file and/or contact the borrower to confirm how he or she used the proceeds.  Id.

Green Tree also cannot conduct an electronic search of its records to determine which servicing transfer notice it furnished to a particular borrower or group of borrowers.  Id. at ¶17.  Additionally, Green Tree's servicing notes do not capture verbatim the exact content of the transfer servicing notice sent to any borrower.  Id.  Thus, the imaged servicing transfer notices are only accessible on a loan by loan basis.  Id. at ¶18.  The notices are also not in electronically searchable text.  To access the servicing transfer notices, the individual borrower's account must

first be accessed and the servicing transfer notice pulled up for review.  Id.  Green Tree would then have to compare that servicing transfer notice with each notice to confirm which of the servicing transfer notices was sent to which particular borrower.  Id.

## III.    LEGAL ARGUMENT

### A.    Legal Standard That Plaintiffs Must Meet To Obtain Class Certification.

The class-action device was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Wal-Mart Stores, Inc. v. Dukes, 131 S.Ct. 2541, 2550 (2011) (citation omitted).  "In order to certify a class, the Court must find, under Rule 23(a), that the standard elements of a class—numerosity, commonality, typicality, and adequacy of the class representatives—have been met, and that, in a damages action….Rule 23(b)(3) is satisfied as well.  No one seriously disputes that the party advocating the certification of a class must offer proof on these factors."  Ross v. Abercrombie & Fitch Co., 2008 WL 4059873, at *2 (S.D. Ohio Aug. 26, 2008).  "A district court may not certify any class without 'rigorous analysis' of the requirements of Rule 23."  Sprague v. General Motors Corp., 133 F. 3d 388 (6th Cir. 1998) (citation omitted).

Plaintiffs' burden to establish these elements is a heavy one, such that a party seeking certification must "affirmatively demonstrate" through evidence that "there are *in fact* sufficiently numerous parties, common questions of law or fact, etc."  Wal-Mart, 131 S.Ct. at 2551; Comcast Corp. v. Behrend, 133 S.Ct. 1426, 1432 (2013) ("The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).").  The Court must then perform a "rigorous analysis" of the plaintiff's proof to determine whether each element of Rule 23 is met at the time of certification.  Wal-Mart, 131 S.Ct. at 2551.

As discussed below, Plaintiffs plainly fail to meet the threshold for certification, and hence, the Court should deny the Motion.

12

**B.      Relevant Requirements Of The FDCPA.**

The FDCPA was enacted "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692e.  Its provisions govern any debts which arise out of transactions "primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5). 15 U.S.C. § 1692g(a)(3) of the FDCPA provides, in pertinent part, that:

> Within five days after the initial communication with a consumer *in connection with the collection of any debt*, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing….. a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector.

(emphasis added).  "It is fundamentally the general statutory prohibition which gives rise to the cause of action, admittedly as further defined by the respective sub-parts." Francis v. GMAC Mortg., 2007 WL 1648884, at *3 (E.D. Mich. 2007) (rejecting the plaintiff's claim that communication from the debt collector was subject to 15 U.S.C. § 1692e(11) as the letter was not a debt collection communication); Clark v. Lender Processing Services, 2014 WL 1408891, at *5 (6th Cir. 2014) (noting that "[t]o state a claim under the FDCPA, a plaintiff must show that a defendant violated one of the substantive provisions of the FDCPA while engaging in debt collection activity.").

In other words, the debt collector is only obligated to send the Section 1692g validation notice once it has sent the initial communication in connection with the collection of the debt. See, e.g., McNall v. Credit Bureau of Josephine Cnty., 689 F. Supp. 2d 1265, 1269 (D. Or. 2010) (noting that "[Defendant's] letter was not the initial communication about the collection of the debt which would trigger the validation notice requirements of 15 U.S.C. § 1692(a)."); Pretlow

13

v. AFNI, Inc., 2008 WL 345593, at *1 (W.D. Va. Feb. 7, 2008) (noting that "Section 1692g is triggered only upon a debt collector's communication with a consumer in connection with the collection of any debt.").

### C. Plaintiffs Did Not Suffer An Injury In Fact Caused By The Delay In Service Of The Validation Notice And Therefore Lack Standing Under Article III.

As a preliminary but primary matter, Plaintiffs lack standing under Article III of the United States Constitution to pursue their claims. The "doctrine of standing" is "an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). The "irreducible constitutional minimum" for establishing standing is that a "plaintiff must have suffered an 'injury in fact,'" by sustaining an "actual or imminent" harm that is "concrete and particularized." Id. (quotation marks omitted). "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997) (citation omitted).

Standing principles delineate "the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III." Lujan, 504 U.S. at 560. To demonstrate standing, a plaintiff bears the burden of showing with respect to each claim asserted that he: (1) has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 180-81 (2000). Injury in fact is the "indispensable element of a dispute which serves in part to cast it in a form traditionally capable of judicial resolution." Schlesinger v. Reservists Comm. To Stop the War, 418 U.S. 208, 220-21 (1974).

14

Indeed, "Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016). Specifically, "an injury in fact must be both concrete **and** particularized." Id. (emphasis added). To satisfy the concreteness requirement, the injury "must actually exist", and be "real and not abstract." Id.

As the Supreme Court recently explained in Spokeo, "[f]or an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Id. at 1548 (citation omitted). A particularized injury must be "individualized rather than collective." Id. (citation omitted). This requirement "reflects the commonsense notion that the party asserting standing must not only allege injurious conduct attributable to the defendant but also must allege that he, himself, is among the injured by that conduct." Hochendoner v. Genzyme Corp., 823 F.3d 724, 731-732 (1st Cir. 2016) (applying Spokeo).

While Congress may "elevat[e] to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate at law" that does **not** mean a plaintiff has standing merely because of the availability of statutory damages. Spokeo, 136 S. Ct. at 1549. Rather, the Supreme Court in Spokeo stressed that a plaintiff does **not** automatically satisfy the injury in fact requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." Id. In words critical to this case, the Supreme Court explained: "Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [a plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury in fact requirement of Article III." Id.

Since <u>Spokeo</u>, lower federal courts have not hesitated to dismiss claims under statutes, including the FDCPA, alleging a bare procedural violation absent concrete harm.  <u>See</u>, <u>e.g.</u>, <u>Jackson v. Abendroth & Russell, P.C.</u>, 2016 WL 4942074, at *6 (S.D. Iowa Sept. 12, 2016) ("A violation of the FDCPA alone, however, does not automatically amount to an injury in fact."); <u>Dolan v. Select Portfolio Servicing</u>, 2016 WL 4099109, at *6-7 (E.D.N.Y. Aug. 8, 2016) (failure to provide timely RESPA servicing transfer notice a procedural violation which could not support standing); <u>Tourgeman v. Collins Fin. Serv.</u>, 2016 WL 3919633 (S.D. Cal. June 16, 2016) (violation of FDCPA standing alone insufficient to confer standing).

In the instant matter, Plaintiffs lack Article III standing to bring any claim under Section 1692g of the FDCPA for Green Tree's alleged failure to serve the Validation Notice within five days of the Transfer Notice.  It is undisputed that Plaintiffs never made any payments to Green Tree.  While Plaintiffs claim they generally suffered "stress and aggravation, lost time, damage to credit" [Ex. B at p. 5] as a result of the alleged FDCPA violations as a whole, they do not— and cannot—explain how these damages resulted from the mere delay in receiving the Validation Notice, which constituted the FDCPA violation underlying Count II.  <u>See</u>, <u>e.g.</u>, <u>Lujan</u>, 504 U.S. at 560-61 (standing requires a "causal connection between the alleged injury and the defendant's conduct"); <u>Dolan</u>, 2016 WL 4099109, at *7 (no standing to bring claim under section 2605 of RESPA as alleged injury flowed from violation of different section of RESPA).

Critically, Plaintiffs do not dispute that Green Tree sent, and that they received, the Validation Notice.  [ECF No. 1 at ¶29].  Indeed, upon receipt of the Validation Notice, Plaintiffs purported to dispute the validity of the balance of the Loan.  [ECF No. 1-4].  Hence, the entire

16

basis for Count II is that Green Tree was 23 days late in sending the Validation Notice.[3]

However, Plaintiffs cannot identify any concrete or particularized harm caused by this mere 23

day delay.  They neither allege that they were rejected for credit during this period nor identify

any emotional stress or aggravation incurred solely due to the alleged delay of the Validation

Notice.

　　　　To the extent that Plaintiffs suffered any concrete or individualized injury, such harm

arose from the non-class counts (Counts I and III).  However, that does not allow Plaintiffs to

serve as the representative for the putative class (who they do allege made payments to Green

Tree).  The inevitable practical effect of permitting suits by individuals who have not suffered

actual injury would be to relax Rule 23's "stringent requirements for [class] certification."

American Express Co. v. Italian Colors Rest., 133 S. Ct. 2304, 2310 (2013).  A named plaintiff

with no actual injury could improperly seek to represent class members who suffered actual

injury.  See Mahon v. Ticor Title Ins. Co., 683 F.3d 59, 64-65 (2d Cir. 2012) (affirming

dismissal of plaintiff's claims in putative class action with respect to defendants which did not

cause the plaintiff any actual injury).

　　　　In short, Plaintiffs seek to represent a class that suffered actual damages completely

divergent from their own circumstances.  Plaintiffs claim that the actual damages to the putative

class includes the return of any monthly payments that class members made prior to receipt of

the Section 1692g validation notice.  See Ex. B at p. 5.  However, Plaintiffs acknowledge that

---

[3] Specifically, Section 1692 of the FDCPA requires the debt collector to serve the disclosures within five days of the initial communication in connection with collection of the debt (if the initial communication does not include the disclosures).  15 U.S.C. § 1692g(a).  Here, Plaintiffs claim that the Transfer Notice, dated October 16, 2013, constituted the initial debt collection communication, and, thus, Green Tree had to serve the disclosures, at the latest, by letter dated October 21, 2013.  Accordingly, as the Validation Notice was dated November 14, 2013, it was approximately 23 days late.

they made no payments to Green Tree prior to receipt of the Validation Notice. Plaintiffs also claim that certain putative class members suffered "emotional distress" [ECF No. 42 at p. 14], yet they cannot identify any emotional distress caused by the 23 day delay in receiving the Validation Notice.

Moreover, as Plaintiffs suffered no injury arising out of the 23 day delay in service of the Validation Notice, the putative class also surely contains thousands of borrowers that likewise did not suffer any injury. It is well-established that "[t]he class must therefore be defined in such a way that anyone within it would have standing." Denney v. Deutsche Bank AG, 443 F. 3d 253, 263 (2d Cir. 2006); see also Adashunas v. Negley, 626 F.2d 600, 604 (7th Cir.1980) (affirming denial of class certification motion as "the proposed class is so amorphous and diverse, it cannot be reasonably clear that the proposed class members have all suffered a constitutional or statutory violation warranting some relief.").

Here, Plaintiffs lack an injury-in-fact. Accordingly, the Court should deny the Motion on these grounds alone.

   **D.    The Putative Class Does Not Satisfy Numerosity.**

Plaintiffs fail to establish the requirements of Rule 23 including numerosity under Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." In Re American Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996). While "the exact number of class members need not be pleaded or proved, impracticability of joinder must be positively shown, and cannot be speculative." McGee v. East Ohio Gas Co., 200 F.R.D. 382, 389 (S.D. Ohio 2001) (Marbley, J.) (citation omitted); Givens v. Van Devere Inc., 2012 WL 4092803, at *17 (N.D. Ohio Apr. 27, 2012) (holding that the plaintiff failed to establish numerosity where

"inadequate class definitions would require the Court to speculate as to the number of members in each class.").

Here, Plaintiffs offer only speculation in support of their claim that the putative class satisfies numerosity.  Specifically, Plaintiffs posit that since 31,000 borrowers received one of the eleven  notices at issue, "when divided equally at least 2,818 of each form letter was sent, meaning approximately 17,000 persons more than **likely** received one of the six form letters at issue." [ECF No. 42 at p. 8 (emphasis added)].  Plaintiffs, however, do not support their assertion that the eleven notices were sent to an equivalent number of borrowers with any evidence whatsoever.  They may not obtain certification based on speculation.

Furthermore, their speculation does not end there.  They also reflexively—and incorrectly—presume that the putative class includes any borrower that received one of the six servicing transfer notices.  However, as discussed below, this fails to take into account that the putative class would exclude any borrower who, among other things: (1) obtained the loan proceeds primarily for a business or commercial purpose; (2) whose transfer notice did not constitute a debt collection communication; or (3) had the servicing of the loan transferred at least once before Green Tree obtained the servicing rights.  Accordingly, the Court should find numerosity lacking under Fed. R. Civ. P. 23(a)(1).

### E. Plaintiffs' Claims Are Neither Typical Nor Common Of The Members They Seek To Represent.

Fed. R. Civ. P. 23(a)(2) requires that the existence of "questions of law or fact common to the class" while, under Fed. R. Civ. P. 23(a)(3), the claims of the named plaintiff must be "typical of the claims….of the class."  "The commonality and typicality requirements are closely related in that they each serve to assist in the determination whether the claim of the named

plaintiff and those of the class are so interrelated that the interests of the absent class members will be protected." Boggs v. Divested Atomic Corp., 141 F.R.D. 58, 63 (S.D. Ohio 1991).

The threshold requirement for commonality under Rule 23(a) requires not simply the generation of a single, common question, but rather the "capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." id.

"Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." In re American Medical Systems, 75 F. 3d at 1082. The "typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims." General Tel. Co. v. EEOC, 446 U.S. 318, 330 (1980).

Plaintiffs assert that typicality and commonality exist because "[they] assert precisely the same legal theories and seek precisely the same legal relief as the members of the putative class." [ECF No. 42 at p. 11]. Nothing, however, could be further from the truth. First, Plaintiffs do not pursue the "same legal theories" as the putative class given that they also assert individual claims under Section § 1692e(2)(A) of the FDCPA (Count I) and Section § 1692g(b) of the FDCPA (Count IV). The crux of Plaintiffs' individual claims is that Green Tree repeatedly attempted to collect the Loan that they had previously reaffirmed and repaid under the terms of the Agreement and, thus, prevented the sale of the automobile that secured the Loan. [ECF No. 1 at ¶¶26-30]. Yet, Plaintiffs do not seek to certify a class of borrowers who allegedly were subject to collection communications after their loans were repaid.

More importantly, Plaintiffs seek different actual damages than the putative class.  First, Plaintiffs' actual damages claim of emotional distress and credit damage arises out of their Section 1692e(2)(a) claim, **not** the Section 1692g(a) claim.  [ECF No. 1 at ¶¶70-72].  Plaintiffs seek actual damages for "damage to credit", while they do not seek the same for the putative class.  See Ex. B at p. 5.  Additionally, the actual damages sought on behalf of the putative class include the return "of amounts collected prior to the 30 day debt validation language being sent by Green Tree to class debtors."  Id.  Plaintiffs, however, acknowledge that they have no such actual damages claim since they made no payments to Green Tree prior to receipt of the Validation Notice or at any point thereafter.  Id.  Thus, the actual damages that Plaintiffs allegedly incurred are not typical of the class they seek to represent.  See, e.g., Jones v. Roy, 202 F.R.D. 658 (M.D. Ala. 2001) (denying class certification in FDCPA action based on class representative's claim not being typical of other class members' claims because class representative's letter differed from letters sent to other thousands of class members).

Additionally, Plaintiffs acknowledge that actual damages vary among the members of the putative class as some members may seek return of payments made while others may seek damages for emotional distress.  [ECF No. 42 at p. 14].  Section 1692k(a)(1) of the FDCPA provides that a debt collector who fails to comply with the FDCPA "is liable to such a person in an amount to the sum of ... any actual damages sustained by such person as a result of such failure."  See 15 U.S.C. § 1692k(a)(1).  To recover actual damages for a FDCPA violation, Plaintiffs have the burden of demonstrating: (1) the violation misled them to their detriment, and (2) their detrimental reliance caused their harm.  See, e.g., Roberts v. Shermeta, Adams & Von Allmen, P.C., 2015 WL 1401352, at *7 (W.D. Mich. Feb. 23, 2015); Beard v. Ocwen Loan Servicing LLC, 2016 WL 4271765, at *3 (M.D. Pa. Aug. 15, 2016).

21

Therefore, for putative class members seeking the return of payments made, the Court would first have to review the payment histories and account notes to confirm that a class member made a payment to Green Tree prior to receipt of the Section 1692g validation notice. In other words, any borrower that did not do so could not seek such damages.

Even assuming a putative class member made such a payment, the Court would have to take the testimony of any such class member to confirm that he or she would not have made those payments if Green Tree timely served the Section 1692g validation notice.  As this analysis is required for each class member, commonality does not exist.  See, e.g., Parkis v. Arrow Fin. Servs., 2008 WL 94798, at *4 (N.D. Ill. Jan.8, 2008) (denying class certification due to lack of commonality in a FDCPA action involving allegations of collection on time-barred debts as "this court would have to look into the payment history of each putative class member to determine whether the last payment date or charge-off date was more than five years prior to the filing of the debt-collection suit.  Because the payment timing and history will be different for each putative class member, [t]his would involve an individualized inquiry for each potential member.").

Likewise, insuperable obstacles exist with respect to the award of damages for emotional distress.  The Court could not presume that each class member suffered emotional distress, or the same type of emotional distress, because of a delay in service of the Section 1692g validation notice.  Rather, the Court would have to inquire as to whether a class member suffered emotional distress, whether such emotional distress was caused by the alleged delay in receipt of the Section 1692g validation notice, the nature of any emotional distress, and the appropriate damages, if any.  Accordingly, as emotional distress is highly individualized as to its existence, nature and remedy, neither commonality nor typicality exist.  See, e.g., Hyderi v. Washington

22

Mut. Bank, F.A., 235 F.R.D. 390, 406 (N.D. Ill. 2006) (denying class certification for RESPA

violations where class member's recovery for "mental anguish" would require individualized

inquiry); Rowell v. Voortman Cookies, Ltd., 2005 WL 1026715, at *2 (N.D. Ill. Apr. 27, 2005)

(reasoning that typicality did not exist as emotional distress claim "would also require the highly

individualized inquiry of whether the Defendants' conduct caused severe emotional distress in

numerous individuals"); Herrera v. LCS Financial Corp., 274 F.R.D. 666 (N.D. Cal. 2011)

(noting that "emotional distress damages could involve intensive individualized inquiry.").

       Green Tree also raised a bona fide error defense the consideration of which also defeats

commonality.  The FDCPA provides that:

> A debt collector may not be held liable in any action brought under
> this subchapter if the debt collector shows by a preponderance of
> evidence that the violation was not intentional and resulted from a
> bona fide error notwithstanding the maintenance of procedures
> reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c).  Here, the Court would have to consider whether it was a bona fide error

for Plaintiffs to have even received the Transfer Notice or Validation Notice in the first place.

See, e.g., Smith v. Transworld Systems, Inc., 953 F. 2d 1025, 1030 (6th Cir. 1992) (holding that

it was a bona fide error under the FDCPA for the defendant to have served a collection letter

after receipt of cease and desist letter from the plaintiff as defendant's procedures were

"reasonably adapted to avoid any such error."); Bynum v. Cavalry Portfolio Services LLC, 2005

WL 2789199 (N.D. Okl. Sep. 29, 2005) (finding that the defendant's service of a collection letter

to the plaintiff following her discharge in bankruptcy constituted a bona fide error under the

FDCPA in light of the defendant's policies and procedures).  There has been no showing that

Plaintiffs' circumstances are common with respect to the remainder of the putative class in that

regard.

Nor could there be such a showing.  Specifically, following bankruptcy, Plaintiffs had repaid the Loan under the terms of the Agreement prior to the servicing transfer to the Green Tree.  [ECF No. 1 at ¶¶ 19-20].  Green Tree has explicit written procedures and policies to ensure that it neither acquires the servicing rights to loans paid in full, nor collects payments on them.  See Derrick Declaration, Ex. A at ¶¶9-11.  In this instance, it was a departure from those procedures and a bona-fide error under the FDCPA that Green Tree both acquired the Loan and sent the Transfer Notice and Validation Notice to Plaintiffs.  See id.  The Court would have to likewise undertake a similar inquiry for all members of the putative class to determine if it was a bona fide error that they received a servicing transfer notice that would have triggered service of the Section 1692g validation notice.

As this is a highly individualized inquiry, it is not appropriate for class treatment.  See, e.g., Beck v. Maximus, Inc., 457 F. 3d 291, 299 (3rd Cir. 2006) (reversing order certifying class seeking FDCPA statutory damages as the defendant "may have a bona fide error defense that might defeat….typicality and adequacy."); LaRocque ex rel. Spang v. TRS Recovery Services, Inc., 285 F.R.D. 139, 159 (D. Me. 2012) ("the defendants maintain that [bona fide error defense] is highly case-specific and that resolving it for [the class representative's case] will not resolve it for any other class member…I conclude that the defendants are correct.").

Thus, Plaintiffs do not satisfy the prerequisites of typicality or commonality, and the Court should deny the Motion.

### F.    Plaintiffs Are Not Adequate Class Representatives.

To satisfy Rule 23(a)(4), Plaintiffs must show they "will fairly and adequately protect the interests of the class."  Under the two-prong test of the Sixth Circuit, "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the

representatives will vigorously prosecute the interests of the class through qualified counsel." Vassalle v. Midland Funding LLC, 708 F. 3d 747, 757 (6th Cir. 2013).

Here, the first prong weighs against a finding of adequate representation for many of the reasons discussed above.  Plaintiffs are inadequate class representatives as they also have two non-class FDCPA claims for which they seek to recover actual damages, including damage to their credit.  In contrast, damage to credit is ***not*** a category of actual damages they seek to recover on behalf of the putative class.  See Ex. B at p. 5.  Furthermore, while Plaintiffs seek to recover on behalf of the putative class the return of all payments made by class members to Green Tree prior to receipt of the Section 1692g validation notice, they made no payments to Green Tree prior to receipt of the Validation Notice.  Id.

Indeed, the circumstances of Plaintiffs' FDCPA claim are very unique in that they alleged the Loan was reaffirmed in the Bankruptcy Action and then repaid under the terms of the Agreement.  [ECF No. 1 at ¶¶19-20].  Thus, while putative class members would have a significant interest in the return of payments prior to receipt of the Section 1692g validation notice, Plaintiffs would have no interest in this relief whatsoever.  Rather, Plaintiffs' primary interest involves repairing their credit since they allegedly repaid the Loan prior to the servicing transfer.

Moreover, Green Tree has defenses specific to Plaintiffs' claim.  Specifically, as explained above, Green Tree asserts that it was a bona fide error under Section 1692k(c) of the FDCPA that Plaintiffs even received the Transfer Notice.  Thus, because Plaintiffs are potentially subject to a unique defense given the unique circumstances surrounding their Loan, they are not adequate class representatives.  See, e.g., Valley Drug Co. v. Geneva Pharmaceuticals, Inc., 350 F. 3d 1181, 1190 (11th Cir. 2003) ("This circuit is not alone in

interpreting Rule 23(a)(4) to preclude class certification where the economic interests and objectives of the named representatives differ significantly from the economic interests and objectives of unnamed class members."); Golan v. Veritas Entertainment LLC, 788 F. 3d 814, 821 (8th Cir. 2015) (noting that "a class representative is not adequate….if it is subject to a unique defense that threatens to play a major role in the litigation.").

Additionally, while Plaintiffs claim emotional distress as actual damages to the class, they cannot identify any emotional distress caused by the 23 day delay in receiving the Validation Notice.  In fact, their emotional distress claim arises out of Count I, which is a non-class claim.  [ECF No. 1 at ¶70].  Thus, they have no interest in obtaining emotional distress damages on behalf of the putative class.

Finally, Plaintiffs are also inadequate representatives in that they purport to represent a class that includes borrowers that did not suffer any actual injury whatsoever.  Plaintiffs admit that not all class members suffered emotional distress or have a claim for return of payments. [ECF No. 42 at p. 14].  As certain class members only have an interest in the recovery of statutory damages, their interests would be better advanced by a class representative that only sought to recover statutory damages.  Hence, Plaintiffs are inadequate representatives for a sizeable portion of the putative class.

### G.      Certification Is Inappropriate Given That Individual Issues Will Predominate Over Any Common Legal Question.

Plaintiffs also fail to establish predominance.  Specifically, the first prong of Fed. R. Civ. P. 23(b) requires that the "court finds that the questions of law or fact common to  class members predominate over any questions affecting only individual members."  As recently emphasized by the Supreme Court, "Rule 23(b)(3)'s predominance criterion is ***even more demanding*** than Rule 23(a)."  Comcast Corp., 133 S. Ct. at 1432 (emphasis added); see also In re American Medical

Systems, Inc., 75 F. 3d at 1071 (noting that "subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement.").

"Where the individualized issues will destroy the utility of a class adjudication and necessitate mini-trials to determine issues relevant to each class member, common issues do not predominate." Adams v. Federal Materials Co., Inc., 2006 WL 3772065 (W.D. Ky. Dec. 19, 2006). "A claim will satisfy the predominance requirement for class certification where common evidence exists that proves or disproves an element on a simultaneous, class-wide basis, thus obviating examination of each class member's individualized position." Gawry v. Countrywide Home Loans Inc., 640 F. Supp. 2d 942, 952 (N.D. Ohio 2009).

Even before turning to the highly individualized nature of the actual damages claims, the Court must first consider the following issues with respect to ***each individual member of the putative class*** to confirm that he or she even has a viable claim under Section 1692g of the FDPCA:

- Whether the class member's loan is primarily for personal, family or household use, and, thus, constitutes a debt under Section 1692a(5) of the FDCPA;

- Whether Green Tree sent the servicing transfer notice to the class member before the effective date of the servicing transfer, and, thus, was not acting as a debt collector at that time under Section 1692a(6) of the FDCPA;

- Whether the class member's loan was service transferred after origination at least once prior to the servicing transfer to Green Tree, and if so, whether the initial transferee servicer was a "debt collector" under Section 1692a(6)(F) of the FDCPA;

- Whether the servicing transfer notice sent to the class member was a debt collection communication; and

- Whether the class member's loan was repaid in full before Green Tree acquired the servicing rights, and, thus, the service of the servicing transfer notice was a bona fide error under Section 1692k(c) of the FDCPA.

Whether the FDCPA even applies because the loan is primarily for personal, family or household use - as opposed to a business or commercial purpose - is an individualized inquiry that prevents a finding of predominance.  See, e.g., Toldy v. Fifth Third Mortg. Co., 2011 WL 4634154 (N.D. Ohio Sep. 30, 2011) (denying motion to certify RESPA class on predominance grounds class as "[w]hile it may be the case, as [plaintiff] observes, that many transactions within the putative class might garner RESPA coverage, this observation does not obviate the need by the Court to determine, on an individual basis, which of those loans are indeed covered."); Rockey v. Courtesy Motors Inc., 199 F.R.D. 578 (W.D. Mich. 2001) (denying motion to certify TILA class as "undermining predominance of common issues is the fact that TILA's scope is limited to transactions primarily for 'personal, family or household' purposes.......Plaintiffs must prove that each individual purchase was made primarily for 'personal, family or household' rather than business purpose.") (citation omitted).

As Plaintiffs apparently recognize in their class definition, the FDCPA only applies to certain debts.  See 15 U.S.C § 1692a(5) (defining debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes.").  Among other things, exempt from the putative class would be borrowers whose loans were for commercial or business purposes including, for instance, loans which financed the

28

purchase of rental property.  See, e.g., Edwards v. Ocwen Loan Servicing LLC, 24 F. Supp. 3d 21, FN5 (D.D.C. 2014) (noting that "loans for rental and investment properties are not FDCPA debts."); Preszler v. Levy & Craig, P.A., 2011 WL 666163, at *1 (D. Utah. Feb. 14, 2011) (holding that FDCPA did not apply as "the undisputed evidence demonstrates that the plaintiffs' debts were incurred as a result of investments.").

Here, Green Tree services loans that were primarily for personal, family or household purposes, as well as loans that were primarily for business and/or commercial purposes.  See Derrick Declaration, Ex. A. at ¶4.  Among other things, Green Tree services loans that financed the purchase of rental properties.  See id.  However, Green Tree has no manner of performing an electronic search of its loan records to identify only loans that primarily had a personal, family or household purpose.  See id.

Thus, in order to determine the primary purpose of the loan, the Court would have to manually review the 31,000 loan files and subjectively determine whether each loan served an investment, commercial or other business purpose.  See Derrick Declaration, Ex. A at ¶¶4, 16-18.  Additionally, the Court could not simply review the loan application to determine whether the loan was a consumer debt as the mere fact that the proceeds were secured by the primary residence does not automatically mean that the loan is subject to the FDCPA.  See Hinchliffe v. Option One Mortg. Corp., 2009 WL 1708007 (E.D. Pa. Jun. 16, 2009) (observing that "the fact that the loan refinanced the property in which the [plaintiffs] reside does not itself establish that the primary purpose of the loan was personal rather than business.").  Accordingly, the Court may have to take testimony of thousands of borrowers to confirm whether the loan proceeds were primarily for personal, family or household purposes, and, thus, subject to the FDCPA. This highly individualized inquiry is not subject to certification.

The Court will also have to determine for each class member whether the servicing transfer notice was sent prior to the effective date of the transfer and whether it constitutes a debt collection communication given its language and Green Tree's intent.  See, e.g., Grden v. Leikin, Ingber & Winters PC, 643 F.3d 169, 173 (6th Cir. 2011) ("[f]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor."); Goodson v. Bank of America, N.A., 600 Fed. Appx. 422, 430 (6th Cir. Jan. 28, 2015) (holding that servicing transfer notice was not a debt collection communication as "animating purpose of the letter…was to inform [Plaintiff] about a change in her loan servicer, not to induce her to resume payments on her defaulted mortgage").  The Transfer Notice in this case was <u>not</u> intended to be a debt collection communication as, among other things, Green Tree had no right to collect payments from Plaintiffs at that point.  See Derrick Declaration, Ex. A at ¶¶6, 12.

This is no mere hypothetical consideration as Plaintiffs acknowledge that five of the eleven servicing transfer notices produced in discovery are not communications in connection with the collection of a debt.  [ECF No. 42 at pp. 7-8].  The six servicing transfer notices Plaintiffs contend are actionable are not necessarily communications in connection with the collection of a debt under the FDCPA.  In the Order, the Court reasoned that Plaintiffs adequately <u>alleged</u> the Transfer Notice was a debt collection communication under the FDCPA as, *inter alia*, the First Notice "does not include a title, heading, or statement of purpose indicating it is a merely a notice of transfer."  [ECF No. 14 at p. 20].  Moreover, three of the six servicing transfer notices deemed by Plaintiffs as "worthy of class treatment" ***do*** include headings in the body entitled "notice of assignment, sale or transfer of servicing rights" or "notice of servicing transfer", thereby casting doubt as to whether borrowers that received these

notices are class members.  [ECF Nos. 42-6,42-8, 42-9]; see, e.g., Oppong v. First Union Mortg. Corp., 566 F. Supp. 2d 395, 403 (E.D. Pa. 2008) (holding that notice of transfer of servicing rights was not a debt collection communication under the FDCPA).  Other notices provide that "this notice is informational" or provide no detail as to the loan balance or monthly payments, which establishes that the notice is not a communication in connection with the collection of a debt.  [ECF No. 42-1 at pp. 8, 13, 27, 35].  See, e.g., Mielke v. Bank of America Home Loans Servicing LP, 2011 WL 1464848, at *4 (E.D. Mich. 2011) (observing that "courts have held that letters simply informing the plaintiff of the current status of his account that do not make any demand for payment are not communications in connection with the collection of a debt under the FDCPA").  The Court would have to make this determination for each allegedly actionable notice across thousands of putative class members.

Moreover, the Court would also have to consider the date that each class member received the servicing transfer notice.  If the class member received the servicing transfer notice prior to the date of the servicing transfer then the notice would not be a communication in connection with the collection of a debt since Green Tree would not have had the right to collect the payment at that time, and, thus, was not acting as a debt collector under the FDCPA.  See Derrick Declaration, Ex. A at ¶¶6, 12; see also Rubenstein v. Dovenmuehle Mortg. Inc., 2009 WL 3467769, at *4 (E.D. Pa. Oct. 28, 2009) (noting that "[t]he FDCPA applies to debt collectors who are attempting to collect debts.").

Additionally, the Court would have to determine whether Green Tree was the initial transferee of each class member's loan since Section 1692g of the FDCPA requires that only the initial debt collector serve a validation notice.  See, e.g., Senftle v. Landau, 390 F. Supp. 2d 463, 473 (D. Md. 2005) (holding that "[h]aving received proper written notice within five days of the

initial communication, [the plaintiff] was not entitled to a second § 1692g(a) written notice on his debt by subsequent debt collectors."); Martin v. Gordon & Weinberg, P.C., 2013 WL 11246900 (E.D. Pa. Jan. 28, 2013) (granting motion to dismiss claim under Section 1692g of the FDCPA as "where an initial debt collector has issued a notice complying with § 1692g, a subsequent debt collector is not required to issue an additional 1692g-compliant notice."); Huckfeldt v. BAC Home Loans Servicing, LP, 2011 WL 4502036, at *6 (D. Colo. Sept. 29, 2011) (noting that language of Section 1692g "makes clear that notice is required to be given once collection activities begin for each debt, not that notice is required each time collection activities are begun on the same debt but on behalf of a new transferee creditor.").

In other words, for those class members whose loans were service transferred after origination at least once prior to the servicing transfer to Green Tree, the Court would have to determine whether the initial transferee servicer was a "debt collector" under Section 1692a(6)(F) of the FDCPA, and, thus, was obligated to send the Section 1692g validation notice. If the prior servicer was a debt collector, then, as a subsequent debt collector, Green Tree would not have been obligated to serve a Section 1692g validation notice, and that person would not be a class member.  This would require the Court to not only manually review Green Tree's loan files, but also the files of the prior servicer, such as CitiFinancial with respect to Plaintiffs' Loan, to determine whether the loan was in default at the time of the transfer to the prior loan servicer. See Derrick Declaration, Ex. A at ¶16.

The Court would also have to determine whether it was a bona fide error for Green Tree to have sent the servicing transfer notice in question to each class member depending on his or her particular circumstances.  Class members who had fully repaid their loan prior to the servicing transfer to Green Tree should not have received a servicing transfer notice pursuant to

Green Tree's policies and procedures.  See Derrick Declaration, Ex. A at ¶¶9, 11.  As the circumstances of Plaintiffs' bankruptcy and Agreement reveal, this is a highly fact specific inquiry.

Once the Court makes all of these determinations, it will then have to consider damages. It is well-settled that courts must conduct a "'rigorous analysis" at the class-certification stage such that "any model supporting a plaintiff's damages case [is] consistent with its liability case", that the model "measure[s] only those damages attributable to that theory" of liability.  Comcast Corp., 133 S. Ct. at 1433.

As detrimental reliance is necessary to prove actual damages on behalf of each class member as explained above, the Court would have to conduct mini-trials as to each class member to determine whether the failure to timely receive the Section 1692g validation notice caused emotional distress or payments to Green Tree that they otherwise would not have made. See, e.g., Sprague v. General Motors, 133 F. 3d 388, 398 (6th Cir. 1998) (reversing order granting class certification on estoppel claim as requirement that individual class members establish detrimental reliance renders "each plaintiff's claim depende[nt] upon facts and circumstances peculiar to that plaintiff."); Turner v. Beneficial Corporation, 242 F. 3d 1023, 1028 (11th Cir. 2001) (affirming order denying certification of TILA class seeking actual damages in light of requirement that each class member must establish detrimental reliance); Perrone v. General Motors Acceptance Corp., 232 F. 3d 433, 435 (5th Cir. 2000) (affirming order denying certification of TILA class as "each plaintiff must prove detrimental reliance."); United Steelworkers of Am., AFL–CIO–CLC v. Ivaco, Inc., 216 F.R.D. 693, 697–98 (N.D.Ga.2002) (denying class certification based on the necessity of establishing individual detrimental reliance).

Additionally, with respect to causation, the Court would have to probe whether that class member would have made the payment in question but for Green Tree's delay in providing the Section 1692g notice. This is something that cannot be determined from the loan file, but would require testimony of each class member. "Where numerous mini-trials are necessary to resolve individual questions of reliance and causation, the benefits of a class action disappear." Rockey, 199 F.R.D. at 591.

The Court would also have to conduct mini-trials to determine the existence, nature and extent of any emotional distress suffered by the class members. It is very well-settled that "[i]ssues such as emotional distress….are not proper for class treatment. These issues depend upon the particular situation of each individual." In re Telectronics Pacing Systems, Inc., Accufix Atrial J Leads Products Liability Litigation, 164 F.R.D. 222, FN4 (S.D. Ohio 1995); see also Crutchfield v. Sewerage and Water Board of New Orleans, 829 F. 3d 370, 378 (5th Cir. 2016) (noting that "[p]laintiffs also seek damages for emotional distress, which would presumably require testimony from each affected class member."); Aiello v. Providian Fin. Corp., 239 F.3d 876, 881 (7th Cir. 2001) (affirming order denying class certification for claim seeking emotional distress damages against a finance company that was using unlawful collection practices to collect debts as "case is not suitable for class action treatment because of the variance in injury among the members of the class and the cost of the individualized hearings that would in consequence be required for assessing damages."); Doe v. Chao, 306 F.3d 170, 183 (4th Cir. 2002) (affirming order denying certification "on the ground that emotional damages require too much individualized proof."); In re Three Mile Island Litig., 87 F.R.D. 433, 441, 442 (M.D. Pa. 1980) (noting that "[c]laims for emotional distress…are diverse and personal .....the idiosyncratic nature of emotional distress claims makes them as unsuitable for class

certification."); Rader v. Teva Parenteral Medicines, Inc., 276 F.R.D. 524, 530 (D. Nev. 2011) (noting that "emotional distress claims of the thousands of proposed class members defeat class certification in this case because emotional distress is necessarily an individualized inquiry."); Satsky v. Paramount Communications, Inc., 1996 WL 1062376, at *15 (D. Col. Mar. 13, 1996) (denying certification of class seeking emotional distress damages as "[e]motional distress claims are intractably individual in character.  Each person's susceptibility and injury would vary.").

Green Tree would defend these emotional distress claims by, among other things, subpoenaing medical records from putative class members and deposing third parties to ascertain if the emotional distress actually preceded the delay in service of the Section 1692g validation notice or was caused by something other than the delay.  Accordingly, as this is a nationwide class, this would entail subpoenaing class members and third parties hailing great distances from the instant forum.

It is clear that the Court would have to devote the overwhelming majority of its time and resources on thousands of mini-trials to determine the above issues.  Thus, it strains credulity to suggest, as Plaintiffs do, that the singular issue of whether all class members timely received a Section 1692g validation notice would predominate.  As such, the Court should deny the Motion.

### H. A Class Action Is Not A Superior Method Of Adjudication.

The second prong of Fed. R. Civ. P. 23(b)(3) requires Plaintiffs to show that a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."  This requirement is designed to "achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  Amchem Products Inc. v.

Windsor, 521 U.S. 591, 615 (1997).  "The burden is on the plaintiff to show the superiority of the class action."  J. M. Woodhull, Inc. v. Addressograph-Multigraph Corp., 62 F.R.D. 58, 61 (S.D. Ohio 1974).

It is well-settled that "[t]he interest of members of the class in individually controlling the prosecution or defense of separate actions" is a factor in analyzing superiority.  Amchem Products Inc., 521 U.S. at 615.  Here, Plaintiffs assert that a class action is a superior method of adjudication because "very few individuals will likely pursue Green Tree in individual actions" as the "estimated recovery for each individual is somewhat small."  [ECF No. 42 at p. 20].

Plaintiffs' argument fails to consider the size of the class they seek to certify.  First, the FDCPA provides for statutory damages in an individual action of $1,000.  15 U.S.C. § 1692k(a).  In contrast, the maximum amount in statutory damages that Plaintiffs could recover for the class is $500,000.  15 U.S.C. § 1692k(a)(B).  Assuming a nationwide class of 17,000 (as Plaintiffs do), each class member would receive an average of *only $29.41*, which is a fraction of the statutory damages available in an individual FDCPA action.  Thus, the statutory damages alone weigh against a finding of superiority.

More importantly, the FDCPA has no limit on actual damages.  15 U.S.C. § 1692k(a).  A borrower that could prove emotional distress as a result of a FDCPA violation could recover substantial damages and, thus, has a strong financial incentive to bring an individual lawsuit.  On the other hand, in a class action, rather than conduct tens of thousands of individualized damage hearings, the Court would likely award some fixed sum as the actual damages recoverable for the class.  However, even if the Court awarded Plaintiffs $10 million in actual damages for the class, that would only result in an average recovery of *$588* for each class member.  Thus, each class

member is likely to recover *at most* a few hundred dollars if the class is certified, which is a pittance compared to the potential recovery in an individual action.

Furthermore, class members with mortgage loans in default could face foreclosure or collection lawsuits given the delinquent status of their loans.  The threat of bringing an individual FDCPA claim, whether as an independent lawsuit or as a counterclaim, is a powerful tool that could assist members in delaying collection proceedings and/or obtaining favorable loss mitigation offers.

Finally, an individual action would cost a class member nothing out-of-pocket since the FDCPA expressly allows the prevailing plaintiff to recover attorney's fees.  15 U.S.C. § 1692k(a)(3).  As a general rule, "[w]hen a statute allows a prevailing plaintiff to recover attorney's fees and costs, a class action is generally *not a superior method* for litigating a case." Carter v. Welles-Bowen Realty, Inc., 2010 WL 908464 at *2 (N.D. Ohio Mar. 11, 2010) (emphasis added); Gallego v. Northland Group Inc., 102 F. Supp. 3d 506, 510 (S.D.N.Y. 2015) (denying motion to certify class of consumers alleging FDCPA violations as "where a statute already provides for the defendant to pay the prevailing plaintiff's attorneys' fees, as the FDCPA does, such an incentive already exists."); Sandusky Wellness Center, LLC v. Wagner Wellness, Inc., 2014 WL 6750690, at *6 (S.D. Ohio Dec. 1, 2014) (holding that class action was superior device for TCPA claim as TCPA "does not allow for fee shifting.  Hence, individual class members are unlikely to litigate TCPA claims allow for fee shifting."); Michel v. WM Healthcare Solutions, Inc., 2014 WL 497031, at *8 (S.D. Ohio Feb. 7, 2014) (holding that class action was superior method of adjudicating TCPA claims "particularly because the Act does *not* provide for recover of attorney fees.") (emphasis added).

Accordingly, a nationwide class action is not a superior method of adjudication, and the Court should deny the Motion.

## I. The Putative Class Is An Impermissible Fail-Safe Class.

Even assuming the other requirements of Rule 23 have been satisfied, Plaintiffs' proposed class definition seeks certification of an impermissible fail-safe class[4]. A fail-safe class "is one that includes only those who are entitled to relief." Young v. Nationwide Mut. Ins. Co., 693 F. 3d 532, 539 (6th Cir. 2012). Fail-safe classes "shield the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment." Randleman v. Fidelity Nat. Title Ins. Co., 646 F. 3d 347, 352 (6th Cir. 2011) (affirming trial court order decertifying class as fail-safe). In other words, "once it is established that a potential class member will not prevail against the defendant, the member drops from the class." Schilling v. Kenton County Kentucky, 2011 WL 293759, at *6 (E.D. Ky. Jan. 27, 2011) (holding that proposed class was fail-safe as "the Court cannot determine its individual members without reviewing the evidence relative to each [member], which would amount to a merits-based inquiry of each individual's claim.").

"A class cannot be certified where the proposed class definition employs conclusory language identifying class membership in terms of the ultimate merits question of the defendant's liability." Alhassid v. Bank of America, N.A., 307 F.R.D. 684, 693 (S.D. Fla. 2015) (denying certification where proposed class definitions created fail-safe classes as

---

[4] Green Tree initially argued the putative class was fail-safe in the Motion to Dismiss. [ECF No. 3 at pp. 13-15]. However, the Court declined to address the argument at that stage, reasoning that "it is prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage." [ECF No. 14 at p. 28]. Notwithstanding being on notice of Green Tree's argument, Plaintiffs have not altered their class definition.

DMEAST #27248032 v3

"[m]embership in each class is dependent on whether defendant violated HUD guidelines or its own internal policies and procedures with respect to the given fee or charge assessed.  This front-ends a merits determination on [defendant's] liability as the essential element in class composition."); Paulino v. Dollar Gen. Corp., 2014 WL 1875326, at *3 (N.D. W.Va. May 9, 2014) (holding that the proposed class alleging violations of the West Virginia Wage Payment and Collection Act was a fail-safe class because inclusion required an individualized inquiry regarding whether each former employee was "involuntarily terminated" and thus a member of the class); Sauter v. CVS Pharmacy, Inc., 2014 WL 1814076, at *4 (S.D. Ohio 2014) (holding that proposed class definition was fail-safe because "if the Plaintiff successfully demonstrates that the Defendant made calls using an ATDS or an artificial or prerecorded voice to the class members' cell phones without the class members' prior express consent, then the class members win…[h]owever, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant.").

Here, Plaintiffs' proposed class definition constitutes an impermissible fail-safe class as the Court could only ascertain membership in the class by first determining whether an FDCPA violation has occurred as to each member.  Specifically, Plaintiffs' class definition includes: (1) consumers; (2) that received an initial communication from Green Tree in the same form and nature as the Transfer Notice that lacked the 30 day debt validation language allegedly required by 15 U.S.C. § 1692g(a)(3); and (3) were in default or being treated as in default at the time of transfer of the loan servicing to Green Tree.  [ECF No. 1 at ¶106 & ¶109].

The class definition thus requires the Court to decide the merits of a potential member's FDCPA claim in order to determine who is in the putative class.  First, the definition is limited to only consumers whose loans were acquired in default or treated as in default which triggers the

protections of the FDCPA.  See 15 U.S.C. § 1692a(6)(F)(iii) (definition of debt collector does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity…concerns a debt which was not in default at the time it was obtained by such person").  Second, the proposed class definition requires the Court to determine whether the First Notice or a similar notice was a debt collection communication that triggered an obligation to validate the debt within five days thereof.  See 15 U.S.C. § 1692g(a).

At that point, the Court would have determined that Green Tree violated Section 1692g of the FDCPA as to each class member.  Accordingly, the putative class is an impermissible fail-safe class.

## J.     The Putative Class Is Not Ascertainable.

The putative class is also not ascertainable.  The ascertainability prong "goes to whether the class has been defined such that it encompasses an identifiable group.  Although this requirement is not expressly spelled out in Rule 23(a), it has been implied by courts."  Stewart v. Cheek & Zeehandelar, LLP, 252 F.R.D. 387, 392 (S.D. Ohio 2008) (Marbley, J.) (holding that class of consumers subject to an order of garnishment or attachment of exempt property or funds based on an affidavit signed by the defendant after a specific date was not ascertainable as "[c]ourt would have to resolve whether the property or funds of each putative class member was actually exempt from garnishment or attachment just to determine whether that person is included within the class.").

"The touchstone of ascertainability is whether the class is objectively defined, so that it does not implicate the merits of the case or call for individualized assessments to determine class membership.'"  Cerdant, Inc. v. DHL Express (USA), Inc., 2010 WL 3397501, at *5 (S.D. Ohio

Aug. 25, 2010) (Marbley, J.) (holding that proposed class of all individuals and businesses that were charged shipping fees by the defendant for items that were never tendered to it for delivery was not ascertainable as "only way properly to identify a class would be an individualized assessment" of the waybills of the class members); see also Napier v. Laurel County, 2008 U.S. Dist. LEXIS 14524, at *18-19 (E.D. Ky. Feb. 26, 2008) (noting that "a class should not be certified where extensive factual inquiries are required to determine whether individuals are members of a proposed class.").

Ascertainability "is not satisfied if the putative classes, as defined, are overbroad…or the class members cannot be reliably and feasibly identified." Legrand v. Intellicorp Records, Inc., 2016 WL 116181, at *3 (N.D. Ohio Mar. 24, 2016). Hence, the plaintiff must define the class as "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Young, 693 F.3d at 538.

Here, Plaintiffs fail to objectively define the putative class and the members of the class cannot be identified in an administratively feasible manner consistent with Rule 23. First, the Court could only determine which borrowers received "an initial letter of the same form and nature as [the Transfer Notice]" [ECF No. 1 at ¶¶ 106, 109] through a manual, file-by-file review of the 31,000 loan files. Green Tree does not have the capability to conduct a computer search to determine which borrower received which servicing transfer notice. See Derrick Declaration, Ex. A at ¶¶16-18. Moreover, the account notes for each borrower do not reflect *verbatim* the contents of the servicing transfer notice sent by Green Tree. Id. at ¶17. Plaintiffs have in effect conceded this point by reducing the size of the putative class from 31,000 persons to 17,000 though they do not bother to explain how they did so, why their analysis or procedure is

trustworthy or why a further review is not required.  Accordingly, the Court would have to conduct a manual review to determine which notice was sent to which particular borrower.

The Court cannot presume each borrower that received one of the eleven servicing transfer notices at issue is a class member since Plaintiffs admitted in the Motion that only "six of those eleven form letters….to be problematic and worthy of class treatment."  [ECF No. 42 at pp. 7-8].  However, *Plaintiffs do not identify* which of the six servicing transfer notices are allegedly debt collection communications under the FDCPA, or why those notices are subject to the FDCPA.  [ECF No. 42 at p. 8].

Even assuming that the Court knew which of the six servicing transfer notices Plaintiffs believe are debt collection communications, the Court would still have to conduct a file-by-file review of 31,000 borrowers to first eliminate those members of the putative class which received one of the other five servicing transfer notices.

Furthermore, the putative class is defined to include only persons who received a notice in the same form and nature of the Transfer Notice "conveying information about a *consumer debt* sold and/or transferred to Green Tree when in default or being treated in default."  [ECF No. 1 at ¶109] (emphasis added).  However, for the reasons discussed in greater detail above, determining which loans were for a personal or household purpose would entail a loan by loan review that defeats ascertainability.  See Derrick Declaration, Ex. A at ¶4.

Even if the FDCPA applied, the Court would also have to consider the language of each Transfer Notice and the circumstances of each class member's loan to determine whether the notice constituted a debt collection communication.  For instance, as explained above, not every notice would constitute a debt collection communication given its particular language, many class members may have received their notice prior to the date of the servicing transfer and

Green Tree may have made a bona fide error by sending the notice in question.  A loan by loan review would also be necessary to determine whether Green Tree was the initial transferee of the loan, and whether a prior servicer was a debt collector as Section 1692g of the FDCPA requires that only the initial debt collector send a validation notice.

As the putative class is defined in a manner that would require the Court to reach subjective determinations after an individualized file-by-file assessment, it is not ascertainable and class certification should be denied for this additional independent reason.  See, e.g., Longest v. Green Tree Servicing LLC, 308 F.R.D. 310, 334-35 (C.D. Cal. 2015) (holding class was not ascertainable because "the only way to determine whether any LPI premiums were paid by borrowers is to individually review each file."); Warnick v. Dish Network LLC, 301 F.R.D. 551, 559 (D. Colo. 2014) (holding the class was not ascertainable as the class would require a review of all call records of its customers "imposing an enormous and disproportionate burden on the defendant."); Steimel v. Minott, 2014 WL 1213390, at *3 (S.D. Ind. Mar. 24, 2014) (holding that proposed class members are not ascertainable where "these individuals will only be identified by an individualized case-by-case assessment of the needs of every enrollee terminated….A putative class is not sufficiently ascertainable if such a process is required."); Grimes v. Rave Motion Pictures Birmingham, L.L.C., 264 F.R.D. 659, 665 (N.D. Ala. 2010) (holding that class action seeking damages against movie theater under FCRA for printing more than the last 5 digits of a consumer's credit card number on a digital receipt failed on ascertainability grounds as the defendant "does not maintain, nor has it ever maintained, a database or any paper record that preserves information sufficient to allow identification of any member of this proposed class" and thus certification "would require the court to examine the receipts of self-identified members of the class, whether cajoled and prompted or not, in order to determine their status.");

<u>Physicians Healthsource, Inc. v. Alma Lasers, Inc.</u>, 2015 WL 1538497, at *4 (N.D. Ill. Mar. 31, 2015) (denying certification of class seeking damages under TCPA for sending unsolicited fax advertisements as "absent a master list of fax numbers, there is no evidence in the record that establishes which customers were sent [Defendant's] seminar faxes."); <u>Abby v. Paige</u>, 282 F.R.D. 576, 579 (S.D. Fla. 2012) (denying motion to certify class seeking damages for the defendant's alleged failure to include debt collection warning as required by 15 U.S.C. § 1692e(11) in the initial communication to consumers as a result of lack of "record evidence to ascertain the identities of these individuals, and no evidence that any of these individuals ever received a letter or notice from Defendant, much less one that allegedly violated the unspecified provisions of the FDCPA.").

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should enter an Order denying the Motion and for such other relief that it deems just and proper.

DMEAST #27248032 v3

## V.     REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), Green Tree respectfully requests oral argument. Among other things, this dispositive motion raises issues relating to whether Plaintiffs can proceed on a class basis. Oral argument would assist the Court in analyzing the issues presented while allowing the parties to address any questions that the Court may have following submission of all motion papers.

Respectfully submitted,

/s/ David Demers
David Demers, Esq.
Ohio Bar No.: 0055423
ddemers@cdgattorneys.com
Cooke & Demers, LLC
Three North High Street
P.O. Box 714
New Albany, Ohio 43054
Telephone: 614.939.0930

Of counsel:
Martin C. Bryce, Jr.
bryce@ballardspahr.com
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500

Justin Angelo
angeloj@ballardspahr.com
Ballard Spahr LLP
919 Third Avenue
New York, NY 10022
Telephone: 646.346.8012
*(pro hac admitted)*

DMEAST #27248032 v3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 17th day of October, 2016 a true and correct copy of the foregoing **DEFENDANT GREEN TREE'S OPPOSITION TO PLAINTIFFS' MOTION TO CERTIFY CLASS** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Michael Zieg
Eric Willison
James Nobile
Nobile & Thompson Co., LPA
4876 Cemetary Road
Hilliard, OH 43026
mzieg@ntlegal.com
eewillison@earthlink.net
jenobile@ntlegal.com

s/ David Demers
David Demers, Esquire

46