**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **BRIAN & CONNIE GEARY, on behalf of** | : | |
| **Themselves and all others similarly situated** | : | |
| | : | **Case No. 2:14-CV-00522** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Deavers** |
| **GREEN TREE SERVICING, LLC,** | : | |
| | : | |
| **Defendant.** | : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiffs' Motion to Certify Class. (Doc. 42.) Plaintiffs seek class certification under Federal Rule of Civil Procedure 23(a) and 23(b)(3). Defendant opposes on several grounds. (Doc. 45.) For the reasons set forth herein, the Court **GRANTS** Plaintiffs' motion with modifications.

## I.    BACKGROUND

This case arises from the Fair Debt Collection Practices Act ("FDCPA") consequences of letters that Defendant Green Tree Servicing, LLC ("Green Tree") sent to Plaintiffs and others similarly situated.

Defendant is a limited liability company registered as active in the state of Ohio. Defendant is in the business of, among other things, servicing defaulted loans. Around the time Defendant acquires the servicing rights to these loans, it sends the debtors an initial communication letter ("Initial Communication") which, among other things, informs them that Green Tree has acquired the loan. During the applicable time period (June 3, 2013 to present), Defendant sent eleven (11) different versions of Initial Communication to 31,000 borrowers-in-default. (Doc. 42-3.) Plaintiffs contend that six (6) of these letters were "not sent by Green Tree

1

strictly for informational purposes. Rather, they were aimed to make collection of the debts more likely to succeed." (Doc. 42 at 2.) Accordingly, Plaintiffs contend that within five days of these six letters, the FDCPA required Defendant to include a written notice containing the following:

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). None of Defendant's eleven Initial Communications contained the 30-day debt validation notice ("Validation Notice") required by subsections (3) through (5), nor did Defendant provide the Validation Notice within five days of the Initial Communications. (Doc. 42-2.) For these provisions to apply to each letter, however, Defendant must be a "debt collector" as defined by the FDCPA,[1] and the Initial Communication must be "in connection with the collection of any debt." *Id.* A "debt" is defined by the FDCPA to include only those obligations owed "primarily for personal, family, or household purposes[.]" 15 U.S.C.

---

[1] The FDCPA defines a "debt collector," with exceptions not applicable here, to mean "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests." 15 U.S.C. § 1692a(6).

§ 1692a(5). In other words, the FDCPA applies only to what are colloquially known as consumer debts.

Plaintiffs are Ohio residents who took out a loan from CitiFinancial, Inc. to finance the purchase of an automobile. Following a bankruptcy and a reaffirmation agreement, Plaintiffs paid off the loan with CitiFinancial. Then, Green Tree acquired the loan from CitiFinancial, and sent Plaintiffs an Initial Communication on October 16, 2013 that did not include the Validation Notice.[2] Plaintiffs extrapolate from their experience, Defendant's admissions that the eleven Initial Communications did not contain the Validation Notice, Plaintiffs' contention that six of the eleven letters required the Validation Notice, and the 31,000 debtors-in-default to whom Defendant sent the eleven initial communications, that Defendant violated the FDCPA by sending these letters to several thousand borrowers-in-default without the Validation Notice. Plaintiffs filed their complaint on June 3, 2014, alleging four individual counts and four class counts of FDCPA violations. (Doc. 1.)

Defendant filed a motion to dismiss individual Counts II, III, and IV of Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Doc. 3.) In the alternative, Defendant asked the Court to strike Plaintiffs' class allegations in Class Counts I and II under Federal Rule of Civil Procedure 23(c)(1)(A). The Court granted Defendant's motion to dismiss Count IV and Class Count II and denied Defendant's motion to dismiss individual Counts II and III, and Class Count I. (Doc. 14 at 14, 21, 29.) In denying the motion to dismiss, the Court found that Plaintiffs alleged sufficient facts that Defendant was a "debt collector" in connection with Plaintiffs' loan and Defendant's Initial Communication to Plaintiffs was a "communication in connection with the collection of a debt under the FDCPA."

---

[2] Green Tree sent Plaintiffs the Validation Notice on November 14, 2013, more than five days after October 16. (Doc. 45-1 at 8.)

(*Id.* at 14, 21.)  The Court declined, without the benefit of a fully briefed motion for class certification, to strike the class allegations associated with Class Count I.  (*Id.* at 29.)  Therefore, individual Counts I, II, and III, and Class Counts I and III remain to be adjudicated.  (*See id.*)

Individual Count I asserts a violation of 15 U.S.C. § 1692e(2)(A) for the use of false, deceptive, or misleading representations in connection with the collection of a debt and for falsely representing the character, amount, or legal status of the Plaintiffs' loan debt, in billing statements, collection calls, and/or other correspondence.  (Doc. 1 at ¶¶ 60-73.)  Individual Count II alleges a violation of 15 U.S.C. § 1692g(a) for failing to send a Validation Notice within five days of sending the Initial Communication.  (*Id.* ¶¶ 74-80.)  Individual Count III asserts a violation of 15 U.S.C. § 1692g(b) for Defendant's failure to send written documentation providing verification of the debt it sought to collect.  (*Id.* ¶¶ 81-90.)  Class Count I alleges systemic violations of 15 U.S.C. § 1692g(a) for Defendant's failure to send borrowers a Validation Notice within five days of sending the Initial Communication.  (*Id.* ¶¶ 102-32.)  Class Count III requests declaratory relief for the alleged violation described in Class Count I.  (*Id.* at ¶¶ 164-65.)

After the parties engaged in class discovery, Plaintiffs brought the instant Motion to Certify Class under Federal Rule of Civil Procedure 23(a) and (b)(3).  (Doc. 42.)  Plaintiffs seek to certify the following class:

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, one or more letters in the form of the exemplars attached hereto as Exhibits 4 through 9.

(Doc. 42 at 6.)  Defendant opposes Plaintiffs' motion to certify class and requested oral argument.  (Doc. 45.)  The motion is fully briefed and is ripe for review, and the Court held oral argument on June 12, 2017.

## II.    STANDING

A prerequisite to Plaintiffs' lawsuit is establishing standing under Article III of the United States Constitution.  To establish constitutional standing, Plaintiffs must show that they suffered: "(1) [] an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  *McGlone v. Bell*, 681 F.3d 718, 729 (6th Cir. 2012) (internal quotation omitted).

Defendant argues that Plaintiffs have failed to establish a "concrete" injury in fact because Count II alleges a "bare procedural violation."  (Doc. 45 at 15.)  In *Spokeo, Inc. v. Robins*, the Supreme Court discussed the concreteness requirement of injury in fact in the context of statutory violations.  136 S. Ct. 1540, 1549-50 (2016).  In particular, the Supreme Court held that a Plaintiff generally does not meet this requirement "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *Id.* at 1549.  There are some circumstances, however, in which "the violation of a procedural right granted by statute can be sufficient . . . to constitute injury in fact.  In other words, a plaintiff in such a case need not allege any *additional* harm beyond the one Congress identified."  *Id.* (emphasis in original).  The Court cites two examples of such cases.  In each, the injury resided in plaintiffs' inability to obtain information that Congress had decided to make available to the public.  *Id.*  In circumstances such as these, the Supreme Court held that the "risk of real harm" may "satisfy the requirement of concreteness."  *Id.*

Like the examples cited by *Spokeo* of statutory violations that established the concreteness prong of injury in fact, Plaintiffs' injuries in Count II are also sufficiently concrete. Plaintiffs' injuries, too, involve the failure to disclose required information, the disclosure of

which was the purpose of the statute. The failure to disclose in this case also involves the risk of real harm in the form of consumers potentially waiving their rights to dispute and seek validation of their debts.

The one court of appeals to address this precise issue—the failure to include FDCPA-required disclosures in a debt-collection letter—found that this failure to disclose satisfied the concreteness prong of injury in fact. *Church v. Accretive Health, Inc.*, 654 F. App'x 990, 995 (11th Cir. 2016).[3] The plaintiff in *Church* had alleged that the defendant had sent her a letter advising her that she owed a debt, but that the defendant had "violated the FDCPA by not including in its letter certain disclosures required by the Act." *Church*, 654 F. App'x at 991. The Eleventh Circuit found this alleged violation (not receiving the FDCPA-required disclosures) to be "concrete" because:

> The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled. While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. *See Spokeo, Inc.*, 578 U.S. at ——, 136 S.Ct. at 1549; *Havens Realty Corp.*, 455 U.S. at 373, 102 S.Ct. 1114. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement.

*Id.* at 995. The Eleventh Circuit also found that the failure to disclose was a "substantive" rather than a "mere procedural" violation, stating that "Congress provided Church with a substantive

---

[3] The Sixth Circuit distinguishes *Church* in *Lyshe v. Levy*, 854 F.3d 855, 860 (6th Cir. 2017). In *Lyshe*, however, the Sixth Circuit analyzed an alleged violation of the FDCPA that resulted in "the mere prospect of a slightly less convenient discovery process." *Lyshe*, 854 F.3d at 861. This, the Sixth Circuit held, "is not the type of abusive debt collection practice the FDCPA was designed to prevent; therefore, it is not a concrete harm." *Id.* at 861-62. The FDCPA *was* designed, however, to prevent the type of harm involved in the case *sub judice*. The Sixth Circuit also found that the Eleventh Circuit had rejected the reasoning in *Church* as applied to a "mere violation of a state law procedural rule like Lyshe alleges here." *Id.* at 860 (*citing Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1000 (11th Cir. 2016)). *Lyshe* and *Nicklaw* illustrate, not that *Church* is bad law or unpersuasive, but rather that the *Spokeo* concreteness inquiry depends on a number of factors, including the particular statutory violation at issue, its relation to the purpose of the statute, and the "risk of real harm" posed by the statutory violation. Although *Church* may have not been persuasive in these contexts, it is useful in this case, which presents the same fact scenario.

right to receive certain disclosures and Church has alleged that Accretive Health violated that substantive right." *Id.* at 995 n.2.

Defendant cites two FDCPA cases in opposition, both of which, apart from their nonbinding nature on this court, are distinguishable because they involved facts that expressly showed that the plaintiff *lacked* injury. In *Jackson v. Abendroth & Russell, P.C.*, the court found that alleging a violation of the disclosure obligations of the FDCPA did not satisfy concreteness because the plaintiff "d[id] not indicate that he ever intended to dispute [or verify] his debt in any way." 207 F.Supp.3d 945, 953 (S.D. Iowa 2016). The *Jackson* court indicated that it could have reached a different conclusion "[i]f a consumer contends the alleged debt owed is incorrect, or merely wishes to verify the debt," because "then a deficient disclosure of their FDCPA rights could create a risk of real harm because a consumer could inadvertently forfeit their right to validate the debt." *Id.* at 954. Such was the case here. Plaintiffs' intent to exercise their rights to dispute and verify their debt was clear because they actually did so once they received the required notifications.

The plaintiff in *Tourgeman v. Collins Financial Services, Inc.* did not even receive the letter containing the alleged FDCPA violations, "and he admittedly suffered neither pecuniary loss nor mental distress related to it." 197 F.Supp.3d 1205, 1209 (S.D. Cal. 2016). If Tourgeman had actually received the letter, the court found that potential risk that he could be confused and act to his detriment "could suffice to demonstrate Article III standing." *Id.* Unlike Tourgeman, Plaintiffs here in fact received the letter.

Plaintiffs cite to six other district court cases that find concrete injuries in technical FDCPA allegations. Four of the cases find either a "risk" of harm or actual harm to the plaintiff arising from the FDCPA violation. *Hayes v. Convergent Healthcare Recoveries, Inc.*, No. 14-

1467, 2016 WL 5867818, at *5 (C.D. Ill. Oct. 7, 2016) (finding material risk of harm); *Macy v. GC Services Limited Partnership*, No. 3:15-cv-819, 2016 WL 5661525, at *3 (W.D. Ky. Sept. 29, 2016) (finding substantial risk of harm); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *4 (N.D. Ill. July 11, 2016) (finding a risk of depriving plaintiff of his right to verification); *Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) (finding emotional trauma, costs incurred to defend a lawsuit). Two additional cases find, like *Church*, that the statutory violation alone was sufficient to establish concreteness. *Prindle v. Carrington Mortgage Services, LLC*, No. 13-cv-1349, 2016 WL 4369424, at *11 (M.D. Fla. Aug. 16, 2016); *Quinn v. Specialized Loan Servicing, LLC*, No. 16-C-2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016).

The Court finds that Plaintiffs have established concreteness, although the Court need not go so far as *Church*, *Prindle* and *Quinn* in finding it in the statutory violation alone. Plaintiffs have alleged that Defendant deprived them of their right to receive the timely validation notice, which violation created the real risk of Plaintiffs forfeiting their rights to dispute or require Defendant to verify their debt. These disclosures go to the heart of the FDCPA, the goal of which is, broadly, to "eliminate the abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). There was a "risk of real harm" in this case because Plaintiffs did not dispute or seek validation of their debt following their receipt of the Initial Communication, even though their debt was invalid. *Spokeo*, 136 S. Ct. at 1549. Plaintiffs clearly would have exercised their rights had they known about them, because they actually did dispute and seek validation of the debt once they finally received the required disclosures.[4]

---

[4] The fact that Defendant eventually did serve the required Validation Notice on Plaintiffs does not necessarily negate the injury Plaintiffs suffered from Defendant's failure to timely serve the notice. Plaintiffs' actual injury is an issue for trial.

The Court also finds that in this case Plaintiffs need not establish that each class member suffered an injury sufficient to demonstrate standing. Although the Sixth Circuit has thus far declined to "enter a circuit split over whether it is sufficient that the named class plaintiff has standing, regardless of whether unnamed class members do," *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 524 n.9 (6th Cir. 2015), the Court notes that for each unnamed plaintiff in this case to whom Defendant failed to send the Validation Notice, there is the same "risk of real harm" that Plaintiffs suffered. The FDCPA envisions enforcement by the use of a class action. 15 U.S.C. § 1692k(a)(2)(B). Requiring Plaintiffs to establish more on behalf of each class member individually would eviscerate the class action device. *See Macy v. GC Services Ltd. Partnership*, 318 F.R.D. 335, 338 (W.D. Ky. 2017) (in an FDCPA class action, declining to require Plaintiffs to demonstrate that each class member suffered an injury sufficient to confer standing).[5]

Plaintiffs have established standing.

## III.    STANDARD OF REVIEW

Plaintiffs seek certification of the proposed class under Federal Rules of Civil Procedure 23(a) and 23(b)(3). Rule 23(a) allows one or more members of a class to sue as representative parties only if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the class." Fed. R. Civ. P. 23(a) (referred to by the

---

[5] The two out-of-circuit cases Defendant cites in opposition are distinguishable, or otherwise do not help Defendant. The Second Circuit actually *affirmed* the district court's finding of concrete injury on behalf of a class that obtained fraudulent tax advice, even when some of the class members may not ever have faced an IRS audit. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 265-66 (2d Cir. 2006). And the Seventh Circuit found concrete injury lacking because the proposed class of children with learning disabilities was "so amorphous and diverse" that it could "not be reasonably clear that the proposed class members ha[d] all suffered a constitutional or statutory violation warranting some relief." *Adashunas v. Negley*, 626 F.2d 600, 604 (7th Cir. 1980). Here, the proposed class is neither amorphous nor diverse, and it is reasonably clear that the proposed class members have suffered a statutory violation warranting some relief.

shorthand of "(1) numerosity, (2) commonality, (3) typicality, and (4) adequacy").  In addition, under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3) (referred to by the shorthand of "predominance and superiority").  Finally, courts have applied an ascertainability requirement, wherein "the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012) (internal quotation omitted).

Plaintiffs bear the burden of showing that these elements have been met.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  Before certifying a class action, the Court must conduct a "rigorous analysis" to determine whether Plaintiffs have met the requirements of Rule 23.  *Id.*  In ruling on a motion for class certification, the Court may not consider the merits of Plaintiffs' claims, but may consider evidence outside the pleadings to determine whether Plaintiffs have met their burden under Rule 23.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  The Court has broad discretion in determining whether to certify a class under Rule 23. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981).

### IV.    ANALYSIS

#### A.  The Proposed Class is Sufficiently Numerous

The Rule 23(a)(1) requirement that the class be "so numerous that joinder of all members is impracticable" is not amenable to a strict numerical test.  *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996).  Rather, the Court examines this factor in light of the particular facts

of the case. *Id.* Nonetheless, common sense dictates that at some point numbers alone will satisfy the numerosity requirement. *Id.*

In this case, Defendant sent eleven (11) different versions of Initial Communication to at least 31,000 people from June 3, 2013 to August 2, 2016.[6] (Doc. 42-1.) Defendant further admitted that it did not send a Validation Notice within five days of any of these Initial Communications. (Doc. 42-2.) The Court has already found that the named Plaintiffs adequately alleged that one of these eleven letters (the one sent to them) was a "communication in connection with the collection of a debt under the FDCPA" that required the Validation Notice under 15 U.S.C. § 1692g(a). (Doc. 14 at 21.) Plaintiffs allege that five more versions of these Initial Communications are substantially similar to the letter Defendant sent to them. (Docs. 42-4 – 42-9.) Defendant has not provided Plaintiffs with the information necessary to determine how many people received each letter. (Doc. 42 at 8.) Therefore, Plaintiffs estimate that approximately 17,000 (approximately six-elevenths of 31,000) potential class members received letters that allegedly violated the FDCPA.

Defendant argues that Plaintiffs' estimate is based only on speculation. Defendant also states, however, in an argument against damages, that "the putative class also surely contains *thousands* of borrowers" who, like Plaintiffs, received the validation notice at some point after the FDCPA required it. (Doc. 45 at 18 (emphasis added).) If the putative class "surely contains thousands of borrowers" in the same position as Plaintiffs (that is, with smaller damages than borrowers who did not receive the validation notice *at all*), then the class satisfies numerosity. It is not practicable to join thousands of borrowers.

---

[6] This date range reflects the applicable one-year statute of limitations and the date Defendant produced the eleven letters.

### B. Plaintiffs Meet the Commonality Requirement

To satisfy commonality, Plaintiffs must "demonstrate that the class members 'have suffered the same injury.'" *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation omitted). At the class certification stage, Plaintiffs need not prove "that all or most class members were in fact injured to meet this requirement." *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 505 (6th Cir. 2015). To certify a class, "[t]here need be only one common question." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013). This question, however, must be "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 852 (quoting *Dukes*, 564 U.S. at 350). As explained succinctly by the Sixth Circuit, "named plaintiffs must show that there is a common question that will yield a common answer for the class (to be resolved later at the merits stage), and that that common answer relates to the actual theory of liability in the case." *Rikos*, 799 F.3d at 505.

Plaintiffs claim that the following common questions of law exist in this case: (1) "[a]re the form letters at issue 'communications'" under 15 U.S.C. § 1692a(2)?; (2) did putative class members receive one of the six letters allegedly at issue?; (3) "[a]re the putative class members who received the form letters "consumers" under 15 U.S.C. § 1692a(3)?; (4) "[w]ere the underlying discharged obligations 'debts'" under 15 U.S.C. § 1692a(5)?; and (5) "[w]as Green Tree a 'debt collector'" under 15 U.S.C. § 1692a(6)? (Doc. 42 at 10; Doc. 49 at 12.)

Defendant counters by focusing on questions that it claims are not common to the class: (1) actual damages suffered; (2) emotional distress suffered; and (3) Defendant's bona fide error defense, which it contends requires a "highly individualized inquiry." (Doc. 45 at 21-24.)

Despite Defendant's concerns, certain questions posed by Plaintiffs indeed are common to the recipients of each letter: are each of the six letters communications in connection with a debt under the FDCPA? Is Defendant a "debt collector" under 15 U.S.C. § 1692a? Defendant's bona fide error defense in this case appears to be letter, not Plaintiff, specific.[7] To establish a bona fide error defense, Defendant must show "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). Defendant appears to suggest two bases for its bona fide error defense: (1) the named Plaintiffs actually did not have a debt and Defendant erroneously acquired Plaintiffs' account; and (2) not every Initial Communication would have triggered the Validation Notice. (Doc. 45 at 24.) The first basis is exceedingly unlikely to apply to class members because Defendant states that "at the time the letters were mailed to the approximately 31,000 customers the accounts were in default." (Doc. 42-3.) The second is letter, not Plaintiff, specific, and is therefore common to the recipients of each letter.

Because there are common issues, the determination of which would move the litigation forward for each class member, Plaintiffs have established commonality.

## C. Plaintiffs Meet the Typicality Requirement

To a large extent, typicality overlaps with commonality. *See Dukes*, 564 U.S. at 349 n.5. To meet the typicality requirement, the class members' claims must be "fairly encompassed by the named plaintiffs' claims." *Whirlpool*, 722 F.3d at 852. A claim meets this requirement if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at

---

[7] The Court addresses actual damages and emotional distress later in this Opinion & Order.

1082. If a plaintiff, in proving his own claim, has "not necessarily . . . proved anybody else's claim," then typicality is not met. *Beattie v. CenturyTel, Inc*., 511 F.3d 554, 561 (6th Cir. 2007) (internal quotations omitted). Finally, "a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." *Id.* (internal quotations omitted).

Defendant argues that Plaintiffs' claims are not typical because they pursue individual claims in addition to their class claims. (Doc. 45 at 20.) Defendant also claims that Plaintiffs seek different damages from the class. (*Id.* at 21.) For example, Plaintiffs seek actual damages for "damage to credit," which Plaintiffs do not seek for the class. On behalf of the class, Plaintiffs seek the return "of amounts collected prior to the 30 day Validation Notice being sent by Green Tree to class debtors," which Plaintiffs do not seek for themselves. (*Id.*) Defendant also argues that some Plaintiffs may seek emotional distress damages, while others may not. (*Id.*) In support, Defendant cites an out-of-circuit FDCPA case denying class certification in part because Plaintiffs' letter differed from those of other classmembers. (*Id.* (citing *Jones v. Roy*, 202 F.R.D. 658 (M.D. Ala. 2001).)

Here, Plaintiffs' and the proposed classmembers' claims arise from the same alleged deficiencies in letters that Defendant sent to them: failure to include the Validation Notice. *See Macy*, 318 F.R.D. at 339–40 (class met typicality because "the named plaintiffs and the proposed class members' claims arise from letters GC Services sent to all of them containing the same alleged deficiency."). And Defendant's damages arguments do not defeat typicality. *Whirlpool*, 722 F.3d at 858 (affirming certification of a class for liability purposes only).

As the Court indicated above, however, each letter does not necessarily give rise to liability, although the legal issue of liability is the same for each letter. Therefore, the Court

finds that splitting the proposed class into six subclasses (one for the recipients of each letter) would alleviate this concern. *See also Jones*, 202 F.R.D. at 664-65. Moreover, because liability and statutory damages are generalized whereas actual damages are particularized, the Court finds that certifying the classes for the purposes of liability and statutory damages, rather than actual damages, would alleviate the damages issues raised by Defendant. *See Whirlpool*, 722 F.3d at 858.

### D. Plaintiffs Meet the Adequacy Requirement

The adequacy-of-representation requirement addresses the concern that "the interests of the class members will be fairly and adequately protected in their absence." *Dukes*, 564 U.S. at 349 n.5. In particular, it "raises concerns about the competency of class counsel and conflicts of interest." *Id.* This requirement also "tends to merge" with typicality and commonality. *Macy*, 318 F.R.D. at 340 (quoting *Dukes*, 564 U.S. 349 n.5). To establish adequacy, Plaintiffs must meet two factors: "1) [T]he representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 757 (6th Cir. 2013) (alteration in original) (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d at 1083).

Defendant argues that Plaintiffs fail to represent adequately the class because they have alleged additional claims outside the class claim. (Doc. 45 at 25.) Defendants also argue that the damages issues and *bona fide* error defense cited above defeat adequacy. (*Id.* at 25-26.) Defendants do not present any argument against the qualifications of Plaintiffs' counsel. (*Id.*)

For the reasons stated in section IV(C), the Court finds that Plaintiffs' separate individual claims and individual damages issues do not defeat adequacy for their class claim, particularly if the Court certifies classes for liability and statutory damages purposes only. (*See* Doc. 49 at 14.) Moreover, the Court finds Plaintiffs' counsel to be experienced in consumer litigation and, as

such, is qualified to represent Plaintiffs. In addition, Plaintiffs' counsel's conduct in this case thus far has shown that they would vigorously prosecute the interests of the class.

### E. Plaintiffs Meet the Rule 23(b)(3) requirements of Predominance and Superiority

Under Federal Rule of Civil Procedure 23(b)(3), Plaintiffs must also meet the requirements of predominance and superiority.

#### *1. Predominance*

To establish predominance, the "named plaintiffs must show, and district courts must find, that questions of law or fact common to members of the class predominate over any questions that affect only individual members." *Whirlpool*, 722 F.3d at 860.

Defendant argues that the following individual issues predominate: (1) whether the debt is a consumer debt; (2) whether prior debt collectors have had this debt before; (3) whether Defendant is a "debt collector" because it sent the letter before officially acquiring the debt; (4) whether the letters are identical; (5) whether Defendant has a *bona fide error* defense; and (6) issues related to damages. (Doc. 45 at 26-34.)

Whether a debt is a consumer debt is a question that must be answered; however, "determinations of whether each transaction involved a 'consumer debt' do not predominate over issues common to the class." *Ballard v. Equifax Check Services, Inc.*, 186 F.R.D. 589, 598-99 (E.D. Cal. 1999). Contrary to Defendant's assertion, this question "can be addressed 'in a manner which will not require the testimony of each and every' recipient of the dunning letter." *Id.* at 599.[8] *See also Talbott v. GC Servs Ltd. Partnership*, 191 F.R.D. 99, 106 (W.D. Va. 2000) (finding predominance and certifying class in an FDCPA case where "[a]ll that remains to be determined is the identity of those who received the [defendant's] dunning letter.")

---

[8] The Court discusses methods for straightforward determination of this question *infra*, section (IV)(F).

The issue of whether it is dispositive that Green Tree be the *first* debt collector to have sent the Initial Communication is the subject of a circuit split. *Compare Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1081 (9th Cir. 2016) ("we hold that the FDCPA unambiguously requires any debt collector—first or subsequent—to send a § 1692g(a) validation notice within five days of its first communication with a consumer in connection with the collection of any debt.") *with Oppong v. First Union Mortg.,* 566 F.Supp.2d 395, 403–04 (E.D. Pa. 2008), aff 'd, 326 F. App'x 663 (3d Cir. 2009) (finding that a subsequent debt collector need not provide a "*second* validation notice.")   As this Court has previously held, the first interpretation is more persuasive:

> Given that the statutory text may reasonably be interpreted to require or not to require 1692g disclosures from subsequent debt collectors, and in the absence of any controlling precedent, the more persuasive interpretation is that section 1692g(a) requires the initial communication from each debt collector-not just the first debt collector-to comply with the disclosure requirements. The requirements that debt collectors validate the debt and give the debtor the opportunity to dispute the debt aim to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S. Rep. 95–382, 1977 WL 16047 at *4 (Aug 2, 1977). To decline to require subsequent debt collectors to validate the debt on which they seek recovery would undercut this goal. It is implausible to think that Congress, concerned with "dunning the wrong person," would limit disclosure requirements to a narrow range of debt collectors-those that are the first to seek recovery on a given debt. Instead, an interpretation that requires *all* debt collectors to comply with the validation and disclosure requirements best promotes the goal of protecting consumers.

*Robinson v. Nationstar Mortg., LLC*, No. 2:12–cv–718, 2012 WL 5596421, at *5 (S.D. Ohio Nov. 15, 2012).  Therefore, the Court finds that individual issues do not predominate in this regard.[9]

---

[9] At oral argument, Defense counsel cited a recent Supreme Court case, *Henson v. Santander Consumer USA Inc.*, 582 U.S. ____ (2017) for the proposition that this Court should interpret 15 U.S.C. § 1692g in its favor.   *Henson* interprets the "debt collector" definition of FDCPA, defined to include anyone who "regularly collects or attempts to collect . . . debts owed or due . . . another," to exclude debts purchased and pursued on a collector's own account.   *Henson*, 582 U.S. at *1-*2, *10-*11.   Even if the Court

The Court also finds that it is not relevant that Green Tree may have sent the Initial Communications prior to the date that it took over servicing the debts. Green Tree's argument here is essentially that it did not act as a debt collector because it was not allowed to do so yet. (Doc. 45 at 30.) The Court has already found, at least in connection with the letter sent to Plaintiffs, that Green Tree was acting as a debt collector in connection with the collection of a debt. (Doc. 14 at 14, 21.) And Green Tree sent Plaintiffs the letter before it officially took over the servicing of the debt. (*See* Doc. 45 at 5.) Therefore, this issue has been determined by the law of the case. *Schenck v. City of Hudson*, No. 98-3353, 2000 WL 245482, at *1 (6th Cir. Feb. 23, 2000) ("a decision on an issue made by a court at one stage of a case should be given effect in successive stages of the same litigation.") (internal quotation omitted).

The variances in the Initial Communications, as discussed above, may be addressed by splitting the class into six: one for the people to whom Defendant sent each letter. Any potential *bona fide* error defense, as discussed above, applies on a letter-wide basis. And the class action device is still useful for liability and statutory damages purposes, even if actual damages calculations pose individual questions. *See Whirlpool*, 722 F.3d at 860-61 ("When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate. . . . a class may be certified for liability purposes only, leaving individual damages calculations to subsequent proceedings. . . .") (internal citations, quotations and brackets omitted).

---

overlooks the fact that *Henson* interprets a different provision of the FDCPA, *Henson*, which the Supreme Court bases on a "plain language" reading of the statutory text, is inapposite. The provision at issue here provides, in relevant part: "[w]ithin five days after **the** initial communication with a consumer . . ., **a** debt collector shall . . . send the consumer a written notice[.]" 15 U.S.C. § 1692g (emphasis added). Green Tree urges that "the" initial communication language precludes a reading that each debt collector must send an initial communication. Practically speaking, however, each debt collector (initial and subsequent) sends an initial (first) communication to consumers. Therefore, *Henson* is inapposite because "the" initial communication may also refer to the initial communication of each debt collector. *See Robinson*, 2012 WL 5596421, at *4.

In short, this case is "sufficiently cohesive to warrant adjudication by representation." *Whirlpool*, 722 F.3d at 859 (internal quotations omitted). *See also Macy*, 318 F.R.D. at 340 ("The question of whether GC Services violated the FDCPA by failing to include the in-writing requirement in the letters it sent to class members is common to all members and predominates over any individual questions.")

### 2. Superiority

For a class to be certified, the class method must be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The alternative to adjudicating this case as a class action is for the Court to handle thousands, perhaps tens of thousands, of individual cases. The reality is that few individual plaintiffs would sue or receive any redress at all in individual actions. The Supreme Court has held that the purpose of class actions is "to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights . . . by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). Therefore, "the fact that each class member may recover a seemingly paltry sum does not defeat the superiority element." *Macy*, 318 F.R.D. at 341–42. In this inquiry, it is also "proper for the court to consider the 'inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually.'" *Talbott v. GC Services Ltd. Partnership*, 191 F.R.D. 99, 106 (W.D. Va. 2000).

The Court finds that the class device is superior in this case. Plaintiffs are unlikely to be willing or able to front litigation costs and subject themselves to the financial exposure inherent in litigation for the typically low payout in these types of cases. Plaintiffs with unusual damages and a penchant to do so may choose to opt out of the class.

### F.  The Class Proposed by Plaintiffs is Ascertainable and not Fail-Safe

Ascertainability and the inquiry into whether a class is fail-safe are both issues related to how Plaintiffs define the class.  Some courts define a "fail-safe" in terms of the lack of ascertainability, although the two concepts have different standards.  *See Zarichny v. Complete Payment Recovery Servs, Inc.*, 80 F. Supp. 3d 610, 625 (E.D. Penn. 2015) ("As one commentator explained, '[F]ail-safe classes [are] one category of classes failing to satisfy the ascertainability requirement'") (internal quotation omitted).  Because the parties in this case divide the inquiry, the Court will divide it as well.

Though not an express requirement of Rule 23(a), "ascertainability goes to whether the class has been defined such that it encompasses an identifiable group."  *Cerdant, Inc. v. DHL Express (USA), Inc.*, No. 2:08-cv-186, 2010 WL 3397501, *5 (S.D. Ohio Aug. 25, 2010).  For a class to be ascertainable, "the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria."  *Young*, 693 F.3d at 538.  The Court need not deny class certification due to the need to review individual files.  *Id.* at 540.  Otherwise, "defendants against whom claims of wrongful conduct have been made could escape class-wide review due solely to the size of their businesses or the manner in which their business records were maintained."  *Id.* (internal quotation omitted).  Indeed, as the Sixth Circuit has held,

> It is often the case that class action litigation grows out of systemic failures of administration, policy application, or records management that result in small monetary losses to large numbers of people.  To allow that same systemic failure to defeat class certification would undermine the very purpose of class action remedies.

*Id.*

Furthermore, a proposed class may not be "fail-safe," which means, "a class that cannot be defined until the case is resolved on its merits."  *Young*, 693 F.3d at 538 (citing *Randleman v.*

*Fidelity Nat'l Title Ins. Co.,* 646 F.3d 347, 352 (6th Cir.2011) ("Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.")). A fail-safe class is prohibited "in large part because it would fail to provide the final resolution of the claims of *all* class members that is envisioned in class action litigation." *Id.*

Defendant argues that the class is not ascertainable because "Plaintiffs fail to objectively define the putative class and the members of the class cannot be identified in an administratively feasible manner consistent with Rule 23." (Doc. 45 at 41.)[10] Defendant argues that, because their systems are imperfect and the account notes do not reflect communications *verbatim*, they could only determine which borrower received which Initial Communication "through a manual, file-by-file review of the 31,000 loans." (*Id.*) This file-by-file review requirement extends to whether class members' debts are consumer debts. (*Id.* at 42.) Defendant also argues that Plaintiffs did not identify which of its communications are "allegedly debt collection communications under the FDCPA, or why those notices are subject to the FDCPA." (*Id.* at 42.) Finally, it recycles arguments used earlier in its briefs, including that individual determination is required to eliminate potential classmembers: (a) who received their notice prior to the time Green Tree officially took over servicing the loans; (b) to whom Green Tree sent notices because of a "bona fide error;" and (c) for whom Green Tree was not the *first* debt collector, based on a legal argument that only the *initial transferee* of the debt is required to send the required validation notice. (*Id.* at 42-43.)

Plaintiffs counter that objective criteria define the proposed class definition: all individuals to whom Defendant sent one of the six form letters during a certain time period. (Doc. 42 at 21.) Plaintiffs argue that "the Class (or Classes) are easily and objectively

---

[10] Defendant also suggests that it may be able to determine who is a consumer only by canvassing each debtor individually.

determined" because "Defendant has already provided sufficient detail to fully and objectively identify each potential member. The burden imposed on Defendant to finish its identification is hardly enormous or unreasonable under the circumstances." (Doc. 49 at 24.) Plaintiffs attach Defendant's public filings with the SEC to show that Defendant services primarily "consumer" loans and that the number of commercial loans involved is likely to be very small. (Doc. 49-1 ("We are a diversified mortgage banking firm focused primarily on servicing and originating residential loans.").)

Plaintiffs have proposed a class that is ascertainable by reference to objective factors, because class membership is determined by two objective factors: (1) whether Defendant sent one of six letters to Plaintiffs;[11] and (2) whether Defendant did so in a certain time frame. Defendant has shown that they possess the information necessary to answer these questions, although Defendant has not offered a more efficient method of obtaining it other than a manual review of its 31,000 files. (Doc. 45 at 42.)

Defendant's arguments to the contrary are unavailing. First, with regard to the additional letters, the Court has already reviewed the letter sent to Plaintiffs; the fact that the Court must review five remaining letters for whether they share attributes with the letter sent to Plaintiffs simply points to the Court certifying six subclasses rather than one class. *See* Fed. R. Civ. P. 23(c)(5).

Whether the debts held by proposed class members are covered by the FDCPA because they are "primarily for personal, family, or household purposes" under 15 U.S.C. § 1692a(5) poses a more challenging, but not insurmountable, question. Defendant is in the best position to understand the nature of the loans it services. Despite invitations to do so in its briefing and at

---

[11] Defendant does not argue that the class is not ascertainable because it is based on letters "sent" rather than "received." Regardless, liability does not depend on actual receipt of a letter alleged to violate the FDCPA. *See Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 676 (N.D. Cal. 2011).

oral argument, Defendant has not rebutted Plaintiffs' assertion, using Defendant's own public

filings, that the vast majority of the loans they handle are "consumer" loans that fall under the

FDCPA, although not all residential loans are consumer loans. It does not matter, for the

purposes of ascertainability, if the class includes a small number of non-consumer loans that fall

outside the FDCPA. *Rikos v. Procter & Gamble Co.*, 799 F.3d 497, 526 (6th Cir. 2015)

(affirming ascertainability determination for a class that required "substantial review" to

determine, and despite the fact that the class could not be determined with "perfect" accuracy);

*Young*, 693 F.3d at 540-41 (same). Finally, "if there is genuine confusion over [the purpose of

the loan], class members can be asked a single question to determine whether they are entitled to

relief." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666 (N.D. Cal. 2011) (brackets in

original).[12] This single, "limited, straightforward factual determination[]" would not defeat

ascertainability. *See id.* at 677.[13]

Defendant's final argument on ascertainability actually illustrates why the proposed class

is *not* a proscribed "fail-safe" class, meaning it does not "include[] only those who are *entitled* to

relief." *Young*, 693 F.3d at 538 (emphasis in original). Defendant argues that individual

determination is required to eliminate potential classmembers: (a) who received their notice prior

to the time Green Tree officially took over servicing the loans; (b) to whom Green Tree sent

notices because of a "bona fide error;" and (c) for whom Green Tree was not the *first* debt

---

[12] Relatedly, other Courts have found that loan applications containing a "primary residence" box "are an adequate means of distinguishing between commercial and residential loans for the purpose of certifying a class." *Herrera*, 274 F.R.D. at 674. The Court does not have the information necessary to evaluate whether the loan applications in this case have such a box.

[13] At oral argument, defense counsel cited *Stewart v. Cheek & Zeehandelar, LLP*, 252 F.R.D. 387 (2008) to argue that an individualized "consumer" determination defeats ascertainability. *Stewart* is inapposite because the individualized question required in *Stewart* was dramatically more complicated than that here. *Stewart*, 252 F.R.D. at 396 (question was whether putative classmembers had one or more categories of property sought to be attached but was "exempt" from attachment).

collector. (Doc. 45 at 42-43.) These issues do not arise in the definition of the class, however, which is much simpler. *Cf. Cox v. Sherman Capital LLC*, No. 1:12-cv-1654, 2016 WL 274877, at *5 (S.D. Ind. Jan. 22, 2016) ("Each of the proposed [FDCPA] sub-classes includes the language of a valid claim in its definition" and is thus fail-safe.) Rather, they are arguments on the merits of the case, and as such illustrate that the class is not defined so as to include only those "*entitled* to relief." *Young*, 693 F.3d at 538. ("Defendants' other argument—that they are not ultimately liable for many of the class members, even if they were incorrectly charged—proves the point. This is not a proscribed fail-safe class.").

Defendant also argues that the class definition in Plaintiffs' complaint includes: (a) "consumers" who (b) "were in default or being treated as in default at the time of the transfer of the loan servicing to Green Tree" who (c) "received an initial communication from Green Tree in the same form and nature as the Transfer Notice that lacked the 30 day Validation Notice allegedly required by 15 U.S.C. § 1692g(a)(3)" which is (d) a "debt collection communication" under the FDCPA. (Doc. 45 at 39-40.) If the Court were to determine each of these criteria in connection with defining the class, Defendant argues, the class would be fail-safe. As Plaintiffs' reply points out, however, the class proposed by their motion for class certification actually contains none of these requirements. (Doc. 49 at 22.) Rather, "one is a member of the Class (or Classes) only if they were sent a letter." (*Id.* at 23.) *See Eager v. Credit Bureau Collection Servs, Inc.*, 2014 WL 3534949, at *4 (W.D. Mich. July 16, 2014) ("the class definition put forth in the complaint is often a working definition, . . . [and] might be tweaked as the pre-certification discovery process sheds light on the contours of the potential class.") (internal quotation omitted).

Plaintiffs have met the requirement of ascertainability, and the proposed class is not fail-safe.

## V.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiffs' Motion to Certify Class, with the following modifications: (1) the Court grants certification of six subclasses, rather than one class, based on the classmembers to whom Defendant sent each letter Plaintiffs allege to violate the FDCPA by omitting the Validation Notice; and (2) the Court grants certification for the purposes of liability and statutory damages (as opposed to actual damages and emotional distress) only.  Accordingly, the six subclasses are certified, for the purposes of liability and statutory damages only, as follows:

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, the letter in the form of the exemplar attached to Plaintiffs' Motion to Certify Class as Exhibit 4

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, the letter in the form of the exemplar attached to Plaintiffs' Motion to Certify Class as Exhibit 5

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, the letter in the form of the exemplar attached to Plaintiffs' Motion to Certify Class as Exhibit 6

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, the letter in the form of the exemplar attached to Plaintiffs' Motion to Certify Class as Exhibit 7

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, the letter in the form of the exemplar attached to Plaintiffs' Motion to Certify Class as Exhibit 8

> All persons who were sent by Defendant Green Tree Servicing, LLC, from June 3, 2014 to present, the letter in the form of the exemplar attached to Plaintiffs' Motion to Certify Class as Exhibit 9

The Court certifies this action as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(3), and designates Plaintiffs as the representatives of the six subclasses outlined above.[14]

In addition, the Court designates the law firm of Mobile & Thompson Co., LPA as Class Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure for the subclasses outlined above. The Court directs Plaintiffs' counsel and counsel for Defendant to meet and confer, and to provide the Court with a proposed plan for providing notice to the potential class action members. The parties shall report to the Court within thirty (30) days of this Order with such proposed plan. If the parties are unable to agree on notice, the parties shall submit separate proposed notices by the same date.

**IT IS SO ORDERED.**

**_s/ Algenon L. Marbley_**
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED:  June 16, 2017**

---

[14] The Court notes that the same analysis applies to the six subclasses as to the proposed class, and that the subclasses also meet the Rule 23 requirements.