**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN & CONNIE GEARY et al. | : | Case No.:  2:14-cv-00522 |
| | : | |
| Plaintiffs, | : | Judge: MARBLEY |
| | : | |
| v. | : | Magistrate: PRESTON-DEAVERS |
| | : | |
| GREEN TREE SERVICING, LLC, | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR**
**SUMMARY JUDGMENT AND DECERTIFICATION OF CLASSES (ECF 99)**

Now come Brian and Connie Geary, Plaintiffs and Class Representatives ("Plaintiffs"), and set forth below their Response in OPPOSITION to the Motion for Summary Judgment and Decertification of Classes (ECF 99) ("MSJ") filed by Defendant, Green Tree Servicing, LLC, n/k/a Ditech Financial, LLC ("Ditech").  For the reasons which follow, Ditech's Motion should be DENIED.

**I.    DITECH'S SUMMARY JUDGMENT AND CLASS DECERTIFICATION STRATEGY**

Ditech's MSJ is based upon its compound premise that Plaintiffs cannot be adequate class representatives because its collection actions in relation to Plaintiffs' individual debt are excepted from application of the Fair Debt Collection Practices Act ("FDCPA") pursuant to 15 U.S.C. §1692a(6)(F)(iii).  Specifically, Ditech asserts that "discovery" has revealed that the debt for which it acquired the servicing rights from Plaintiffs' former creditor, Citifinancial Servicing, LLC ("Citi"), was not in default, nor was it being treated as in default.  ECF 99 at 1.   Ditech argues that, as such, it cannot be found liable for Plaintiffs' individual FDCPA claims and therefore

1

Plaintiffs cannot be adequate representatives for the six (6) certified classes and therefore such classes must be decertified.  ECF 99 at 12.

Aside from case file documentation including its own communications with Plaintiffs and its own internal business records (most of which that have been previously attached to various filed legal memoranda), the "discovery" Ditech relies upon in support consists of (i) one interchange between Plaintiffs' counsel while in deposition during which Ditech's representative claimed that insofar as Ditech was concerned, Plaintiffs' loan was considered "current" when Ditech boarded it on Ditech's debt servicing system, and (ii) that Plaintiffs did not allege that it was in default – because it was paid off, or provide Ditech with any other information that demonstrated that the debt was in default when Ditech acquired it.  ECF 99 at 4-5.

Ditech's motion is at best, frivolous[1], and should be DENIED.

Well before the "discovery" it allegedly relied upon, Ditech has been in possession of numerous documents that establish that, although incorrect, Citi's records definitively showed that the debt was in default in September - October – November 2013 when Ditech took over servicing of the same.  Moreover, the collection communication that formed the basis of Plaintiffs' class action claim under 15 U.S.C. §1692g was sent to collect what was Citi's debt at that time by Ditech since the letter was sent <u>before</u> Ditech had officially acquired the debt's servicing rights.  Thus, even assuming there was an actual debt due and properly owing to Citi and that such debt was not

---

[1] Ditech's MSJ was filed and served on December 7, 2018.  Plaintiffs reviewed the Motion and determined therefrom that it should be withdrawn for several reasons, including but not limited to, its lack of compliance with Fed. R. Civ. P. 11(b)(1)-(3). As such, on December 12, 2018, Plaintiffs' counsel sent Defendants' counsel a lengthy email detailing Plaintiffs' concerns and requesting that the Motion be withdrawn. On December 14, 2018, Defendants' counsel responded declining Plaintiffs' informal request to withdraw the Motion. On December 19, 2018, Plaintiffs served on Defendant, pursuant to Fed. R. Civ. P. 5, a fully briefed Motion for Rule 11 Sanctions, providing Defendant and its counsel with the 21-day "safe harbor" within which to withdraw the Motion as formally required by Fed. R. Civ. P. 11(c)(2). That period was due to expire at the latest on January 13, 2019.  The Court granted Plaintiffs' request to extend the response period to January 14, 2019. ECF 104.  Ditech has not withdrawn the MSJ and therefore Plaintiffs submit this opposition in response and will file simultaneously, their Motion for Sanctions under Fed. R. Civ. P. 11.

in default, Ditech did not send the communication on its own behalf at that particular time, and instead sent it on behalf of Citi attempting to collect a debt that Plaintiffs already paid in full–which also makes Ditech a debt collector under 15 U.S.C. §1692a(6). For these and the other reasons discussed further below, Ditech's MSJ should be DENIED.

## II.     LAW AND ARGUMENT

### A.     SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing that there are no genuine issues of material fact, which may be accomplished by demonstrating that the nonmoving party lacks evidence to support an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); accord, *Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); see *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000) (stating that the court must draw all reasonable

inferences in favor of the nonmoving party and must refrain from making credibility determinations or weighing evidence). Furthermore, the existence of a mere scintilla of evidence in support of the nonmoving party's position will not be sufficient; there must be evidence on which the jury reasonably could find for the nonmoving party. *Anderson*, 477 U.S. at 251; see *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995); see also *Matsushita*, 475 U.S. at 587-88 (finding reliance upon mere allegations, conjecture, or implausible inferences to be insufficient to survive summary judgment).

**B.  ANALYSIS**

**1.  "Default" – Ditech's Continuing Effort To Self-Define**

In response to certain questions aimed at why Ditech sent Plaintiffs a 30-Day Validation[2] ("DV") letter on 11/14/2013, and to gain further understanding how Plaintiffs' debt was boarded[3], and how it appeared in Ditech's "collection comment history" record, Ditech's representative, Stewart Derrick testified during his deposition as follows:

```
        Q.        Okay.  Well, let's revisit that
18      quickly. When the information came from Citi to
19      Ditech, it came over electronically at first,
20      correct?
21      A.        Yes.
22      Q.        And it showed up on your UCSE system as
23      a debt that was due and owing?
24              MR. BRYCE:  Objection to the form.
 1      A.      There was a balance that was owed.
```

---

[2] This refers to the notification required by 15 US.C. §1692g. The letter was sent to Plaintiffs on or around 11/14/2013. A DV letter like this would only be sent if collection of the underlying debt was governed by the FDCPA, because the 30-Day debt dispute / verification language is only given to consumers who are being collected upon by a debt collector under the statute. Mr. Derrick could not understand why this DV letter was sent. ECF 100; Depo. Tr. Derrick at pgs. 104-105; EX 4 thereto.

[3] Loan boarding is the process by which a debt servicer acquires digital debt data from a prior creditor / servicer and places it on its servicing platform. The process is supposed to include various due diligence reviews to insure the accuracy of the information received and the accuracy of the information as it placed on the new system. See, for example, *In re Stambaugh*, 531 B.R. 191, 193 (Bankr. S.D. Ohio 2015); *Martin v. Select Portfolio Serving Holding Corp.*, 2008 U.S. Dist. LEXIS 16088, *5 (S.D. Ohio 2008). See, also, Mr. Derrick's description of the some of the boarding process concerning Plaintiffs' debt. Depo. Tr. Derrick, pgs. 97-106; ECF 100.

```
2          There wasn't a payment that was owed. It was a
3          debt that was still owed. The information that we
4          received from Citi shows that the last payment
5          they received was applied to the October 15th
6          installment.  Therefore, when we acquired it on
7          November 1st, the loan was due November 15th. So
8          at the time we acquired it the loan was current.
9          Q.      Assuming there was any debt owed at
10         all.  But what you're telling me is insofar as
11         Green Tree or Ditech was concerned, it was
12         considered a current loan?
13         A.        It was.
```

ECF 100; Depo. Tr. Derrick, Pgs. 94-106; 105-106 (emphasis added); see also EX 3 and EX 4 thereto.

Yet, in spite of referring to Citi's "information", neither Mr. Derrick nor Ditech ever produced one document / record it ostensibly obtained from Citi during discovery to support Mr. Derrick's meandering theory about the status of Plaintiffs' loan.  Instead, Mr. Derrick simply concluded that when Plaintiffs' debt was boarded effective 11/1/2013, the first payment due date showing up on Ditech's NCSE servicing platform was for 11/15/2013. Id. at 106. This information was gleaned solely from Mr. Derrick's review of its "collection comment history", which in Mr. Derrick's mind, meant that Ditech should have considered the debt a "current loan". Id. at 106. And because Mr. Derrick thought it should have been considered current, he could not explain why Ditech choose to send the DV letter.  ECF 100, Depo. Tr. Derrick, Pgs. 94-106; EX 3 and EX 4 thereto.

None of this testimony is reliable, credible or informative.  It does not factually resolve the issue before the Court.  The proper evidentiary question is what did Citi's records say about the status of the debt at the time it was transferred to Ditech? Although requested by Plaintiffs, Ditech did not produce any documentation it obtained (or relied upon) from Citi to answer that pertinent question.  By contrast, Plaintiffs paid the debt off in July 2013 and received numerous monthly

statements from Citi at and around the time Citi transferred the debt servicing to Ditech – all of which showed that Citi held the debt in default.  Aff. B. Geary at ¶10-16; EXs A, B, and C attached thereto. All of these communications from Citi were provided to Ditech during discovery well before Ditech chose to file this MSJ.  Aff. B. Geary at ¶37.

Ditech continues to ignore the practical reality screamed by this case – that it was attempting to collect a consumer debt that was already paid off.  A paid off debt should be neither current nor in default.  It should remain paid off.  As it has in its prior rejected motions practice, Ditech again expects to be the arbiter of whether it was collecting a debt that was in default.  This Court stated then and has consistently held that: "allowing parties potentially qualifying as debt collectors to unilaterally define 'default' as used in the FDCPA would frustrate the intent of the statute." *Justice v. Ocwen Loan Servicing, LLC*, No. 2:13-CV-00165, 2014 WL 526143, at *5 (S.D. Ohio Feb. 7, 2014); see also, Opinion and Order, ECF 14 at 11-13.   Ditech again ignores this Court's decision.

### 2.    The *Bridge* Decision

Ditech falsely claims that Plaintiffs cited the controlling decision of *Bridge v. Ocwen Fed. Bank, FS*B, 681 F.3d 355 (6th Cir. 2012) to use only that part of the decision that went to the issue of whether Ditech was a "debt collector" under the FDCPA because it was treating Plaintiffs' debt as if it were in default.  MSJ, ECF 99 at 9.  That limited conclusion is made nowhere in any of Plaintiffs' filings.  To the contrary, Plaintiff cited the *Bridge* decision, and made their allegations based upon it, for its <u>full</u> holding that:

> …"as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive." *FTC v. Check Investors, Inc.*, 502 F.3d 159, 173 (3d Cir. 2007) (citing *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536 (7th Cir. 2003)); cf. *Montgomery v. Huntington Bank*, 346 F.3d 693, 698 (6th Cir. 2003) (holding the definition of debt collector "does not include the consumer's creditors"). If an entity which acquires a debt and seeks to collect it cannot be both a creditor and a

6

debt collector, <u>can it be neither</u>? **We answer no**. To allow such an entity to define itself out of either category would mean that the intended protection of the FDCPA is unavailable. Both the statutory language and legislative history of the FDCPA establish that such an entity is either a creditor or a debt collector and its collection activities are covered under the FDCPA accordingly.

The distinction between a creditor and a debt collector lies precisely in the language of §1692a(6)(F)(iii). For an entity that did not originate the debt in question but acquired it and attempts to collect on it, that entity is either a creditor or a debt collector depending on the default status of the debt at the time it was acquired. The same is true of a loan servicer, which can either stand in the shoes of a creditor or become a debt collector, depending on whether the debt was assigned for servicing before the default or alleged default occurred. *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106-8 (6th Cir. 1996); see also *Perry v. Stewart Title Co.,* 756 F.2d 1197, 1208 (5th Cir. 1985). This interpretation of the Act is supported by Congress's intent in passing it.

> **This bill also protects people who do not owe money at all**. In the collector's zeal, collection efforts are often aimed at the wrong person either because of mistaken identity **or mistaken facts**. This bill will make collectors behave responsibly towards people with whom they deal.

H.R. Rep. No. 131, at 8 (emphasis added); see also S. Rep. 95-382, 95th Cong. 1st Session 4, reprinted in 1977 U.S.C.C.A.N. 1695, 1698 (1977) ("[T]he committee does not intend the definition [of debt collector] to cover . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing[.]").

*Bridge*, 681 F. 3d at 359.  The Court therein further clarified, however, that, in light of the breadth of the FDCPA, "the definition of debt collector pursuant to §1692a(6)(F)(iii) includes any non-originating debt holder that either acquired a debt in default *or has treated the debt as if it were in default* at the time of acquisition.  It matters not whether such treatment was due to a clerical mistake, other error, or intention." *Bridge*, 681 F.3d at 364 (emphasis added); see also *In re Rostorfer*, 497 B.R. 873, 874-76 (Bankr. S.D. Ohio 2013) ("An entity acting in its capacity as a loan servicer is not a debt collector for purposes of the FDCPA unless the debt was in default or treated as though it were in default when the entity obtained the loan for servicing.").

Plaintiffs paid off the debt. Aff. B. Geary at ¶s 11-23. Citi's records, though wrong, continued to show a debt balance past due.  Aff. B. Geary at ¶s 10-16, 37; EXs A, B, and C thereto.

Contrary to Mr. Derrick's later interpretation, Ditech boarded the loan based upon *some* information it allegedly received from Citi – but did not produce to Plaintiffs during discovery, or provide to the Court to support its MSJ. Ditech merely relied upon Mr. Derrick's own interpretation of Ditech's own records – based upon "information" Ditech allegedly received from Citi but did not produce. By attempting to again unilaterally control the definition of default, Ditech is again attempting to avoid the inevitability of the conclusion that must be reached in this case – that Ditech was a debt collector under the FDCPA when it accepted the servicing rights of Plaintiffs' debt from Citi. As set forth, Ditech cannot have it both ways. Ditech was either collecting a debt owed to another (Citi), or it was collecting on its own behalf on a debt it acquired after default or treated as being in default. See, further *infra*.

In spite of providing Ditech with more than sufficient information about the status of Citi debt at the time of transfer (EXs A, B, C to Aff. B. Geary), Plaintiffs determined to engage in additional reasonable inquiry directly with Citi to definitively establish the default status of the subject debt at the time of transfer – something which Ditech clearly did not do. Due to the existence of a confidentiality agreement[4] and certain affidavit wording, Plaintiffs will supplement their opposition response with the anticipated Citi affidavit and records in the near future.

### 3. The Collection Communication On Which The Classes Were Based Was Sent By Ditech On Behalf Of Citi – Making Ditech An FDCPA Debt Collector

Even assuming in a fictitious world that Ditech later acquired Plaintiffs' debt with Citi when it was somehow not in default, the collection letter sent to Plaintiffs dated October 16, 2013 and upon which the FDCPA class liability was based, was sent on behalf of Citi before Ditech acquired the debt's servicing rights. This fact is inescapable and was admitted by Ditech by Mr.

---

[4] Plaintiffs also sued Citi in their Chapter 7 Bankruptcy case for, inter alia, violations of their discharge under 11 U.S.C. §524(a). *Geary v. Citifinancial Servicing, LLC*, 2:14-ap-02121 (Bankr. S.D. Ohio 2014). The adversary proceeding was later dismissed by agreement and subject to a confidential settlement agreement.

Derrick.  Depo. Tr. Derrick, pg. 98, EX 3, 4; Aff. B. Geary at ¶20; EX D thereto.  Thus, as to the

class letter, and as to Plaintiffs' class representative status, the default nature of the debt is actually

irrelevant in this instance, because Ditech was not collecting on its own acquired debt.  Ditech was

collecting a debt due or asserted to be due another - Citi.  Again, as stressed by the Court in *Bridge,*

"If an entity which acquires a debt and seeks to collect it cannot be both a creditor and a debt

collector, can it be neither? We answer no."  *Bridge*, 681 F.3d at 359.  Ditech cannot be "neither".

At the time it sent Plaintiffs' the class-based letter, Ditech had not acquired the servicing rights to

the debt, but Ditech still attempted "to collect, directly or indirectly, **debts owed or due or**

**asserted to be owed or due <u>another</u>**" making it a "debt collector" within the broad meaning of

the FDCPA.  15 U.S.C. §1692(a)(6) (emphasis added).

### 4.    Ditech's Own Prior Stipulations Indicate That It Acquired All Of The Debts Of Class Members After They Were In Default

On June 3, 2016 and July 22, 2016 respectively, Ditech's counsel provided Plaintiffs with

written stipulations regarding certain class certification issues related to the total number of

persons involved (31,000); that for each person, Ditech failed to timely provide the DV letter

required under 15 U.S.C. §1692g – the class FDCPA claim - and to indicate that for each member,

the accounts were in default when the class-based letters were sent. These stipulations were

provided specifically to allow Ditech to refrain from producing a significant amount of written

discovery in this matter.

As to the nature of the default of the involved debts, Ditech's counsel stated:

> Additionally, as has been represented to the Plaintiffs previously, Green Tree will confirm that at the time the letters were mailed to the approximately 31,000 customers the accounts were in default.  Unfortunately, without looking at each account and in most instances, speaking with each customer, there is no way for Green Tree to determine whether each account pertained to a consumer debt.

This stipulation was previously filed and relied upon by Plaintiffs (and the Court) in connection with Plaintiffs' Motion to Certify Class.  ECF 42 at 4; EXs 2, 3 thereto.  Plaintiffs took these stipulations as being truthful and dispositive of these important issues.

By filing its MSJ and by failing to refer to these stipulations, Ditech now seems to remarkably imply that its representations did not apply to Plaintiffs' debt?  The information that went into these stipulations was known by Ditech prior to class certification.  If Ditech knew or even posited that Plaintiffs' own debt was not subject to these stipulations, would not Ditech have objected to the adequacy of Plaintiffs' representation of class(es)?  Ditech never objected to the adequacy of Plaintiffs' representation on the basis of these known issues.  ECF 45 at 24-26.  Now Ditech claims that some "discovery" has allowed it claim that it did not acquire Plaintiffs' debt when it was in default.

In truth however, there was no "new" discovery after class certification.  Ditech simply determined to interpret its own records to indicate that Ditech (and not Citi) hit the "reset button" when it boarded the transferred debt – meaning that in spite of the condition of the debt on Citi's records, Ditech put the loan on its servicing system to show a next payment due date of 11/15/2013.  While Mr. Derrick claimed that the boarding was based upon "information" from Citi – it is again worth noting that Ditech and Mr. Derrick failed to specify or introduce that pertinent evidence to support its MSJ, and perhaps more importantly, failed to produce that information to Plaintiff during the course of discovery. That failure alone should not be permitted to inure to Ditech's benefit.

### 5.    It Is Ditech's Burden, Not Plaintiffs, To Prove That The 15 U.S.C. §1692a(6)(F)(iii) Exception Applies

As its second foundation for its MSJ, Ditech states "neither Mr. nor Mrs. Geary testified, or offered any other evidence demonstrating, that Green Tree prior to or contemporaneous with

the servicing transfer ever contended the Loan was delinquent or in default."  MSJ ECF 99 at 5.

To the extent this issue is even relevant, it is not Plaintiffs' burden to "contend" that Ditech

acquired the debt in default.  In fact, Plaintiffs alleged facts that indicated that Ditech was a "debt

collector" under 15 U.S.C. §1692a(6) because as to the letter that formed the basis for the FDCPA

classes,  Ditech acquired the servicing rights as of November 1, 2013, but sent the collection letter

on behalf of Citi on October 16, 2013.  ECF 1 at ¶a 7, 24 and 25.  Plaintiffs further contended that

they paid off the debt with their last payment to Citi in July 2013 - before Citi errantly transferred

the debt to Ditech.  ECF 1 at ¶s17-20; see also, Aff. B. Geary, ¶s10-14.  It is more than implied in

the context of this case, or any case where a debt has been factually, fully paid, that the creditor's

records are in error and treating the remaining debt as being in default.

The FDCPA is an "extraordinarily broad" remedial consumer protection statute.  *Frey v.
Gangwish*, 970 F.3d 1516, 1521 (6th Cir. 1992).  As such, its scope is to be interpreted broadly

while its exceptions are to be interpreted narrowly.  *Cobb v. Contract Transport, Inc.*, 452 F.3d

543, 559 (6th Cir. 2006). See also, *Wukelic v. United States*, 544 F.2d 285, 288 (6th Cir. 1976)

("Because of this purpose, its provisions are remedial in nature and as such should be construed

liberally; conversely, exceptions to its remedial provisions should be construed narrowly.").  This

precept follows the well-known axiom of federal statutory interpretation which requires that

provisos and exceptions contained in federal statutes be read narrowly. *C.I.R. v. Clark*, 489 U.S.

726, 739, 109 S. Ct. 1455, 103 L. Ed. 2d 753 (1989), citing *Phillips v. Walling*, 324 U.S. 490, 493,

65 S. Ct. 807, 89 L. Ed. 1095 (1945).  Equally well-known is the rule of construction stating "where

Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions

are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover

Construction Co.*, 446 U.S. 608, 616–617, 100 S. Ct. 1905, 1910–1911, 64 L.Ed.2d 548 (1980).

11

Plaintiffs had the initial burden of proof to establish that Ditech was a "debt collector" under the FDCPA under 15 U.S.C. §1692a(6).  *Tolliver v. U.S. Bank (In re Tolliver)*, 2012 Bankr. LEXIS 3333, *60-61 (Bankr. E.D. Ky. 2012) citing *Golliday v. Chase Home Finance, LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011) (citing *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll and Bertolotti*, 374 F.3d 56, 60-61 (2nd Cir. 2004) ("[T]he plaintiff in a FDCPA action bears the burden of proving the defendant's debt collector status")).  Plaintiff satisfied that burden, and under the additional facts attested hereto and offered into evidence hereby, the class-based letter sent to Plaintiffs on October 13, 2013 was sent by Ditech before it acquired the servicing rights thereto, making Ditech an FDCPA governed debt collector.  Aff. B. Geary, ¶s 20-21; EX D thereto; Depo. Tr. Derrick at pg. 98.

The burden is now upon Ditech to prove facts that it acquired the debt while it was current and did not otherwise treat the debt as being in default.  When a party seeks to invoke the protection of an exception to a remedial federal statute, the burden of proof shifts to that party.  *Fair Hous. Advocates Ass'n v. City of Richmond Heights*, 209 F.3d 626 (6th Cir. 2000) (dealing with the FHA) wherein the Court stated:

> Federal courts have repeatedly concluded that the party claiming the exemption "carries the burden of proving its eligibility for the exemption," and that "exemptions from the [FHA] are to be construed narrowly, in recognition of the important goal of preventing housing discrimination." *Massaro v. Mainlands Section 1 & 2 Civic Ass'n, Inc.*, 3 F.3d 1472, 1475 (11th Cir. 1993), cert. denied 513 U.S. 808, 130 L. Ed. 2d 15, 115 S. Ct. 56 (1994); see also *Hogar Agua y Vida en el Desierto v. Suarez-Medina*, 36 F.3d 177, 182 (1st Cir. 1994)("exemptions from the requirements of a remedial statute-like the FHA are to be construed narrowly to limit exemption eligibility") (citing *Massaro*) (discussing "single family house" exemption to FHA); *United States v. City of Hayward*, 36 F.3d 832, 837 (9th Cir. 1994) (same); *Rogers v. Windmill Pointe Village Club Ass'n, Inc.*, 967 F.2d 525, 527 (11th Cir. 1992) ("**Under general principles of statutory construction, one who claims the benefit of an exception from the prohibition of a statute has the burden of proving that his claim comes within the exception**.")

*City of Richmond Heights*, 209 F. 3d at 634-635 (emphasis added).

Ditech has offered no credible or even probative evidence that brings the issue of whether it acquired Plaintiffs' debt when it was current, to genuine examination. The only evidence properly alluded to by Ditech would be Mr. Derrick's weak testimony on the issue. At best, Mr. Derrick could not understand why Ditech sent the DV (30-day debt validation) letter to Plaintiffs when Ditech's own servicing platform seemed to hit the reset button – making Plaintiffs' account due for a payment on the 11/15/2013. ECF 100, Depo. Tr. Derrick at pgs. 104-106. Mr. Derrick's confusion aside, the reason is simple. Ditech knew that it acquired a debt that required compliance with the FDCPA, and as a result, Ditech's computerized servicing platform sent the DV to Plaintiffs. Ditech has offered no evidence that it acquired the debt on a current basis based upon any evaluation of Citi's records.

      **6.**      **Ditech Treated Plaintiffs' Debt As If It Were In Default And Governed By The FDCPA**

Finally, contrary to Ditech's representations, its own documentation definitively proves that it treated Plaintiffs' debt as if it were in default, and as if the FDCPA applied. First and foremost is the described DV letter. Aff. B. Geary, ¶23; EX E. If the FDCPA did not apply, this DV letter would have absolutely no application. 15 U.S.C. §1692g. Second, Mr. Derrick claimed in his deposition that when he reviewed Ditech's account collection history, he interpreted it to mean that the next payment was due on 11/15/2013, after Ditech acquired the debt effective 11/1/2013. ECF 100; Depo. Tr. Derrick at 106. Thus, Mr. Derrick claimed that the loan was current. Id. Ditech relies extensively on this testimony (and only this testimony) as the main basis for its MSJ.

However, Ditech must also admit (and Mr. Derrick did) that it printed-off, and mailed Plaintiffs the 11/14/2013 DV letter in which Ditech demanded $1,101.60 – the alleged full payoff of the debt with "late charges" applied. Aff. B. Geary, ¶23; EX E. ECF 100; Depo. Tr. Derrick at

104.  If Ditech truly expected a first payment due on 11/15/2013, then how could it also expect full payment of the boarded debt the day before?

The answer is that Ditech knew it acquired the debt after it was in default and that the FDCPA applied.  Ditech's reference to its later monthly billing statements to attempt to bolster its position cannot explain the DV letter, and is nothing more than an attempt by Ditech to be the arbiter of whether the debt was in "default" at the time of transfer.  ECF 99 at 4-5.  If anything, the varying dollar figures stated in Ditech's debt collection communications are confusing to Plaintiffs – as they would be to any unsophisticated consumer.  The fact remains that Ditech clearly treated Plaintiffs debt as if were in default and that the FDCPA applies.[5]  Thus, to the extent that Ditech's MSJ has any remaining bearing on Plaintiffs' class or individual FDCPA claims, it must also be DENIED for these reasons.

### 7.      Decertification Not Favored Procedure

Making the massive assumption that Plaintiffs' FDCPA claims could fail or if Plaintiffs could be deemed inadequate representatives, decertification and dismissal is not favored. "Because a designated class has a status apart from that of the class representative, dismissal of the class representatives claims does not inexorably require dismissal of the class action". *Tate v. Hartsville/Trousdale County*, 2010 U.S. Dist. LEXIS 109714, *23 (M.D. Tenn. 2010), citing *Smook v. Minnehaha County*, 457 F.3d 806, 815 (8th Cir. 2006).  "The better course is to dismiss the class representative's meritless claims and consider substituting a class representative who can show injury." Id.  The "favored procedure is not to decertify, but to afford plaintiff's counsel a reasonable period of time for the substitution or intervention of a new class representative.  Id. at

---

[5] Given the nature of the timing of the DV letter demanding full payment for Ditech's first supposed payment, Plaintiffs need not mention but note briefly that all of Ditech's written communications included notifications required by the FDCPA under 15 U.S.C. §1692e(11) – the mini-miranda warning.

*24 citing *McAnaney v. Asotria Finan. Corp., 2007 U.S. Dist. LEXIS 67552, *13 (S.D. N.Y. 2007).* Against the implausible but remote possibility that Plaintiffs' claims become moot or dismissed, Class Counsel requests reasonable time to substitute representatives of the six (6) certified classes in this matter.

## III.     CONCLUSION

Based upon the foregoing, Ditech's MSJ should be DENIED.  Ditech is a "debt collector" under the FDCPA as to Plaintiffs' debt and as such, Plaintiffs remain proper and adequate class representatives.

Respectfully submitted,

/s/  James E. Nobile
Eric E. Willison (0066795)
James E. Nobile (0059705)
Michael B. Zieg (0066386)
NOBILE & THOMPSON CO., L.P.A.
4876 Cemetery Road
Hilliard, OH 43026
eewillison@earthlink.net
jenobile@ntlegal.com
mzieg@ntlegal.com
Class Counsel

<u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on JANUARY 14, 2019, the foregoing PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DECERTIFICATION OF CLASSES (ECF 99) upon the below listed individuals by email based upon each counsel's consent to receive email service via their respective use of the Court's ECF/CM system.

David Demers, Esq., ddemers@cdgattorneys.com
Martin C. Bryce, Jr., bryce@ballardspahr.com
Counsel for Defendant

/s/ James E. Nobile
James E. Nobile (0059705)
NOBILE & THOMPSON CO., L.P.A.
Class Counsel

16